# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**GARRY LEWIS, BRENDA GAYLE LEWIS,**
**G. LEWIS LOUISIANA, LLC, ROBERT**
**BEARD, CAROLYN MILTON, AND TOWN**
**OF LIVINGSTON, LA**

**VERSUS**

**UNITED STATES OF AMERICA AND**
**UNITED STATES ARMY CORPS OF**
**ENGINEERS**

**CIIVIL ACTION**

**NO. 17-1644-JWD-RLB**

## RULING AND ORDER

This matter comes before the Court on the Motion to Partially Dismiss First Amended Complaint, (Doc. 26), by Defendants, United States of America and United States Army Corps of Engineers ("Corps") (collectively "Defendants" or "United States"), under Rule 12(b)(1) and Rule 12(b)(6). Plaintiffs, Garry Lewis, Brenda Gayle Lewis, G. Lewis Louisiana, LLC, Robert Beard, Carolyn Milton, and Town of Livingston, LA (collectively "Plaintiffs" or "Lewis"),[1] opposed the motion. (Doc. 28). Defendants replied. (Doc. 29). Oral argument is not necessary. For the following reasons, the motion is granted in part and denied in part.

## I. PROCEDURAL BACKGROUND AND REGULATORY FRAMEWORK

Plaintiffs filed their initial Complaint on November 9, 2017. (Doc. 1). Plaintiffs own certain real property in Livingston Parish and claim that they have been damaged by Defendants' conduct with respect to 19 acres known as "Milton Lane". (Doc. 1, p. 1). Plaintiffs claim that the Corps declared regulatory jurisdiction over some of the land pursuant to the Clean Water Act and obstructed connection to municipal water supplies. (*Id.*). Plaintiffs further allege that the Corps

---

[1] The Court notes that the pleadings and memoranda frequently do not distinguish among the various Plaintiffs or to whom "Plaintiffs" or "Plaintiff" is in reference. The same holds true with references to "Defendants" and "Defendant".

"regulates Plaintiffs' freedom to use and enjoy said lands, such as restricting water supply utilities, normal timber harvesting, and development for needs of people of Livingston Parish". Plaintiffs further claim that the "federal regulatory agencies involved" obstructed Plaintiffs' appeal rights regarding the Corps' actions, thereby allegedly depriving Plaintiffs of the due process of law. (Doc. 1, p. 2).

Defendants responded to Plaintiffs' original Complaint with a motion for partial dismissal on February 5, 2018. (Doc. 13). Defendants challenged some of Plaintiffs' claims under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. This Court granted the motion in part and denied the motion in part. The Court dismissed Counts II (the alleged bias of Defendants) and III (claim of estoppel) of the Complaint and dismissed Counts IV (unreasonable delay) and V (an alleged "invalid" cease-and-desist order) as to the EPA. Plaintiffs were ordered to amend their Complaint consistent with the Court's ruling. (Doc. 22).

Plaintiffs amended their Complaint on September 6, 2018.[2] (Doc. 23). Defendants responded with the instant motion for partial dismissal. (Doc. 26).

In ruling upon Defendants' first motion for partial dismissal, the Court provided a "Regulatory Framework" to lend clarity to Plaintiffs' claims and the nature of this case. (Doc. 22, pp. 1-3). The Court reproduces same herein in addressing Defendants' second motion for partial dismissal.

With certain exceptions, the Clean Water Act ("CWA") makes unlawful the "discharge of any pollutant by any person." *See* 33 U.S.C. § 1311(a). "Discharge of a pollutant" includes "any addition of any pollutant to navigable waters from any source point," and "pollutants" include

---

[2] Plaintiffs' amendment to the Complaint doubles the factual and legal allegations from that contained in the original Complaint. The Court summarizes and addresses those allegations as is relevant and germane to Defendants' motion presently before the Court.

"dredged spoil, … rock, sand, [and] cellar dirt[.]" 33 U.S.C. §§ 1362(6), 1362(12)(A). "Navigable waters means the waters of the United States[.]" 33 U.S.C. § 1362(7); *see also Rapanos v. United States*, 547 U.S. 715, 730-31 (2006) (CWA's definition of "navigable waters" is "broader than the traditional understanding of that term," but the word "navigable" is not "devoid of significance").

The CWA and its associated regulations authorize the Corps to issue permits for the discharge of fill material into the waters of the United States. *See* 33 U.S.C. § 1344(a); *Rapanos*, 547 U.S. at 723 ("Section 1344 authorizes the Secretary of the Army, acting through the Corps, to issue permits[.]" (internal quotation marks omitted)). However, the CWA also provides that the discharge of fill material from "normal farming, silviculture, and ranching activities" is generally "not prohibited by or otherwise subject to regulation" under Section 1344. 33 U.S.C. § 1344(f)(1)(A).

Federal regulations authorize the Corps' district engineers to issue "approved jurisdictional determinations" stating whether waters of the United States are present on a particular parcel. 33 C.F.R. §§ 325.9; 331.2 (defining approved jurisdictional determination). Federal regulations also authorize the issuance of "preliminary" jurisdictional determinations, which constitute "written indications that there may be waters of the United States on a parcel[.]" 33 C.F.R. § 331.2 (defining preliminary jurisdictional determination). Approved jurisdictional determinations are "clearly designated" actions from which an administrative appeal may be taken. 33 C.F.R. §§ 331.2; 331.5(a)(1). However, preliminary jurisdictional determinations are characterized as "advisory in nature" and not appealable. 33 C.F.R. §§ 331.2; 331.5(b)(9).

When the Corps detects unauthorized activity requiring a permit, it is authorized to take "appropriate steps to notify the responsible parties." 33 C.F.R. § 326.3(c). If the violation involves an incomplete "project," the notification should be in the form of a cease-and-desist order; a cease-

and-desist order should not be "necessary" for a violation involving a "completed project," but the district engineer should still "notify the responsible parties of the violation." 33 C.F.R. § 326.3(c)(1), (c)(2). The Corps has several options for addressing unauthorized activity, including ordering initial corrective measures, accepting an after-the-fact permit application, or recommending civil or criminal litigation to obtain penalties or require compliance. 33 C.F.R. §§ 326.3(d), (e), 326.5(a).

## II.   FACTUAL BACKGROUND

Plaintiffs set forth a detailed "summary of facts" in their First Amended Complaint. (Doc. 23, pp. 5-23). The following is a sketch of Plaintiffs' enhanced factual allegations.

On November 4, 2014, "Lewis" requested from the Corps a jurisdictional determination concerning the property at issue in this matter, Milton Lane. (Doc. 23, p. 5). The intention behind the request was to prepare to begin construction of a water line. (Doc. 23, p. 6).

Plaintiffs allege that the Corps did not "promptly" respond to the request in accordance with their own published guidelines. (*Id.*). Plaintiffs specifically allege that Defendants' response "should have been due on January 2, 2015". (Doc. 23, p. 7).

Defendants allegedly made a visit to the "site"; however, Plaintiffs aver that Defendants focused on parts of land outside of the area at issue. Because Defendants allegedly made references to improper logging operations, Plaintiffs claim that they asked the Corps to "do an additional [jurisdictional determination]" on the additional land to attempt to eliminate Defendants' voiced concerns. (*Id.*).

On October 5, 2015, "Plaintiffs" met with "multiple top level representatives of Defendants," who agreed to give the request for a jurisdictional determination "top priority". (Doc. 23, p. 8). On October 14, 2015, the Corps issued a preliminary jurisdictional determination stating

that the property "may be" subject to the Corps' jurisdiction. On October 26, 2015, "Defendants" accepted a permit application concerning activities that Plaintiffs wished to conduct on the property, "including [constructing] a water tower and water lines to serve both existing and future uses". (*Id.*).

On November 6, 2015, the Corps requested EPA concurrence that a "logging operation" on the property did not qualify for the CWA's silviculture exemption. The Corps' memorandum noted that a proposed project at the site included a "water tower and utility line project that will provide water to houses to the north". (*Id.*; Doc. 1-19).

On November 25, 2015, the EPA responded to the Corps' November 6th request, agreeing that the operation did not fall within the exemption. (Doc. 1-20). After receiving this letter, the Corps issued a "cease and desist" letter dated December 4, 2015. (Doc. 1-14). The "cease and desist" letter states that the Corps "has reason to believe, and alleges, that you [Garry Lewis] are responsible for the recent deposition of fill material into a wetland … resulting from the excavation and side casting of material from a waterway locally known as Switch Cane Bayou." (*Id.*, p. 1). The "cease and desist" letter goes on to state that Section 404 of the CWA prohibits the discharge of fill materials into a waterway unless authorized by a permit. The letter then orders Plaintiffs to cease and desist from such activity until a permit is obtained. (*Id.*). Plaintiffs allege that the "cease and desist" letter is referencing silviculture activities that Plaintiffs allege are not prohibited by the CWA. (Doc. 23, p. 9).

Plaintiffs allege that instead of "processing the … request", (which is referring to the permit application to build the water tower and water lines), the Corps issued a cease and desist order "based on logging … technicalities", thereby denying Plaintiffs' rights to construct a water tower and utility line to provide access to water. (Doc. 23, p. 9). Plaintiffs allege in the First Amending

Complaint that the EPA's response letter on the silviculture exemption and the Corps' "cease and desist letter" referred to different tracts of land than the permit application "under review" and for which the judicial determination and permits were requested. (Doc. 23, pp. 9-10). Plaintiffs identify various items of correspondence that allegedly mis-construe the significance of the EPA letter and aver that this "Honorable Court (conceded to by EPA counsel) has ruled the EPA letter has no legal effect, and thus dismissed EPA from this action …. Plaintiff requests the Court on its own motion to set aside this [cease and desist] based upon the pleadings and exhibits". (Doc. 23, pp. 10-11).

Plaintiffs allege that they were denied a proper hearing regarding the "logging activities". (Doc. 23, pp. 12-13). Plaintiffs claim that they were denied a proper mapping of the wetlands; instead, "Defendant" "merely said 38% of the tract was wetlands". Plaintiffs further aver that "Defendant" violated due process in refusing to process a permit to allow a dry tract to be used as emergency flood housing. (Doc. 23, p. 14).

In September of 2016, Plaintiffs requested an appealable jurisdictional determination which was not answered. Plaintiffs plead the "equitable principal of 'action delayed is action denied'". Plaintiffs aver, "[t]heir finding of jurisdiction is final, occurred without so establishing same by judicially required tests, and equitable estoppel should prevent them from seeking remand for them to do it now and waste more time". (Doc. 23, p. 16).

Plaintiffs aver with particularity that Defendant "treated differently" the lot 11A waste management company TSWS LLC d/b/a Pot-O-Gold Rentals LLC ("lot 11A users" or "Pot-O-Gold"). For example, Plaintiffs claim that lot 11A users were allowed to conduct waste operations on wetlands; the CWA was applied differently to lot 11A users; lot 11A users were allowed to

pollute, never received cease-and-desist letters, and continued to pollute Plaintiffs' drinking water. (Doc. 23, pp. 17-18).

Plaintiffs aver that the Corps "has asserted its offensive conduct was actually a determination of silviculture non-compliance by EPA contained in an EPA letter dated November 25, 2015 or facilitated by that EPA as a determination". Plaintiffs claim that the "court has ruled there was no such determination". (Doc. 23, p. 2 (citing Doc. 22, pp. 19-20)). The present dispute arises "because Corp[s] has declared regulatory jurisdiction over Satsuma lands under the Clean Water Act". (Doc. 23, p. 2).

Plaintiffs allege that "Defendants are unlawfully, unconstitutionally, inequitably[:] (1) obstructing needed construction of a municipal water project to replace contaminated well water[;] (2) obstructing Timber farming/silviculture on the lands[;] (3) obstructing the land[']s use for housing and development[;] and (4) … since May 2014, in conscious disregard of Plaintiffs['] collective damages enabled an adjacent Waste management facility to operate and pollute and fill conceded wetlands by intentionally enforcing the CWA unequally[.]" (*Id.*). Further, Plaintiffs contend that Defendants "intentionally delayed, damaged Plaintiffs and even obstructed appeal rights". (*Id.*).

Plaintiffs, Town of Livingston, Robert Beard, and Carolyn Milton, have rights in Milton Lane and "desir[e] to use these property rights to serve this area with pure water to replace contaminated water". (Doc. 23, p. 3). Plaintiffs request the Court's[:] "(1) declaratory determination that Federal jurisdiction is absent under the CWA and judicial interpretation thereof requiring regulated wetlands be at the same time 'adjacent' and 'significantly connected' to regulated Federal waters[;] … (2) declaratory determination that a … percentage estimate of wetlands identification of the whole lands is an unlawful failure to delineate boundaries of wetland

thereby restricting use of 'non-wetlands'[;] (3) a staying of all actions of Defendant[']s unlawful, and commanding timely actions where lawful, and (4) setting aside an unlawful or unconstitutional Cease and Desist order[;] (5) [m]onetary relief for damages caused by unlawful conduct where appropriate, or retain jurisdiction thereover until ripe under the Federal Tort Claims Act". (*Id.*).

## III.     STANDARDS OF REVIEW

### A.     Rule 12(b)(1) Standard

Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286-87 (5th Cir. 2012)(citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998), *Hall v. Louisiana*, 12 F.Supp.3d 878 (M.D. La. 2014)). Under Federal Rule of Civil Procedure 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim. *Id.* (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

The Fifth Circuit Court of Appeal has explained the standard for motions pursuant to Rule 12(b)(1) as follows:

> Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

> The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D. Tex. 1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)(per curiam). Considering a Rule 12(b)(1) motion to dismiss first 'prevents a court without jurisdiction from prematurely dismissing a case with prejudice.' *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d at 286-87.

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## B.      Rule 12(b)(6) Standard

In *Johnson v. City of Shelby, Mississippi*, the Supreme Court explained that "[f]ederal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,'; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S.Ct. 346, 346-47 (2014)(citations omitted).

Interpreting Rule 8(a), the Fifth Circuit Court of Appeal has explained:

The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. 'Asking for [such] plausible grounds to infer [the element of a claim] does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed].'

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the 'assumption of truth' to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow 'the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged.' [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)]; *Twombly*, [550] U.S. at 556, 127 S.Ct. at 1965. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the 'reasonable inference' the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a 'reasonable expectation' that 'discovery will reveal relevant evidence of each element of the claim.' *Lormand*, 565 F.3d at 257; *Twombly*, [550] U.S. at 556, 127 S.Ct. at 1965.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011)(quoting *Barber v. Bristol-Myers Squibb*, Civ. Act. No. 09-1562 (W.D. La. 2010)).

More recently, in *Thompson v. City of Waco, Texas*, 764 F.3d 500 (5th Cir. 2014), the Fifth Circuit summarized the standard for a Rule 12(b)(6) motion:

We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff .... To survive dismissal, a plaintiff must plead enough facts to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Our task, then, is to determine whether the plaintiff states a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

*Id.* at 502-03 (citations and internal quotations omitted).

## IV.     PARTIES' ARGUMENTS

### A.     Defendants' Motion

Defendants move to partially dismiss Plaintiffs' First Amended Complaint "to the extent that it is inconsistent with the Court's" prior order on Plaintiffs' first motion to dismiss and "to the extent that Plaintiffs raise new claims that are not viable". (Doc. 26-1, p. 1). Specifically, Defendants move to dismiss: (1) Count I, a new claim of a regulatory taking and "attempts to re-plead" Plaintiffs' procedural due process claim; (2) Count II, a new claim of substantive due process; (3) Count III, a claim that Defendants argue "the Court already found was not a proper

claim"; (4) Count IV, only to the extent that the claim remains "against the Environmental Protection Agency" ("EPA"); and (5) Count VI, a new claim for statutory violations of the Clean Water Act. (Doc. 26-1, p. 1).

Defendants seek to dismiss Count I of Plaintiffs' First Amended Complaint, a new regulatory taking claim, under both Rule 12(b)(1) for lack of jurisdiction and Rule 12(b)(6) for failure to state a claim. (Doc. 26-1, p. 8). Regarding jurisdiction, Defendants argue that takings claims against the federal government are premature until the property owner has availed itself of the process under the Tucker Act, 28 U.S.C. § 1491. (Doc. 26-1, p. 8 (citing *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985); *see also Preseault v. ICC*, 494 U.S. 1, 11 (1990))). Defendants argue that Plaintiffs have not plead facts establishing whether their purported damages are greater than or less than $10,000; therefore, Defendants aver that Plaintiffs have not established jurisdiction. (Doc. 26-1, p. 8 (explaining that the Court of Federal Claims has exclusive jurisdiction over takings claims over $10,000 and has concurrent jurisdiction with district courts for claims under $10,000)). Plaintiffs' Complaint prays for injunctive and declaratory relief only, not compensatory damages. Therefore, Defendants argue, Plaintiffs have not established jurisdiction in the pleading of their case. (Doc. 26-1, p. 9).

Defendants also argue that Plaintiffs' takings claim is not ripe until "the permit process" is completed. Simply asserting regulatory jurisdiction is not a "taking" of property because of the possibility of a permit. Defendants argue that only when a permit is denied to prevent "economically viable use" of the property has a "taking" occurred. (Doc. 26-1, pp. 9-10 (citing *United States v. Riverside Bayview Homes, Inc*., 474 U.S. 121, 127 (1985)).

Defendants next acknowledge that this Court's previous Order found that Plaintiffs' alleged deprivation of silviculture rights "might support a procedural due process claim", but argue that

the Court's "decision was erroneous". (Doc. 26-1, p. 10 (referring to Doc. 22); *see* Doc. 26-1, pp. 11-13 for Defendants' reasoning as to why this Court's prior ruling was "erroneous"). Defendants also argue that Plaintiffs' First Amended Complaint "rehashes" allegations of deprivations of protected interests "that the Court has already rejected". (*See* Doc. 26-1, pp. 13-14 for the purported "rehashed" allegations). Therefore, Defendants seek dismissal of Plaintiffs' procedural due process claim or clarification from the Court on the "limited extent" on which Plaintiffs may proceed. (Doc. 26-1, pp. 10, 14).

Regarding Count II, Defendants argue that Plaintiffs' claims of substantive due process do not "shock the conscience". (Doc. 26-1, p. 15 (citing *City of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Specifically, Plaintiffs claim that Corps personnel showed bias against Lewis based upon the following: (1) an email in which the chief of the Regulatory Branch of the New Orleans District called Lewis "very mendacious", (Doc. 26-1, p. 15 (citing Doc. 23, ¶ 59)); (2) a statement by a Corps employee that Plaintiffs' proposed construction of water lines "is only needed to facilitate future development", (*id*. at ¶ 60); (3) different treatment of a neighboring landowner, (*id*. at ¶ 61); and (4) allegations regarding the Corps' refusal to allow the use of Plaintiffs' land for temporary flood shelter. (*Id*. at ¶ 62). Defendants argue that as plead, the allegations do not support viable claims of bias. (Doc. 26-1, pp. 15-17).

Plaintiffs plead that they reserve equitable estoppel for "later proceedings". (Doc. 23, ¶ 63). Defendants argue, however, that the Court stated in its prior Order, (Doc. 22, p. 16), that "equitable estoppel is not, in itself, either a claim or defense". Defendants ask the Court to dismiss Plaintiffs' estoppel claim because it "does not make any sense for Plaintiffs to reserve a claim that is not a claim". (Doc. 26-1, p. 17).

Because the EPA is not named as a party in the caption of the First Amended Complaint, Defendants argue that the EPA is no longer a named Defendant. (Doc. 26-1, p. 17). However, since Count IV and Paragraph 66 contain allegations of unreasonable delay by the EPA, Defendants move to dismiss this claim adverse to the EPA. Defendants argue that this Court dismissed this claim in its prior Order. (*Id*. (citing Doc. 22, p. 17)). Further, Defendants argue that because the EPA was not required to provide a hearing on an advisory letter that it issued or to rescind the letter, then the EPA could not be the subject of an "unreasonable delay" claim in taking these non-required actions. (Doc. 26-1, p. 18).

Finally, Defendants argue that Plaintiffs' claim of a statutory violation of the Clean Water Act should be dismissed for failure to state a claim. Plaintiffs do not plead a cause of action and/or state a basis of relief. (Doc. 26-1, p. 18). Because Plaintiffs did not identify a cause of action, there is no waiver of sovereign immunity by the United States which is required for it to be sued. (Doc. 26-1, p. 19). Defendants argue that assuming Plaintiffs' cause of action is under the APA, then the claim should be dismissed because Plaintiffs fail to allege "final agency action". (*Id*.).

**B.** **Plaintiffs' Opposition**

As to whether Plaintiffs have established jurisdiction, Plaintiffs do not address the issue of concurrent or exclusive jurisdiction and the $10,000 threshold amount. Rather, Plaintiffs argue their regulatory takings claim is subject to equitable relief. (Doc. 28, p. 5 (citing *U.S. v. Charles George Trucking Co., Inc*., 682 F.Supp. 1260 (D. Mass. 1988), n. 2)). Plaintiffs rely upon *Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 71 (1978), n. 15, arguing that Plaintiffs are allowed to seek declaratory relief "against the constitutionality of disputed federal government taking actions", notwithstanding the lack of a Tucker Act money takings claim. (Doc. 28, p. 6 (citing *Alto El Dorado Partners v. City of Santa Fe*, 644 F.Supp.2d 1313, 1327 (D. N.Mex. 2009))).

Plaintiffs conclude their address of the jurisdictional issue by stating, "The worse that can be said of this count is that the ripeness issue is still open".  (Doc. 28, p. 6).

Plaintiffs argue that this Court was correct in finding that the loss of timber rights was a denial of property without due process.  (Doc. 28, p. 6 (citing La. C.C. Art. 463)).  Plaintiffs also amended their Complaint to clarify that their claim regarding access to drinking water is a "liberty right".  (Doc. 28, p. 6 (citing *Juliana v. United States*, 2017 WL 2483705, at *26, 44-48 (D. Or. 2017))).  Plaintiffs state that "said plaintiffs' access is stopped cold by government action here".  (Doc. 28, p. 7).

Plaintiffs maintain that their allegations of bias violate their substantive due process rights, arguing that Defendants' alleged conduct clearly "shock the conscience".  (Doc. 28, p. 7 ("What is shocking speaks for itself.  Bureaucratic torment is not insulated. … Shocking is what shocking does, *i.e.,* here no drinking water access or timber harvesting as a result of agency standstills.  Respectfully, we submit that is about as clear of a smoking gun as it gets.")).

Plaintiffs clarify their intention to "reserve their right to argue equitable estoppel as appropriate in future proceedings".  Plaintiffs state that this Court has "recognized this right" in its prior ruling.  (Doc. 28, pp. 7-8 (citing Doc. 22, p. 16)).

Plaintiffs also clarify that they "did drop EPA as a party in the amended complaint" but maintain the EPA's "factual involvement".  Plaintiffs suggest that Defendants' motion on this issue should be denied as moot.  (Doc. 28, p. 8).

Regarding Count VI, Plaintiffs state, "The federal invasion of timber management rights governed by the Department of Agriculture and Forestry in Louisiana and land use rights governed by political subdivisions in the State, are the basis for Count VI.  These constitutional rights must be upheld against federal government overregulation."  (Doc. 28, p. 9).

## C.     Defendants' Reply

Defendants disagree with Plaintiffs' position that their regulatory takings claim is subject to equitable relief.  Defendants argue that the "sole remedy" is compensation.  Further, Defendants highlight that the caselaw upon which Plaintiffs rely, *United States v. Charles George Trucking Co.*, actually supports Defendants' argument that jurisdiction over the takings claim lies in "the Claims Court, pursuant to the Tucker Act".  (Doc. 29, pp. 1-2 (citing *United States v. Charles George Trucking Co.*, 682 F.Supp. 1260, 1271 (D. Mass. 1988))).

Defendants maintain that Plaintiffs' regulatory takings claim is not ripe.  Defendants argue that the Corps did not order silviculture to stop indefinitely (which Plaintiffs argue as the "taking").  Instead, Defendants argue that the Corps' cease and desist order only pertained to activities not authorized by the Clean Water Act (*i.e.*, depositing fill material into wetlands without a permit), and that the CWA "exempts normal silviculture".  Defendants also argue that *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, relied-upon by Plaintiffs, does not support Plaintiffs' argument.  First, the United States Supreme Court did not reach the issue of a taking because the alleged taking was hypothetical and had not yet occurred.  Further, the Supreme Court stated that Tucker Act compensation was available in the event such a claim arose.  (Doc. 29, p. 2 (citing *Duke Power*, 438 U.S. 59, 94 (1978))).

Regarding Plaintiffs' procedural due process claim, Defendants aver that Plaintiffs have not established a deprivation of property; have not identified a deprivation of silvicultural rights; and if the deprivation cannot yet be determined, then the due process claim is not ripe.  (Doc. 29, p. 3).  Plaintiffs' argument regarding the drinking water access "added nothing" to the allegations of the original Complaint which, Defendants argue, were "previously held insufficient".  (*Id.*).

Defendants' motion under Rule 12(b)(6) seeking to dismiss Plaintiffs' substantive due process claim is procedurally appropriate, and Defendants argue that Plaintiffs do not meet the "high bar" for pleading a substantive due process claim. (Doc. 29, pp. 3-4).

Defendants argue that "Plaintiffs concede" that equitable estoppel is not a claim. Therefore, Plaintiffs should not be allowed to "reserve" a claim that is "not a claim". (Doc. 29, p. 4).

Plaintiffs concede that they "dropped" EPA as a party; therefore, any claims in Count IV adverse to the EPA should be dismissed. (*Id.*).

Defendants argue that Plaintiffs assert an unspecified violation of the Clean Water Act in Count VI of its First Amended Complaint but argue a violation of the Tenth Amendment as Count VI in its opposition. Defendants suggest that this proves their point that Plaintiffs have not plead a cause of action in Count VI. Neither the original Complaint, nor the First Amended Complaint plead a claim of a violation of the Tenth Amendment or a violation of the Clean Water Act. Defendants argue that Plaintiffs' allegations are nothing more than vague, incoherent accusations that do not identify a legal cause of action and to which Defendants are not able to respond. (Doc. 29, p. 5).

## V.       ANALYSIS

### A.       Count I – Regulatory Taking and Procedural Due Process

#### 1.       Regulatory Taking

Count I of Plaintiffs' First Amending Complaint states:

> Said Plaintiffs formerly marketed and sold timber harvests which now remain
> dormant and valueless under the direct result of the government's harsh regulatory
> actions on their land. Under U.S. Supreme Court precedents a taking exists
> because: (1) the nature of the taking here is as applied and regulatory, (2) the
> economic impact of the regulation is to deprive owners of all value in their standing
> timber rights through harvests, and (3) said plaintiffs investment in the property
> since 2012 and prior investment for timber rights was justified to them through the
> silviculture exemption in the Clean Water Act, 33 U.S.C. § 1344(f). Therefore,

Plaintiffs Lewis have suffered an actual and regulatory taking of property rights without just compensation. Said plaintiffs do not seek compensation at this time, but pray for injunctive and declaratory relief due to a government violation of the U.S. Constitution on several counts as alleged herein.

(Doc. 23, pp. 25-26).

"The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, provides that private property shall not 'be taken for public use, without just compensation.'" *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536, 125 S.Ct. 2074, 2080 (2005) (internal citation omitted). The Takings Clause "does not prohibit the taking of private property, but instead places a condition on the exercise of that power…. It is designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *Id.* at 537 (emphasis in original).

There are two types of "takings" under the Fifth Amendment: (1) a direct, physical appropriation of property, real or personal, which is "perhaps the most serious form of invasion of an owner's property interests, depriving the owner of the rights to possess, use and dispose of the property"; and (2) a "regulatory taking," i.e., a restriction on the use of property that went "too far." *Horne v. Department of Agriculture*, —— U.S. ——, 135 S.Ct. 2419, 2427, 192 L.Ed.2d 388 (2015), citing *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). Plaintiffs' First Amended Complaint falls into the second category. Plaintiffs allege that they were deprived of all value in their timber rights through the Corps' cease-and-desist order, delays and non-response to Plaintiffs' permit application, and delays and allegedly improper response to the requests for jurisdictional determination. (Doc. 23, p. 25).

The Supreme Court has explained that when a government regulation goes too far, it constitutes a regulatory taking. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). However, in 90 years of takings jurisprudence, the Supreme Court has generally eschewed any

"set formula" for determining how far is too far, and prefers to engage in fact specific inquiries set out in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978) (looking to factors to determine whether a taking occurred such as the economic impact on the claimant, interference with distinct investment-backed expectations, and the character of the government action). The public interest behind the regulation, such as the "health, safety, morals, or general welfare," will also be a factor in the analysis of whether a regulatory taking has occurred. *Penn Central*, 438 U.S. at 125. Ultimately, whether a regulatory taking has occurred will depend largely on the particular circumstances of each case. *Id*. at 124.

"When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner ... regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof." *Tahoe–Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 322, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002), citing *U.S. v. Pewee Coal Co.*, 341 U.S. 114, 115, 71 S.Ct. 670, 95 L.Ed. 809 (1951). Thus, where a regulation restricts the use but does not completely deprive an owner of property rights, there may not be a taking, in which case the regulation did not go "too far." The Supreme Court has long proclaimed that "'where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking.'" *Id.,* quoting *Andrus v. Allard*, 444 U.S. 51, 65–66, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979). Once there is a taking, as when there is a physical appropriation, payment from the government becomes an issue of just compensation. *Horne*, 135 S.Ct. at 2429. "[J]ust compensation normally is to be measured by 'the market value of the property at the time of the taking.'" *Id.,* quoting *United States v. 50 Acres of Land*, 469 U.S. 24, 29, 105 S.Ct. 451, 83 L.Ed.2d 376 (1984).

Plaintiffs allege, "Standing timber rights and the fruits thereof are important sticks in the owners' 'bundle of rights' in Louisiana." (Doc. 23, p. 25). The alleged impairment of this "important stick", alone, may not amount to a taking. *See Tahoe-Sierra Preservation Council, Inc.*, 535 U.S. at 322, quoting *Andrus*, 444 U.S. at 65-66. Further, Plaintiffs allege the "taking" deprives owners of all value in their "standing timber rights" only. (Doc. 23, p. 25). Plaintiffs do not allege a complete taking of the property, only a "stick", to further Plaintiffs' analogy. While Plaintiffs' pleading may be sufficient under Rule 12 to attempt to assert a regulatory takings claim, a more detailed, fact-intensive analysis under *Penn Central* is required to determine whether the allegations rise to the level of a regulatory taking. The "partial taking" may ultimately not be a "taking" at all. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015-1019 (1992).

Nevertheless, regardless of the classification of the taking, a takings claim under the Fifth Amendment must first be ripe for adjudication. *Severance v. Patterson*, 566 F.3d 490, 496 (5th Cir. 2009). The Supreme Court has adopted a test for ripeness under the Fifth Amendment's takings clause: "such claims are not ripe until (1) the relevant governmental unit [administrative agency] has reached a final decision as to how the regulation will be applied to the land owner, and (2) the plaintiff has sought compensation for the alleged taking through whatever adequate procedures the state provides." *Williamson County Reg'l Planning Comm's v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *see also Urban Developers, LLC v. City of Jackson, Miss.*, 468 F.3d 281, 292–93 (5th Cir. 2006); *Robinson v. City of Baton Rouge*, No. 13-375, 2016 WL 6211276, *25 (M.D. La. Oct. 22, 2016).

Plaintiffs fail to show that their regulatory takings claim is ripe for adjudication. First, in their opposition, Plaintiffs characterize the Corps' cease-and-desist order as stopping silviculture "indefinitely" and, in a conclusory fashion, equates this order to a regulatory taking. (Doc. 28, p.

5).  This is the extent of Plaintiffs' address of a "final decision" in its opposition.  The "cease and desist" order addresses the deposition of fill material into wetlands without a permit and orders Lewis to cease from depositing fill materials into wetlands until a permit is obtained.  (Doc. 1-14).  The "cease and desist" order neither addresses silviculture operations in total, nor does it address the issue of access to drinking water.  However, as this Court ruled in response to Defendants' first motion to dismiss, "Plaintiffs have adequately alleged that the cease-and-desist order constituted a final agency action, particularly given the lenient standards generally applicable at this stage." (Doc. 22, p. 21 (citing *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008))).  This Court found that Plaintiffs adequately allege that the cease-and-desist order had "legal consequences" and constituted the "consummation of the agency's decision-making process" with respect to factual and legal conclusions that Plaintiffs wish to challenge.  Therefore, under the applicable jurisprudential authority, this Court concluded that Plaintiffs made a plausible showing of a final order.  (Doc. 22, pp. 21-23 (citing *U.S. Army Corps of Engineers v. Hawkes Co.*, __ U.S. __, 136 S.Ct. 1807, 1815 (2016); *Frozen Food Express v. United States*, 351 U.S. 40, 44-45 (1956); *Louisiana State v. United States Army Corps of Engineers*, 834 F.3d 574, 580-81 (5th Cir. 2016))).

Even though Plaintiffs meet the first prong of the ripeness test, Plaintiffs do not meet the second prong.  Plaintiffs are clear in both their First Amended Complaint as well as their opposition to this motion that they seek injunctive and declaratory relief, not compensation.  Thus, the second element of the ripeness test is absent.  Plaintiffs argue that the case of *Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 71 (1978), allows for "equitable jurisdiction", notwithstanding the lack of a "Tucker Act money taking claim".  Defendants argue that *Duke Power* is not applicable to this matter because the Supreme Court declined to resolve the taking claim because the alleged taking had not occurred.  Defendants argue that the Supreme Court "held" that Tucker Act

compensation was available and left the jurisdiction of the taking claim "for another day". (Doc. 29, p. 2).

In *Duke Power*, the Supreme Court did not "hold that plaintiffs were allowed to seek declaratory relief", as Plaintiffs posit in their opposition. (Doc. 28, p. 6). In addressing jurisdiction, which the Supreme Court raised on its own motion, the Supreme Court stated:

> For purposes of determining whether jurisdiction exists under § 1331(a) to resolve appellees' claims, it is not necessary to decide whether appellees' alleged cause of action against the NRC based directly on the Constitution is in fact a cause of action "on which [appellees] could actually recover." *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Instead, the test is whether 'the cause of action alleged is *so patently without merit* as to justify . . . the court's dismissal for want of jurisdiction.' *Hagans v. Lavine,* 415 U.S. 528, 542–543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974) quoting *Bell v. Hood, supra,* at 683, 66 S.Ct., at 776. (Emphasis added.) *See also Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666, 94 S.Ct. 772, 778, 39 L.Ed.2d 73 (1974) (test is whether right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy'). In light of prior decisions, for example, *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and *Hagans v. Lavine, supra,* as well as the general admonition that 'where federally protected rights have been invaded . . . courts will be alert to adjust their remedies so as to grant the necessary relief,' *Bell v. Hood, supra,* 327 U.S., at 684, 66 S.Ct., at 777, we conclude that appellees' allegations are sufficient to sustain jurisdiction under § 1331(a).
>
> The further question of whether appellees' cause of action under the Constitution is one generally to be recognized need not be decided here. The question does not directly implicate our jurisdiction, *see Bell v. Hood, supra,* was not raised in the court below, was not briefed, and was not addressed during oral argument. As we noted last Term in a similar context, questions of this sort should not be resolved on such an inadequate record; leaving them unresolved is no bar to full consideration of the merits. *See Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 278–279, 97 S.Ct. 568, 571–572, 50 L.Ed.2d 471 (1977). It is enough for present purposes that the claimed cause of action to vindicate appellees' constitutional rights is sufficiently substantial and colorable to sustain jurisdiction under § 1331(a).

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 70–72, 98 S. Ct. 2620, 2629, 57 L. Ed. 2d 595 (1978).

The Court finds more helpful guidance from the Northern District of Texas, where that court succinctly stated:

> Plaintiff claims that the enactments 'violate Ash Grove's substantive due process rights because they amount to a regulatory taking.' The City of Arlington and Dallas County Schools have moved to dismiss that portion of Plaintiff's case claiming that such a claim, if viable at all, is nonetheless not ripe for decision.
>
> In this, Defendants are correct. *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186,194, 105 S.Ct. 3108, 87 L.Ed.2d 126, (1985); *Severance,* 566 F.3d at 496–500. Under *Williamson County,* '[a] takings claim is not ripe until (1) the relevant governmental unit has reached a final decision as to how the regulation will be applied to the landowner, and (2) the plaintiff has sought compensation for the alleged taking through whatever adequate procedures the state provides.' *Id.* It does not matter whether the taking is styled as a regulatory taking or as condemnation of real property. *Severance,* 566 F.3d at 496.
>
> Plaintiff has not pled that it sought compensation through state procedures nor alleged that those procedures are 'unavailable or inadequate.' *See Williamson County,* 473 U.S. at 197; *Severance,* 566 F.3d at 498. Ash Grove argues this is not required because it is seeking only a declaration that the enactments violate the Takings Clause. This is insufficient. The state procedural requirement is applicable to both injunctive and declaratory relief on taking claims. *Williamson* 473 U.S. at 195; *Severance,* 566 F.3d at 497. Accordingly, its pursuit of a regulatory takings claim in this Court is not ripe under *Williamson County* and *Severance* and should be dismissed.

*Ash Grove Texas, LP v. City of Dallas,* 2009 WL 3270821, at * 11 (N.D. Tex. Nov. 9, 2009).

Any potential takings claim under the Fifth Amendment must be dismissed for lack of jurisdiction under Rule 12(b)(1) and for failure to state a claim under 12(b)(6) if it is not ripe. *Hidden Oaks Ltd. v. City of Austin,* 138 F.3d 1036, 1041 (5th Cir. 1998). Such is the case here. For the reasons stated above, Plaintiffs' takings claim is not ripe because Plaintiffs have not sought compensation for the alleged taking through whatever adequate procedures the states provides. Ripeness is part of subject matter jurisdiction, which must be established by the party invoking federal jurisdiction. *Abdelhak v. City of San Antonio*, 2011 WL 13124298, at *10 (W.D. Tex. Dec.

6, 2011). Plaintiffs' regulatory takings claim is dismissed under Rule 12(b)(1) for lack of jurisdiction.

## 2. Procedural Due Process

Plaintiffs allege that they are "entitled to due process of law" before they may be deprived of "life, liberty, and use and enjoyment of their Property". (Doc. 23, p. 23). Plaintiffs identify the following "rights" of which they were allegedly deprived: right to use their own property and their own road rights of way to construct and install pipes to provide drinking water and/or a water tower to provide access to drinking water, also presented as a "liberty right to drinking water", (Doc. 23, p. 23); and their right of land use for silviculture purposes without first conducting a hearing, (Doc. 23, p. 24). Plaintiffs allege that Defendants unlawfully refused to process Plaintiffs' requests for a jurisdictional determination, in failing to respond to Plaintiffs' application for permits, and in improperly denying a silviculture exemption without first conducting a hearing. (Doc. 23, p. 24). Plaintiffs also aver that Defendants denied and deprived them of proper administrative appeals. (Doc. 23, p. 25).

Defendants contend in their motion that Plaintiffs fail to identify a deprivation of a protected interest for which they are entitled to due process protection. (Doc. 26-1, p. 10). Specifically, Defendants argue that this Court's prior finding that Plaintiffs' alleged deprivation of silviculture rights may support a procedural due process claim was in error and that Plaintiffs now "rehash" other alleged deprivations that this Court previously rejected. (Doc. 26-1, p. 10).

*Procedural Due Process*. When Plaintiffs assert a due process violation, they "must first identify a life, liberty, or property interest protected by the Fourteenth Amendment and then identify a state action that resulted in a deprivation of that interest." *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995). The Fifth Circuit has explained:

> In order for a person to have a property interest within the ambit of the Fourteenth Amendment, he 'must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement.' *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Property interests are not created by the Constitution; rather, they stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions, or mutually explicit understandings. *Perry*, 408 U.S. at 599-601, 92 S.Ct. at 2699-2700. However, it is clear that 'the sufficiency of the claim of entitlement must be decided by reference to state law.' *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976) (footnote omitted).

*Id*. at 936-37 (citation omitted).

Furthermore, "[a]lthough the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 757 (2005) (emphasis in original). The Supreme Court has recognized that "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Id*. at 756.

*Silviculture rights*. Defendants responded to Plaintiffs' original Complaint with a motion to dismiss, arguing that Plaintiffs' procedural due process claims should be dismissed. (Doc. 13). In denying Defendants' motion on these grounds, this Court stated:

> However, a central issue in this case is whether the silviculture exemption was properly and clearly applied, and to determine that none of Defendants' actions deprived Plaintiffs of or even implicated any protected right to conduct silviculture activities would be to prejudge this case. The Court cannot conclude that Plaintiffs have failed to state a plausible claim under the standards applicable at this stage. *See Lormand*, 565 F.3d at 257.

(Doc. 22, p. 13).

This Court also found that Plaintiffs sufficiently plead claims of inadequate process due to the alleged delays, denial of hearings and appeals, and lack of timely response to the requests for jurisdictional determinations. (Doc. 22, pp. 13-14).

Since then, Plaintiffs have enhanced their allegations and supporting facts of their claim regarding the deprivation of their due process rights, specifically their silvicultural property rights. The Court has reviewed its earlier ruling in light of Defendants' contentions and the amended Complaint. The Court finds no cause for revising its earlier ruling. Defendants' motion with regard to silviculture rights is denied.

*Right to access drinking water*. Defendants argue that Plaintiffs' "rehashed" claim of deprivation of their right to access drinking water should be dismissed because this Court already disposed of this claim. In its prior ruling, this Court found that Plaintiffs had alleged a right to clean drinking water, but the facts presented better supported a claim for the right to construct a water tower and utility line to access clean water. (Doc. 22, p. 13). At that time, Plaintiffs had not plead facts or authority that supported such a right or protection. (*Id*.).

Plaintiffs have now amended their complaint and supplemented their claim by pleading a "liberty right" to access clean drinking water. (Doc. 23, p. 23 (citing *Juliana v. United States*, 2017 WL 2483705, at *26, 44-48 (D. Or. 2017)); Doc. 28, pp. 6-7). Defendants challenged Plaintiffs' claim; however, Defendants do not specifically address Plaintiffs' enhanced pleading and identification of a "liberty right". (Doc. 26-1, p. 13). Rather, Defendants argue, again, that the alleged due process protection does not extend to the "indirect adverse effects of governmental action". (*Id.* (citing *O'Bannon v. Town Court Nursing Ctr*., 447 U.S. 773, 789 (1980)); Doc. 29, p. 3).

Plaintiffs cite the Court to *Juliana v. United States*, No. 15-01517, 2017 WL 2483705 (D. Ore. June 8, 2017) in support of a purported "liberty right" to access drinking water. However, *Juliana* at this cite is a brief opinion by District Judge Aiken regarding motions for stay, certification for appeal, and expedited consideration of pending motions. Specifically, the issue

before that court was the proper standard to apply in consideration of a recommendation from the Magistrate Judge. The opinion makes no mention of rights to drinking water. Defendants suggest that the proper opinion to consider is *Juliana v. United States*, 217 F.Supp.3d 1224, 1250 (D. Or. 2016). The Court agrees.

Judge Aiken first noted that *Juliana* was not "an ordinary lawsuit". The question before the court was whether the defendants were responsible for the harm caused by climate change. *Juliana*, 217 F.Supp.3d at 1235. It is readily apparent that the context of *Juliana* is hardly comparable to the matter presently before this Court. Nevertheless, *Juliana* addressed rights of drinking water as follows:

> Fundamental liberty rights include both rights enumerated elsewhere in the Constitution and rights and liberties which are either (1) 'deeply rooted in this Nation's history and tradition' or (2) 'fundamental to our scheme of ordered liberty[.]' *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (internal citations, quotations, and emphasis omitted). The Supreme Court has cautioned that federal courts must 'exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into' judicial policy preferences. *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (citation and quotation marks omitted).

*Juliana*, 217 F. Supp. 3d at 1249. However, the court went on to state:

> In this opinion, this Court simply holds that where a complaint alleges governmental action is affirmatively and substantially damaging the climate system in a way that will cause human deaths, shorten human lifespans, result in widespread damage to property, threaten human food sources, and dramatically alter the planet's ecosystem, it states a claim for a due process violation. To hold otherwise would be to say that the Constitution affords no protection against a government's knowing decision to poison the air its citizens breathe or the water its citizens drink. Plaintiffs have adequately alleged infringement of a fundamental right.

*Juliana v. United States*, 217 F. Supp. 3d at 1250.

*Juliana v. United States* does not address the issue that is presently before this Court, whether Plaintiffs, landowners, have a fundamental due process right to construct water towers and utilities

in order to access water and to provide same to their area. The issue in *Juliana* was not one of whether government or administrative action was impeding access to specific water sources, but whether government action was damaging the climate system to the extent that it poisoned the drinking water. As Judge Aiken noted, *Juliana* was no ordinary lawsuit; *Juliana* does not support Plaintiffs' position on this issue. *Juliana*, 217 F.Supp.3d at 1235.

As this Court acknowledged in its prior ruling, the Court agrees with Defendants that the alleged deprivation of the right to drinking water was an indirect effect of governmental action. (Doc. 22, p. 12). Also, as stated in the prior ruling and as remains applicable here, Plaintiffs must have a "legitimate claim of entitlement" to the claimed interest, not an "abstract need or desire for it" or a "unilateral expectation of it". (Doc. 22, p. 12 (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972))). As the Court questioned in its ruling on Defendants' first motion to dismiss, is there a "rule or understanding" giving rise to due process protection for the right to the construction of a new water tower and utility line to access water? (Doc. 22, p. 13). Plaintiffs' amendment to their complaint does not answer this question. The amended complaint avers that "one right deprived of is the right to use its own property and its own road rights of way to construct and install 8 inch pipes to provide pure drinking water and or a water tower, to provide access to water where such water was previously unavailable due to contamination." Plaintiffs continue by averring that this is a "direct impairment of a fundamental liberty right to drinking water". (Doc. 23, p. 23). Even a simple reading of the amended complaint shows that facts and authority supporting an entitlement to construct new pipes and a water tower to access water is not plead.

The "guarantee of fair procedure" requires that when the government invades a constitutionally protected interest in "life, liberty, or property," the government must provide due process of law. *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

Plaintiffs allege a protected interest in liberty, although the Court also considers whether there is a protected interest in Plaintiffs' property. The first inquiry is whether a given interest qualifies as a property or liberty interest for purposes of procedural due process. *See Bowlby v. City of Aberdeen,* 681 F.3d 215, 220 (5th Cir.2012). The second inquiry is "what process the State provided, and whether it was constitutionally adequate." *Id.* Because the Court does not find a recognized property or liberty right, it is not necessary for the Court to discuss the process.

Plaintiffs' entire argument is that they have a liberty right to drinking water and that "plaintiffs' access is stopped cold by government action here". (Doc. 28, pp. 6-7). The amended complaint does not set forth facts that support that Plaintiffs had access, permission to access, or a promise to be able to access a new source of water by constructing a water tower and new pipes and then such access was revoked or rescinded. Neither the amended complaint, nor Plaintiffs' opposition sheds any light on how the government allegedly "stopped cold" Plaintiffs' access to the purported new water source. The pleadings reflect that Plaintiffs wish to construct their own utilities and facilities to access other water sources and that they have requested jurisdictional determinations and permits in furtherance of this new construction to access water, with no response. (Doc. 23, pp. 5-8). The allegations of the amended complaint do not show that Plaintiffs were approved for, granted, or promised the alleged construction to access water and then it was revoked or not provided. The amended complaint and argument of Plaintiffs do not explain how Plaintiffs were entitled to this construction and access to another water source and how any action by Defendants invaded that entitlement or right. The amended complaint and record only suggest that Plaintiffs would like to construct a water tower and water pipes to access a new water source for the anticipated use by Plaintiffs on their property.

Protected property interests are those "that rise to the level of a 'legitimate claim of entitlement' " and not "mere expectations." *Walsh v. La. High Sch. Athletic Ass'n,* 616 F.2d 152, 159 (5th Cir.1980). Property interests are matters of state law, and they "stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions, or mutually explicit understandings." *Blackburn v. City of Marshall,* 42 F.3d 925, 936–37 (5th Cir.1995). Plaintiffs have not pointed to any Louisiana caselaw, statutes, or a local ordinance that creates a right to construct and access water service.

When determining state law in the absence of any controlling authority, "it is the duty of the federal court to determine as best it can, what the highest court of the state would decide." *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.,* 953 F.2d 985, 988 (5th Cir.1992). Louisiana has acknowledged a basis for a contract claim to remediate contaminated water or property, *Marin v. Exxon Mobil Corp.,* 48 So.3d 234, 239 (La. 10/19/10), and supports a claim where a specific ordinance or contract deprives a petitioner of the right of access to their own property without due process of law and without compensation. *See Otis v. Sweeney*, 20 So. 229, (La. June 1, 1896). However, there is no support for a fundamental property right to access water by construction of utilities or facilities without a showing of some ordinance or contract granting such a right. If there is authority for the proposition that a property right exists in accessing or obtaining water service without any further showing, the legal support is a stranger to the parties' briefing and to the Court. In fact, Plaintiffs have not argued that such a right exists, as they have amended their complaint to allege that they have been denied a liberty right to drinking water. The Court has not been provided and is not aware of any support for Plaintiffs' allegations or plea of a liberty right to construct utilities and facilities to access water.

Plaintiffs have not only failed to show a fundamental right to access water, but also to show that such permits to construct the water line are something to which the Plaintiffs are clearly entitled. Although Plaintiffs insinuate that they expect to ultimately receive approval to construct the utilities and facilities to access the water, "a unilateral expectation" is not enough to create a protected property interest. *Blackburn,* 42 F.3d at 936. The failure to identify a protected property interest or liberty right is fatal to Plaintiffs' procedural due process claim. *See Baldwin v. Daniels,* 250 F.3d 943, 946–47 (5th Cir.2001).

The Court further notes that within the Fifth Circuit, the jurisprudence relevant to claims of drinking water pertain to the quality of drinking water (an existing water supply) and the procedure of processing such claims, not to a right to construct access to other water sources. *See, e.g., Matter of Bell Petroleum Services, Inc*., 3 F.3d 889 (5th Cir. 1993); *ACORN v. Edwards*, 81 F.3d 1387 (5th Cir. 1996). This Court has not been provided any legal authority or support for a finding of a fundamental right to life, liberty or property, to construct utilities and facilities to access and provide drinking water to a specific location. Therefore, Plaintiffs' pleading of a "fundamental liberty right to drinking water" is not plausible. For the reasons set forth above, the Court agrees with Defendants that Plaintiffs have failed to sufficiently state a claim of denial of due process to construct utilities and facilities to access water.

### B.        Count II – Substantive Due Process

In Count II of their First Amended Complaint, Plaintiffs allege that: Plaintiffs were called "mendacious", (Doc. 23, p. 26); the Corps and EPA acted in a biased fashion in detriment to Plaintiffs, (Doc. 23, p. 27); and Defendants did not treat Plaintiffs equally to their neighboring landowners, *i.e*., Pot-O-Gold Waste Management which was allowed "unimpeded use of identified wetlands", (Doc. 23, pp. 27-28).

Defendants first move to dismiss Plaintiffs' allegations of bias because these same allegations were the subject of Defendants' first motion to dismiss and were dismissed by this Court in its prior ruling. (Doc. 26-1, p. 14). Defendants are correct in this regard. Plaintiffs alleged in their original Complaint the same allegations of unfair bias and unequal treatment of Plaintiffs and their neighboring landowners, Pot-O-Gold. (Doc. 1, pp. 15-16). Plaintiffs argued in opposition to Defendants' first motion to dismiss that Defendants' actions violated their substantive due process rights under the APA and CWA. (Doc. 16, pp. 4-5). This Court dismissed these claims because Plaintiffs' claims of bias and unequal treatment did not "shock the conscience" so as to rise to the level of a viable substantive due process claim. Plaintiffs' claims were found to be "conclusory and insufficient". (Doc. 22, p. 15).

In amending their complaint, Plaintiffs re-urged these same claims but added the phrase "shocks the conscience". (Doc. 23, p. 27). Simply utilizing a phrase or standard does not a well-plead, plausible claim make. Plaintiffs must plead the facts which support their contention that the complained-of conduct is "so egregious" and "so outrageous" that it "shocks the conscience". *See United States v. Salerno*, 481 U.S. 739, 746 (1987); *Cty. Of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Not only have Plaintiffs failed to do this, but no party has provided to the Court any caselaw or legal support for the proposition that calling one "mendacious", having bias against certain landowners, and/or exhibiting presumed deferential treatment to one landowner over another equates to egregious and outrageous actions that "shock the conscience".

Further, the Court has already considered and ruled upon these allegations. (See Doc. 22, p. 15). The Court concludes that, when viewed in the light most favorable to Plaintiffs, Plaintiffs' First Amended Complaint does not plausibly allege a set of facts that state a claim for "conscience-

shocking" actions that are actionable under the Fourteenth Amendment. These claims were previously dismissed, and Defendants' renewed motion under Rule 12(b)(6) is granted.

### C.        Count III – Estoppel

Plaintiffs acknowledge in Count III of their First Amending Complaint that this Court dismissed their prior pleading of a claim of equitable estoppel.  (Doc. 23, p. 28 (citing Doc. 22)). In their First Amending Complaint, Plaintiffs "therefore reserve equitable estoppel for later proceedings".  (Doc. 23, p. 28).  In their motion to dismiss, Defendants question Plaintiffs' logic – "reserving" a claim that is not a claim.  Defendants then seek to dismiss this "claim".  (Doc. 26-1, p. 17).  Plaintiffs concede that equitable estoppel is not a claim and that they are not alleging a claim; rather, Plaintiffs simply seek to "reserve" their right to argue estoppel in future proceedings, as necessary.  (Doc. 28, pp. 7-8).  Despite this Court's prior ruling that equitable estoppel is not a cause of action and dismissal of same, as well as Plaintiffs concession that they are not pleading a "claim" of equitable estoppel, Defendants maintain that the "estoppel claim in Count III should be dismissed".  (Doc. 29, p. 4).

As this Court stated in its prior ruling, "to the extent that the Complaint asserts equitable estoppel as a standalone claim, the claim must be dismissed.  Since the purpose of a motion under Federal Rule of Civil Procedure 12(b) is to test and assert defenses to 'claim[s] for relief,' see Fed. R. Civ. P. 12, the Court need not determine at this time whether equitable estoppel or its components may be relevant for some other purpose."  (Doc. 22, p. 16).  The same holds true here. Any cause of action for equitable estoppel that Plaintiffs attempted to plead in their original Complaint has already been dismissed.  Also, the Court need not determine at this time whether the argument of equitable estoppel is relevant for "future proceedings".  Therefore, Defendants' motion on this issue is denied as moot.

### D.        Count IV – Unreasonable Delay adverse to the EPA

Similarly, out of "an abundance of caution", Defendants also seek to dismiss Plaintiffs' unreasonable delay claim adverse to the EPA.  This claim was previously dismissed by this Court, but Defendants were unclear, based on Plaintiffs' pleading in the First Amended Complaint, whether Plaintiffs were attempting to re-plead this same claim against the EPA.  (Doc. 26-1, p. 17).  In opposition to Defendants' motion, Plaintiffs admit that they "did drop EPA as a party in the amended complaint" and suggest that Defendants' motion "should be denied as moot".  (Doc. 28, p. 8).  This Court agrees with Plaintiffs.  The claim of unreasonable delay adverse to the EPA has previously been dismissed.  (Doc. 22).  Plaintiffs are not re-pleading any claim of unreasonable delay adverse to the EPA in its First Amended Complaint.  Therefore, Defendants' motion on this issue is denied as moot.

### E.        Count VI – Violation of the Clean Water Act and Sovereign Immunity Waiver

Plaintiffs plead a general claim of "statutory violation of the Clean Water Act".  (Doc. 23, p. 31).  Plaintiffs allege the following "violations of the act": excessive delay; extending land use and restriction beyond wetlands to restrict non-wetlands; and "refusing to delineate specific boundaries for wetlands, not mapping, and not delineating".  (*Id.*).  Plaintiffs do not cite to specific statutory provisions within the CWA.  Also, the alleged "violations" of the CWA appear to be duplicative of allegations in support of Counts I–V.

In their First Amending Complaint, "Count VI Statutory Violation of the CWA", Plaintiffs allege that the CWA "is to regulate 'jurisdictional' wetlands, and if identified[,] preserve them, but if not wetlands[,] there is no such authority to regulate them.  To require a permit to regulate a 38% wetlands tract has no basis in law, and violates due process as well [as] the 10th Amendment of the [C]onstitution."  (Doc. 23, p. 32).  Plaintiffs further allege within Count VI that "[a]llowing

for C&Ds without a determination of jurisdiction is unlawful, as occurred here.  The Courts have explicitly determined the Corps must have jurisdiction to regulate.  10th Amendment of the Constitution so requires it."  (*Id*.).  Plaintiff continues by alleging the "violation of the due process concept of fair notice", a "regulatory taking", and concludes by stating that Defendants' acts "are meting out punishments not lawfully regulating lands under the CWA".  (Doc. 23, p. 33).

Defendants move to dismiss Count VI for alleged violations of the CWA because Plaintiffs fail to state a claim upon which relief can be granted.  Defendants argue that Plaintiffs have not adequately stated a claim because they have not identified a legal basis which entitles them to the relief sought.  (Doc. 26-1, p. 18 (citing Fed. R. Civ. P. 8(a)(2))).  Further, Defendants argue that there can be no waiver of sovereign immunity when a plaintiff has "failed altogether to identify a cause of action".  (Doc. 26-1, p. 19 (citing *Hix v. U.S. Army Corps of Eng'rs*, 155 F. App'x 121, 124 (5th Cir. 2005))).

In their opposition, Plaintiffs argue that their pleading of Count VI is a claim under the 10th Amendment:

> All Plaintiffs merely state is the Corps exceeded the 10th Amendment in the U.S. Constitution in regulating Plaintiff Lewis' property.  *See Bond v. U.S*., 131 U.S. 2355, 2366-2367 (2011) (citizens with standing can allege 10th amendment rights).  The APA at 5 U.S.C. § 706(1)(B) here in conjunction with 28 U.S.C. § 1331 (federal question jurisdiction), create [federal] court jurisdiction over agency violations of constitutional rights.  The federal invasion of timber management rights governed by the Department of Agriculture and Forestry in Louisiana and land use rights governed by political subdivisions in the State, are the basis for Count VI.  These constitutional rights must be upheld against federal government overregulation.  The motion should be denied.

(Doc. 28, p. 9).  Plaintiffs do not directly address sovereign immunity or mention the CWA.

Defendants interpret Plaintiffs' argument as their attempt to amend their First Amended Complaint and convert their claim of statutory violations of the CWA to a constitutional claim.

Defendants conclude that "neither the complaint nor Plaintiffs' reformulation of the complaint" state a viable claim. (Doc. 29, p. 5).

The Court will first address whether Plaintiffs have stated a plausible claim for which relief may be granted under the Clean Water Act and then whether Plaintiffs have sufficiently addressed waiver of sovereign immunity.[3] At the outset, the Court notes that Plaintiffs' allegations in Count VI are not clear and are poorly plead. As the Court stated in its ruling on Defendants' first motion to dismiss, Plaintiffs' theories of liability and entitlement to relief must be clearly plead. (Doc. 22, p. 14 (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)("The Court is disinclined to search through the Complaint to see if Plaintiffs have eked out claims beyond those identified with at least some specificity."))).

### 1. CWA Claim

Under Rule 8, the pleading rules call for a short and plain statement of the claim showing that the pleader is entitled to relief. The complaint need not be a perfect statement of the legal theory supporting the claim asserted. *Johnson*, 135 S.Ct. at 346-47. The complaint, on its face, must contain enough factual matter (taken as true) to raise a reasonable expectation that discovery will reveal relevant evidence of the elements of the claim. *Lormand*, 565 F.3d at 257.

In considering Count VI for "Statutory Violations of the Clean Water Act", it bears repeating that: the CWA makes it unlawful to discharge pollutants into navigable waters, which includes wetlands, 33 U.S.C. §§ 1311(a), 1362(6), (7) and (12)(A); the Corps is authorized to issue permits for the discharge of fill material into waters, 33 U.S.C. § 1344(a); the discharge of fill

---

[3] Defendants' motion only challenges Plaintiffs' claims under the CWA in Count VI for failure to state a claim. (Doc. 26-1, pp. 18-20). Defendants do not specifically challenge any 10th Amendment claim, to the extent such a claim has been asserted. Therefore, the Court will not address any potential 10th Amendment claim. Further, the Court will not address Plaintiffs' allegations of due process, regulatory taking or unlawful regulation in Count VI, (Doc. 23, p. 33), these claims are duplicative and have been addressed.

material from normal silviculture activities is generally not prohibited, 33 U.S.C. § 1344(f)(1)(A); the Corps is authorized to issue jurisdictional determinations stating whether waters are considered wetlands, 33 C.F.R. §§ 325.9, 331.2; and, the Corps may issue a cease-and-desist for violations, 33 C.F.R. § 326.3(c)(1) and (2).

There is no requirement for Plaintiffs to plead the specific statutory provisions applicable to their claims. Plaintiffs' general allegations of over-regulation of Plaintiffs' land beyond designated wetlands or "navigable waters", as that term is defined and interpreted under the CWA, and Defendants' alleged failure to designate the wetlands area to assist Plaintiffs in responding to the cease-and-desist order, fall within the scope of the CWA statutory provisions and the CFRs cited above. Plaintiffs allege facts that a jurisdictional determination was requested and a permit application was submitted with no response. (Doc. 23, pp. 5-8).

Plaintiffs allege that a cease-and-desist order was issued regarding deposition of fill material into wetlands. Plaintiffs allege that they responded by seeking delinination of the wetlands on their property, which was allegedly met with an insufficient response. (Doc. 23, p. 16). Plaintiffs allege that the activities for which they received the cease-and-desist order were "normal silviculture activities" for which no permit is required, thus calling into question the Corps' cease-and-desist order. (Doc. 23, p. 9). While Count VI is poorly plead and confusing in terms of the actual purported statutory violation, there is enough factual matter to raise a reasonable expectation that discovery will reveal relevant evidence of the elements of Plaintiffs' claim under the CWA. Although vague, the Court is able to draw a reasonable inference that Defendants may be liable for the improper procedures and over-regulation alleged.

In *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 901-903 (5th Cir. 1983), the plaintiffs brought a suit against a number of Corps and EPA officials, as well as against private

landowners, claiming that land-clearing activities would result in the discharge of dredged and fill material into the waters of the United States in violation of Sections 301(a) and 404 of the CWA, and also result in the discharge of pollutants into the waters of the United States in violation of Section 402 of the CWA. The plaintiffs requested a declaration that the tract was a wetland within the scope of the CWA, that the private defendants could not engage in their land-clearing activities without obtaining a permit from the EPA or the Corps, and that the federal defendants had failed to exercise their "mandatory duty" to designate the tract a wetland and to order the private defendants to cease and desist from discharging pollutants and dredged materials. The plaintiffs also sought injunctive relief against the federal defendants to require them to exercise their jurisdiction over the property and to issue cease-and-desist orders until the private defendants obtained the requisite permits. *Avoyelles*, 715 F.2d at 901-02.

The allegations advanced in *Avoyelles* are similar to those asserted by Plaintiffs in this matter, illustrating the plausibility of Plaintiffs' claims of statutory violations of the CWA in this matter. *See also, Louisiana Wildlife Federation, Inc. v. York*, 761 F.2d 1044, 1046-47 (5th Cir. 1985)(The Fifth Circuit addressed the considerations and purposes of the CWA's restrictions on depositing fill in wetlands and the permitting process related to same, supporting the plausibility of a claim adverse to the Corps related to its cease-and-desist order and the permitting process); *Save Our Community v. U.S. E.P.A.*, 971 F.2d 1155 (5th Cir. 1992)(Citizens brought suit challenging the draining of wetlands, seeking a preliminary injunction and a declaratory judgment under the CWA. Citizens alleged that the defendant land operator failed to obtain a permit and sought a declaration that the Corps and EPA failed to perform their duty to enforce provisions of the CWA. Citizens presented the issue of whether the Corps properly interpreted the CWA and whether the draining was a regulated activity under the CWA or not.); *Orleans Audubon Soc. v.*

*Lee*, 742 F.2d 901, 905 (5th Cir. 1984)(The facts of *Orleans Audubon* span a much longer timeframe and were more complicated than those presently before the Court. While the district court in *Orleans Audubon* ultimately dismissed Orleans Audubon's complaint, it did so after the development of the record and ample opportunity for discovery to shed light upon Orleans Audubon's numerous challenges to the Corps' permitting process.); *Save Our Wetlands, Inc. v. Sands*, 711 F.2d 634 (5th Cir. 1983); *Buttrey v. U.S.,* 690 F.2d 1170 (5th Cir. 1982) (where discovery and development of claims challenging the Corps' permitting process were allowed before dismissal on merits). Plaintiffs here should be allowed the opportunity for discovery and the presentation of evidence to better develop their claims under the CWA as well.

The Court agrees with Defendants that Plaintiffs' claim of violations of the CWA is poorly plead and contains "scattered" allegations. (Doc. 26-1, p. 20). However, based on the foregoing statutory language of the CWA, the jurisprudence, and Plaintiffs' pleading of Count VI for alleged violations of the CWA, the Court finds that Plaintiffs have sufficiently stated a claim under the CWA for purposes of Rule 12(b)(6).

### 2.      Sovereign Immunity

Plaintiffs do not address the issue of sovereign immunity in the First Amending Complaint. Plaintiffs argue that they are seeking injunctive and declaratory relief arising out of "overregulation" that "exceeded the 10th Amendment in the U.S. Constitution", which Plaintiffs imply is excepted from the doctrine of sovereign immunity under the APA. (Doc. 28, p. 9). The Court notes that arguments of counsel in a brief are not a substitute for properly pleaded allegations, and "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." *Becnel v. St. Charles Par. Sheriff's Office*, No. 15-1011, 2015 WL 5665060, at *1 n.3 (E.D. La. Sept. 24, 2015) (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig*.,

761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) (collecting cases)). Because a Rule 12(b)(6) motion tasks the Court with "assess[ing] the legal sufficiency of the complaint," the Court will not consider allegations that appear for the first time in plaintiffs' briefing. *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012).

However, where a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged in the complaint satisfy the jurisdictional requirements of the statute. *Doss v. S. Cent. Bell Tel. Co.*, 834 F.2d 421, 424 (5th Cir. 1987)(citing *Hildebrand v. Honeywell*, 622 F.2d 179, 181 (5th Cir. 1980)). It is sufficient to argue the waiver of sovereign immunity under the APA as long as the facts plead establish that the agency actions are specifically alleged and are a final agency action. *See Belle Co., LLC v. U.S. Army Corps of Engineers,* 761 F.3d 383, 395-96 (5th Cir. 2014)(citing *Taylor-Callahan-Coleman Counties Dist. Adult Probation Dep't v. Dole*, 948 F.2d 953, 956 (5th Cir. 1991); *Stockman v. FEC*, 138 F.3d 144, n. 13 (5th Cir. 1998)).

"Whether the United States is entitled to sovereign immunity is a question of law[.]" *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 488 (5th Cir. 2014)(quoting *Koehler v. United States*, 153 F.3d 263, 265 (5th Cir. 1998)). "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). "Because sovereign immunity is jurisdictional in nature, Congress's waiver of it must be unequivocally expressed in statutory text and will not be implied." *St. Tammany Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 316 (5th Cir. 2009) (citations and internal quotation marks omitted). It is the Plaintiffs' burden to demonstrate "Congress's unequivocal waiver of sovereign immunity." *Id.* at 315.

Where the Court lacks express waiver of sovereign immunity under the CWA, jurisdiction may be based upon the Administrative Procedures Act, 5 U.S.C. § 702, citing *Vieux Carre Property Owners v. Brown*, 875 F.2d 453 (5th Cir. 1989) *cert. denied*, 493 U.S. 1020, 110 S.Ct. 720, 107 L.Ed.2d 739 (1990). *See also, Saveourselves, Inc. v. U.S. Army Corps of Engineers*, No. CIV. A. 90-637-A, 1991 WL 398773, at *1 (M.D. La. Feb. 27, 1991). Section 702 of the APA provides in relevant part, "An action in a court of the United States seeking relief other than money damages and stating a claim that an agency … failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States[.]" 5 U.S.C. § 702. Thus, "Section 702 of the APA 'waives sovereign immunity for actions against federal government agencies, seeking nonmonetary relief, if the agency conduct is otherwise subject to judicial review.'" *Alabama-Coushatta Tribe of Tex.*, 757 F.3d at 488 (citing *Sheehan v. Army & Air Force Exch. Serv.*, 619 F.2d 1132, 1139 (5th Cir. 1980), *rev'd on other grounds*, 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed. 2d 520 (1982)). The rule in numerous circuits as well as the Fifth Circuit is that Section 702 is a waiver of immunity for causes of action against federal agencies arising under 28 U.S.C. § 1331. *See id.* (citing *Sheehan*, 619 F.2d at 1139); *see also Rothe Dev. Corp. v. U.S. Dep't of Def.*, 194 F.3d 622, 624 n. 2 (5th Cir. 1999)(quoting *Sheehan*, 619 F.2d at 1139, for the proposition that "The 1976 amendment [to § 702] waives sovereign immunity for actions against federal government agencies, seeking nonmonetary relief, if the agency conduct is otherwise subject to judicial review.")).

The Fifth Circuit has prescribed limits on the waiver of sovereign immunity contained in Section 702. The Fifth Circuit has explained:

> Section 702 contains two separate requirements for establishing a waiver of sovereign immunity. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882, 110 S.Ct. 3177, 111 L.Ed. 2d 695 (1990). First, the plaintiff must identify some 'agency action' affecting him in a specific way, which is the basis of his entitlement for

judicial review. *Id*[.] This 'agency action' for the purposes of § 702 is set forth by 5 U.S.C. § 551(13). Second, the plaintiff must show that he has 'suffered legal wrong because of the challenged agency action, or is adversely affected or aggrieved by that action within the meaning of a relevant statute.' *Lujan*, 497 U.S. at 883, 110 S.Ct. 3177 (internal quotation marks omitted). These requirements apply to any waiver of sovereign immunity pursuant to § 702.

Section 702 also waives immunity for two distinct types of claims. It waives immunity for claims where a 'person suffer[s] legal wrong because of agency action.' 5 U.S.C. § 702. This type of waiver applies when judicial review is sought pursuant only to the general provisions of the APA. There must be 'final agency action' in order for a court to conclude that there was a waiver of sovereign immunity pursuant to the first type of waiver in § 702. *Lujan*, 497 U.S. at 882, 110 S.Ct. 3177 ('When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'). Both *Lujan* and our most applicable case, *Sierra Club*, applied specifically to situations where review was sought pursuant only to the general provisions of the APA. *See id.; Sierra Club v. Peterson*, 228 F.3d 559, 565 (5th Cir. 2000)(en banc).

Section 702 also waives immunity for claims where a person is 'adversely affected or aggrieved by agency action within the meaning of a relevant statute.' 5 U.S.C. § 702. This type of waiver applies when judicial review is sought pursuant to a statutory or non-statutory cause of action that arises completely apart from the general provisions of the APA. *See Sheehan*, 619 F.2d at 1139; *Trudeau*, 456 F.3d at 187. There is no requirement of 'finality' for this type of waiver to apply. *See Trudeau*, 456 F.3d at 187. The requirement of 'finality' comes from § 704 and has been read into § 702 in cases where review is sought pursuant only to the general provisions of the APA. *See Sierra Club*, 228 F.3d at 565; *Amer. Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999). Instead, for this type of waiver there only needs to be 'agency action' as set forth by 5 U.S.C. 551(13). *See Lujan*, 497 U.S. at 882, 110 S.Ct. 3177.

*Alabama-Coushatta Tribe of Texas*, 757 F.3d at 489.

Here, Plaintiffs plead statutory violations of the CWA. Plaintiffs argue that the APA creates jurisdiction over the alleged agency violations. (Doc. 28, p. 9). Plaintiffs imply that Section 702 of the APA waives immunity for Plaintiffs' claims. Plaintiffs do not plead grievances of agency action "completely apart" from the general provisions of the APA. Therefore, with regard to sovereign immunity, the Court looks to waiver of immunity under Section 702 for the "claims where a person suffer[ed] legal wrong because of agency action". *Alabama-Coushatta*, 757 F.3d

at 489 (citing 5 U.S.C. § 702). As such, there must be "final agency action" in order for the Court to conclude that there was a waiver of sovereign immunity. *Alabama-Coushatta*, 757 F.3d at 489 (citing *Lujan*, 497 U.S. at 882).

a. <em>Final agency action</em>

Plaintiffs must first identify some sort of "agency action" as defined by 5 U.S.C. § 551(13), which defines "agency action" as including "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act". This agency action must be final. Second, Plaintiffs must show that they have suffered legal wrong because of the final agency action or are adversely affected or aggrieved by the final agency action. *Lujan*, 497 U.S. at 882-83.

Plaintiffs generally allege that the applicable rules have not been followed, nor applied consistently; that excessive delay is a violation of the CWA; extending land use and restriction beyond wetlands to restrict non-wetlands is a violation of the CWA; and refusing to delineate specific boundaries for wetlands is a violation of the CWA. (Doc. 23, p. 31). Plaintiffs do not cite to a specific agency rule or order. Plaintiffs more specifically allege that Defendants' failure to act upon its request for a jurisdictional determination or mapping of the wetlands on its tract of land is unlawful. (Doc. 23, p. 32). Plaintiffs challenge the Corps' cease-and-desist order, both on the grounds that the CWA does not prohibit usual silviculture activities without a permit and because the cease-and-desist order was issued without "the 2 (two) test determination". *Id.* Plaintiffs allege that the cease-and-desist order did not specifically identify the site at issue or the specific conduct at issue. (Doc. 23, p. 33). Plaintiffs allege that the Corps failed to respond to its permit application or issue a permit to Plaintiffs to construct "pure drinking water flow". *Id.*

Plaintiffs specifically seek injunctive relief to limit "further damages to life and property" while Plaintiffs proceed with seeking recovery "for damages". (Doc. 23, p. 34).

In order for the agency action to qualify in the waiver of sovereign immunity analysis, a specific agency action must be identified. *Alabama-Coushatta*, 757 F.3d at 491. The identified agency actions must not be directed simply at "the federal agencies' broad policies and practices", but rather be factually developed "by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him". *Id.* (citing *Lujan*, 497 U.S. at 891). Additionally, a challenge to the agencies' failure to act may be sufficiently final to make review appropriate. *Id.* (citing *Sierra Club*, 228 F.3d at 568). *See also, Alexander v. Trump*, 753 Fed.Appx. 201 (5th Cir. 2018)(where allegations that the FBI failed to investigate in violation of constitutional rights was found to be an agency action). *See also, Hawkes Co., Inc. v. U.S. Army Corps of Engineers*, 782 F.3d 994, 999 (8th Cir. 2015)("Jurisdictional determinations and permitting decisions are discrete agency actions…"). Based on the allegations of the Complaint, Plaintiffs specifically identified the Corps' failure to act on their requests for a jurisdictional determination and on their permit application. Also, Plaintiffs specifically identified the Corps' cease-and-desist order, which qualifies as an agency action by definition. 5 U.S.C. § 551(13). The Court finds that Plaintiffs sufficiently allege specific agency action that allegedly harmed Plaintiffs. The issue then becomes whether the alleged agency action is considered "final agency action".

Final agency actions are actions which (1) "mark the consummation of the agency's decision-making process," and (2) "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (quotations omitted). The final action must be "an identifiable action or event."

*Lujan,* 497 U.S. at 899, 110 S.Ct. 3177. Absent a specific and final agency action, the Court lacks jurisdiction to consider a challenge to agency conduct. *See American Airlines,* 176 F.3d at 287. In certain circumstances, agency inaction may be sufficiently final to make judicial review appropriate. *See* 5 U.S.C. § 706(1) (allowing courts "to compel agency action unlawfully withheld or unreasonably delayed"); *Sierra Club v. Thomas,* 828 F.2d 783, 792–96 (D.C.Cir.1987) (discussing different forms of agency inaction). *See Sierra Club v. Peterson*, 228 F.3d 559, 568 (5th Cir. 2000)(suggesting that the failure of an agency to issue a land resource management plan would constitute a final agency action). However, an agency action with which a party disagrees cannot be "dressed up as an agency's failure to act". *Sierra Club v. Peterson*, 228 F.3d at 568 (citations omitted).

As set forth above in Section V(A)(1) regarding the ripeness of Plaintiffs' regulatory takings claim, this Court has previously found the cease-and-desist order to be a final agency action. (Doc. 22, p. 21 (citing *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008)). This Court found that the cease-and-desist order had "legal consequences" and constituted the "consummation of the agency's decision-making process" with respect to factual and legal conclusions that Plaintiffs wish to challenge, and, therefore, is a final order. (Doc. 22, pp. 21-23 (citing *U.S. Army Corps of Engineers v. Hawkes Co*., __ U.S. __, 136 S.Ct. 1807, 1815 (2016); *Frozen Food Express v. United States*, 351 U.S. 40, 44-45 (1956); *Louisiana State v. United States Army Corps of Engineers*, 834 F.3d 574, 580-81 (5th Cir. 2016)).

With regard to Plaintiffs' request for a jurisdictional determination or mapping of the wetlands and permit application, jurisdictional determinations made by the Corps and permits issued by the Corps with regard to the applicability of the CWA are considered a final agency action. The issuance of a jurisdictional determination or permit produces "legal consequences".

*Texas v. Equal Employment Opportunity Commission*, 2019 WL 3559629, *5 (5th Cir. 2019)(citing *United States Army Corps of Engineers v. Hawkes Co*., 136 S.Ct. 1807, 1814). Here, the complaint of Plaintiffs is that the Corps failed to act upon the request for a jurisdictional determination or mapping of the wetlands and failed to issue a permit. The definition of "agency action" includes "the equivalent or denial" of "relief." 5 U.S.C. § 551(13). "[A]gency action" also includes "failure to act," and the Supreme Court has explained that "failure to act" is properly understood as a failure to take an *agency action*—that is, a failure to take one of the agency actions (including their equivalents) defined in Section 551(13). *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004).

In failing to conduct a hearing on Plaintiffs' request for a jurisdictional determination and failing to provide relief, act on the request, and issue the permit, the Corps' alleged failure to act and to provide relief or a remedy to Plaintiffs could be construed as a final agency action in and of itself under the APA. However, as the Court has previously found, these "failures" by the Corps consummated in the agency's issuance of the cease-and-desist letter, a final decision and action.

b.       *Suffered legal wrong; adversely affected or aggrieved*

The second and final step in the waiver of sovereign immunity analysis is that Plaintiffs must show that they have suffered legal wrong, were adversely affected or aggrieved by the final agency action. Here, Plaintiffs allege that due to the cease-and-desist order, the Corps asserted jurisdiction over 19 acres improperly, which prohibited Plaintiffs from using their land and right-of-ways. Plaintiffs claim they were "further aggrieved" when there was no response to their request for a jurisdictional determination on this issue because it denied Plaintiffs the appeal rights to have the error reviewed. The total time period over which Plaintiffs have "suffered the inability to use their land" is four years. (Doc. 23, p. 16). Plaintiffs claim that they have sustained financial

loss from an inability to complete timber farming.  There is also alleged "beetle damage" to land

that was not properly managed during this time.  (Doc. 23, p. 20).  Not only were Plaintiffs

allegedly affected and aggrieved by Defendants' actions, but Plaintiffs plead that they were

"legally wronged" by Defendants' "arbitrary and capricious" handling of the process, by not

issuing a jurisdictional determination prior to the cease-and-desist letter, by not conducting a

hearing, and by failing to respond in a timely fashion to the requests and permit application.

"The phrase 'person adversely affected or aggrieved' is a term of art used in many statutes

to designate those who have standing to challenge or appeal an agency decision, within the agency

or before the courts." *Dir., Office of Workers' Comp. Programs v. Newport News Shipbuilding &

Dry Dock Co.,* 514 U.S. 122, 126, 115 S.Ct. 1278, 131 L.Ed.2d 160 (1995).  The terms "adversely

affected" and "aggrieved," alone or in combination, have a long history in federal administrative

law, dating back at least to the Federal Communications Act of 1934, § 402(b)(2) (codified, as

amended, 47 U.S.C. § 402(b)(6)). They were already familiar terms in 1946, when they were

embodied within the judicial review provision of the Administrative Procedure Act (APA), 5

U.S.C. § 702, which entitles "[a] person ... adversely affected or aggrieved by agency action within

the meaning of a relevant statute" to judicial review. In that provision, the qualification "within

the meaning of a relevant statute" is not an addition to what "adversely affected or aggrieved"

alone conveys; but is rather an acknowledgment of the fact that what *constitutes* adverse effect or

aggrievement varies from statute to statute. The Supreme Court has interpreted Section 702 as

requiring a litigant to show, at the outset of the case, that he is injured in fact by agency action and

that the interest he seeks to vindicate is arguably within the "zone of interests to be protected or

regulated by the statute" in question. *Association of Data Processing Service Organizations, Inc.*

*v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970); see also *Clarke v. Securities Industry **1284 Assn.,* 479 U.S. 388, 395–396, 107 S.Ct. 750, 754–755, 93 L.Ed.2d 757 (1987).

The relevant statute at issue here is the CWA. As set forth above in the preceding section regarding whether Plaintiffs plead a plausible cause of action under the CWA, the statute and jurisprudence support a plausible claim for injunctive and declaratory relief for persons challenging a cease-and-desist order or the permitting process under the CWA. An inability to utilize land and the resulting loss of financial resources due to the administrative actions and findings of the Corps is a complaint of an injury or damages, and the interests that the Plaintiffs seek to vindicate, those of the landowners, are within the zone of interests protected and regulated by the CWA. The CWA states that it is "unlawful" to discharge pollutants into any navigable waters. 33 U.S.C. § 1311(a). This is specifically what the Corps has ordered Plaintiffs to cease-and-desist from doing. However, the CWA also provides that the discharge of fill materials from normal silviculture activities is not prohibited by or subject to regulation. 33 U.S.C. § 1344(f)(1)(4). Plaintiffs contest the cease-and-desist order due to the "faulty" process by which it was issued and the scope of the order since Plaintiffs alleged "normal silviculture activities" which is not prohibited by regulation.

Plaintiffs also claim to have been harmed from the "final agency action" because of the failure to obtain a jurisdictional determination or mapping of the wetlands. Plaintiffs aver and believe that the Corps has mis-identified the wetlands area and tract of land at issue and made the subject of the permit application. Federal regulations authorize the Corps' engineers to issue jurisdictional determinations stating whether waters or wetlands are present on a particular parcel. 33 C.F.R. §§ 325.9; 331.2.

As this matter is before the Court on a Rule 12(b)(6) motion, the Court finds that Plaintiffs have sufficiently plead an effect or aggrievement as a result of a final agency action that is within the zone of protection afforded by the CWA. Plaintiffs have plead facts sufficient to support a finding of a waiver of sovereign immunity under Section 702 of the APA. As such, Defendants' motion with regard to Count VI of Plaintiffs' complaint is denied.

## VI.     CONCLUSION

For these reasons, **IT IS ORDERED** that Defendants' Motion for Partial Dismissal of First Amended Complaint (Doc. 26) is **GRANTED IN PART** and **DENIED IN PART**. Particularly, with regard to Count I, the motion to dismiss the regulatory taking claim under Rule 12(b)(1) is **GRANTED,** and this claim is dismissed without prejudice; the motion to dismiss the procedural due process claims under Rule 12(b)(6) is **DENIED** as to the silviculture rights and **GRANTED** as to the right to access drinking water. The motion is **DENIED AS MOOT** with regard to Count III (equitable estoppel) and Count IV (unreasonable delay claims adverse to the EPA). The motion with regard to Count VI is **DENIED.**

Signed in Baton Rouge, Louisiana, on September 25, 2019.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**