# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**GARRY LEWIS, BRENDA GAYLE LEWIS,**
**G. LEWIS LOUISIANA, LLC, ROBERT**
**BEARD, CAROLYN MILTON, AND TOWN**                          .
**OF LIVINGSTON, LA**

                                                    **CIVIL ACTION**
**VERSUS**
                                                    **NO. 17-1644-JWD-RLB**

**UNITED STATES OF AMERICA AND**
**UNITED STATES ARMY CORPS OF**
**ENGINEERS**


# RULING AND ORDER

This matter comes before the Court on the Motion for Partial Summary Judgment, (Doc. 35), by Plaintiffs, Garry Lewis, Brenda Gayle Lewis, G. Lewis Louisiana, LLC, Robert Beard, Carolyn Milton, and Town of Livingston, LA (collectively "Plaintiffs" or "Lewis"), [1] under Rule 56.  Defendants, United States of America and United States Army Corps of Engineers ("Corps") (collectively "Defendants" or "United States"), opposed the motion.  (Doc. 48).  Plaintiffs replied. (Doc. 56).  Oral argument is not necessary.  For the following reasons, the motion is denied without prejudice.  The Magistrate Judge is asked to hold a status conference with the parties to discuss an appropriate time frame and scheduling order to facilitate the timely remand of this matter to the Corps to conduct further proceedings consistent with this Ruling and Order.

---

[1] The Court notes that the pleadings and memoranda frequently do not distinguish among the various Plaintiffs or to whom "Plaintiffs" or "Plaintiff" is in reference.  The same holds true with references to "Defendants" and "Defendant".

I.    PROCEDURAL AND FACTUAL BACKGROUND AND REGULATORY FRAMEWORK

A.    Procedural and Factual Background

Plaintiffs filed their initial Complaint on November 9, 2017.  (Doc. 1).  Plaintiffs own certain real property in Livingston Parish and claim that they have been damaged by Defendants' conduct with respect to 19 acres known as "Milton Lane".  (Doc. 1, p. 1).  Plaintiffs claim that the Corps declared regulatory jurisdiction over some of the land pursuant to the Clean Water Act ("CWA") and obstructed connection to municipal water supplies.  (*Id*.).  Plaintiffs further allege that the Corps "regulates Plaintiffs' freedom to use and enjoy said lands, such as restricting water supply utilities, normal timber harvesting, and development for needs of people of Livingston Parish." (Doc. 1, p. 2).  Plaintiffs further claim that the "federal regulatory agencies involved" obstructed Plaintiffs' appeal rights regarding the Corps' actions, thereby allegedly depriving Plaintiffs of the due process of law.  (*Id*.).

Defendants responded to Plaintiffs' original Complaint with a motion for partial dismissal on February 5, 2018.  (Doc. 13).  Defendants challenged some of Plaintiffs' claims under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  This Court granted the motion in part and denied the motion in part.  The Court dismissed Counts II (the alleged bias of Defendants) and III (claim of estoppel) of the Complaint and dismissed Counts IV (unreasonable delay) and V (an alleged "invalid" cease-and-desist order) as to the EPA.  Plaintiffs were ordered to amend their Complaint consistent with the Court's ruling.  (Doc. 22).

Plaintiffs amended their Complaint on September 6, 2018.  (Doc. 23).  Plaintiffs set forth a detailed "summary of facts" in their First Amended Complaint.  (Doc. 23, pp. 5-23).  The following is a summary of Plaintiffs' enhanced factual allegations.

On November 4, 2014, Lewis requested from the Corps a jurisdictional determination concerning Milton Lane. (Doc. 23, p. 5). The reason for the request was to prepare to begin construction of a water line. (Doc. 23, p. 6).

Plaintiffs allege that the Corps did not "promptly" respond to the request in accordance with their own published guidelines. (*Id.*). Plaintiffs specifically allege that Defendants' response "should have been due on January 2, 2015." (Doc. 23, p. 7).

Defendants allegedly made a visit to the "site"; however, Plaintiffs aver that Defendants focused on parts of land outside of the area at issue. Because Defendants allegedly made references to improper logging operations, Plaintiffs claim that they asked the Corps to "do an additional [jurisdictional determination]" on the additional land to attempt to eliminate Defendants' concerns. (*Id.*).

On October 5, 2015, "Plaintiffs" met with "multiple top[-]level representatives of Defendants," who agreed to give the request for a jurisdictional determination "top priority". (Doc. 23, p. 8). On October 14, 2015, the Corps issued a preliminary jurisdictional determination stating that the property "may be" subject to the Corps' jurisdiction. On October 26, 2015, Defendants accepted a permit application concerning activities that Plaintiffs wished to conduct on the property, "including [constructing] a water tower and water lines to serve both existing and future uses." (*Id.*).

On November 6, 2015, the Corps requested Environmental Protection Agency ("EPA") concurrence that a "logging operation" on the property did not qualify for the CWA's silviculture exemption. (*Id.*). The Corps' memorandum noted that a proposed project at the site included a "water tower and utility line project that will provide water to houses to the north." (*Id.*; Doc. 1-19).

On November 25, 2015, the EPA responded to the Corps' November 6th request, agreeing that the operation did not fall within the exemption.  (*Id*., p. 9; Doc. 1-20).  After receiving this letter, the Corps issued a cease and desist letter dated December 4, 2015.  (*Id*., pp. 9-10; Doc. 1-14).  The cease and desist letter states that the Corps "has reason to believe, and alleges, that you [Garry Lewis] are responsible for the recent deposition of fill material into a wetland … resulting from the excavation and side casting of material from a waterway locally known as Switch Cane Bayou."  (Doc. 1-14, p. 3).  The "cease and desist" letter goes on to state that Section 404 of the CWA prohibits the discharge of fill materials into a waterway unless authorized by a permit.  The letter then orders Plaintiffs to cease and desist from such activity until a permit is obtained.  (*Id*.).  Plaintiffs allege that the "cease and desist" letter is referencing silviculture activities that Plaintiffs allege are not prohibited by the CWA.  (Doc. 23, p. 9).

Plaintiffs allege that instead of "processing the [permit application to build the water tower and water lines] request," the Corps issued a cease and desist order "based on logging … technicalities," thereby denying Plaintiffs' rights to construct a water tower and utility line to provide access to water.  (Doc. 23, p. 9).  Plaintiffs allege in the First Amending Complaint that the EPA's response letter on the silviculture exemption and the Corps' "cease and desist letter" referred to different tracts of land than those included in the permit application "under review" and for which the judicial determination and permits were requested.  (Doc. 23, pp. 9-10).  Plaintiffs identify various items of correspondence that allegedly misconstrue the significance of the EPA letter and aver that this "Honorable Court (conceded to by EPA counsel) has ruled the EPA letter has no legal effect, and thus dismissed EPA from this action ….  Plaintiff[s] request[] the Court on its own motion to set aside this [cease and desist order] based upon the pleadings and exhibits."  (Doc. 23, pp. 10-11).

Plaintiffs allege that they were denied a proper hearing regarding the "logging activities". (Doc. 23, pp. 12-13).  Plaintiffs claim that they were denied a proper mapping of the wetlands; instead, "Defendant" "merely said 38% of the tract was wetlands."  (Doc. 23, p. 14).  Plaintiffs further aver that "Defendant" violated due process in refusing to process a permit to allow a dry tract to be used as emergency flood housing.  (*Id.*).

In September of 2016, Plaintiffs requested an appealable jurisdictional determination which was not answered.  Plaintiffs plead the "equitable principal of 'action delayed is action denied.'" (Doc. 23, p. 16).  Plaintiffs aver, "[t]heir finding of jurisdiction is final, occurred without so establishing same by judicially required tests, and equitable estoppel should prevent them from seeking remand for them to do it now and waste more time." (*Id.*).

Plaintiffs aver that the Corps "has asserted its offensive conduct was actually a determination of silviculture non-compliance by EPA contained in an EPA letter dated November 25, 2015 or facilitated by that EPA as a determination." (Doc. 23, p. 2).  Plaintiffs claim that the "court has ruled there was no such determination".  (*Id.* (citing Doc. 22, pp. 19-20)).  The present dispute arises "because Corp[s]  has declared regulatory jurisdiction over Satsuma lands under the Clean Water Act." (Doc. 23, p. 2).

Plaintiffs allege that "Defendants are unlawfully, unconstitutionally, inequitably[:]  (1) obstructing needed construction of a municipal water project to replace contaminated well water[;] (2) obstructing Timber farming/silviculture on the lands[;] (3) obstructing the land[']s use for housing and development[;] and (4) … since May 2014, in conscious disregard of Plaintiffs['] collective damages enabled an adjacent Waste management facility to operate and pollute and fill conceded wetlands by intentionally enforcing the CWA unequally[.]" (*Id.*).  Further, Plaintiffs

5

contend that Defendants "intentionally delayed, damaged Plaintiffs and even obstructed appeal rights." (*Id.*).

Plaintiffs, Town of Livingston, Robert Beard, and Carolyn Milton, allege rights in Milton Lane and "desir[e] to use these property rights to serve this area with pure water to replace contaminated water." (Doc. 23, p. 3). Plaintiffs request the Court's[:] "(1) declaratory determination that Federal jurisdiction is absent under the CWA and judicial interpretation thereof requiring regulated wetlands be at the same time 'adjacent' and 'significantly connected' to regulated Federal waters[;] … (2) declaratory determination that a … percentage estimate of wetlands identification of the whole lands is an unlawful failure to delineate boundaries of wetland thereby restricting use of 'non-wetlands'[;] (3) … staying of all actions of Defendants [as] unlawful and commanding timely actions where lawful, and (4) setting aside an unlawful or unconstitutional Cease and Desist order[;] (5) [granting] [m]onetary relief for damages caused by unlawful conduct where appropriate, or retain jurisdiction thereover until ripe under the Federal Tort Claims Act". (*Id.*).

Defendants responded to Plaintiffs' First Amended Complaint with a second motion for partial dismissal, (Doc. 26), that was granted in part and denied in part, (Doc. 30). The Court dismissed Plaintiffs' regulatory taking claim without prejudice and dismissed Plaintiffs' procedural due process claim as to the right to access drinking water with prejudice. (*Id.*).

Plaintiffs now move for partial summary judgment. (Doc. 35). Plaintiffs seek a ruling under Rule 56 that: (1) Defendants do not have jurisdiction over Plaintiffs' property under the Clean Water Act ("CWA"); and (2) that the Corps' cease and desist orders stopping silviculture activities be set aside. (Doc. 35-1, p. 3). Since filing their motion for partial summary judgment, Plaintiffs also moved for leave of Court to amend the complaint a second time. (Doc. 38). The motion

seeking to amend the complaint is still pending.  Also pending is Defendants' motion for summary judgment.  (Doc. 47).

### B.        Regulatory Framework

With certain exceptions, the CWA makes unlawful the "discharge of any pollutant by any person."  *See* 33 U.S.C. § 1311(a).  "Discharge of a pollutant" includes "any addition of any pollutant to navigable waters from any source point," and "pollutants" include "dredged spoil, … rock, sand, [and] cellar dirt[.]"  33 U.S.C. §§ 1362(6), 1362(12)(A).  "Navigable waters means the waters of the United States[.]"  33 U.S.C. § 1362(7); *see also Rapanos v. United States*, 547 U.S. 715, 730-31 (2006) (CWA's definition of "navigable waters" is "broader than the traditional understanding of that term," but the word "navigable" is not "devoid of significance").

The CWA and its associated regulations authorize the Corps to issue permits for the discharge of fill material into the waters of the United States.  *See* 33 U.S.C. § 1344(a); *Rapanos*, 547 U.S. at 723 ("Section 1344 authorizes the Secretary of the Army, acting through the Corps, to issue permits[.]" (internal quotation marks omitted)).  However, the CWA also provides that the discharge of fill material from "normal farming, silviculture, and ranching activities" is generally "not prohibited by or otherwise subject to regulation" under Section 1344.  33 U.S.C. § 1344(f)(1)(A).

Federal regulations authorize the Corps' district engineers to issue "approved jurisdictional determinations" stating whether waters of the United States are present on a particular parcel.  33 C.F.R. §§ 325.9; 331.2 (defining approved jurisdictional determination).  Federal regulations also authorize the issuance of "preliminary" jurisdictional determinations, which constitute "written indications that there may be waters of the United States on a parcel[.]"  33 C.F.R. § 331.2 (defining preliminary jurisdictional determination).  Approved jurisdictional determinations are

"clearly designated" actions from which an administrative appeal may be taken. 33 C.F.R. §§ 331.2; 331.5(a)(1). However, preliminary jurisdictional determinations are characterized as "advisory in nature" and not appealable. 33 C.F.R. §§ 331.2; 331.5(b)(9).

When the Corps detects unauthorized activity requiring a permit, it is authorized to take "appropriate steps to notify the responsible parties." 33 C.F.R. § 326.3(c). If the violation involves an incomplete "project," the notification should be in the form of a cease and desist order; a cease and desist order should not be "necessary" for a violation involving a "completed project," but the district engineer should still "notify the responsible parties of the violation." 33 C.F.R. § 326.3(c)(1), (c)(2). The Corps has several options for addressing unauthorized activity, including ordering initial corrective measures, accepting an after-the-fact permit application, or recommending civil or criminal litigation to obtain penalties or require compliance. 33 C.F.R. §§ 326.3(d) and (e), 326.5(a).

## II.    STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts … [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994)(citations and internal quotations omitted). The party opposing the motion for summary judgment may not

sit on his hands, complacently relying on the pleadings. *Weyant v. Acceptance Ins. Co.*, 917 F.2d 209 (5th Cir. 1990). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. General allegations that fail to reveal detailed and precise facts will not prevent the award of summary judgment. *Walton v. Alexander*, 20 F.3d 1350, 1352 (5th Cir. 1994). Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's Inc*., 939 F.2d 1257, 1263 (5th Cir. 1991).

## III.   PARTIES' ARGUMENTS

### A.      Plaintiffs' Motion

Plaintiffs seek a ruling under Rule 56 that: (1) Defendants do not have jurisdiction over Plaintiffs' property under the CWA because the property at issue does not contain "navigable waters"; and (2) therefore, the Corps' cease and desist orders[2] stopping silviculture activities should be set aside because the Corps issued the waters without jurisdiction to do so. (Doc. 35-1, p. 3). In support of its motion, Plaintiffs present four arguments: (1) the Corps is precluded from jurisdiction under the CWA because the "waters of the United States" upon which Defendants rely for jurisdiction is "merely a remote roadside ditch," (*id*., p. 8); (2) the Corps is precluded from jurisdiction under the CWA because the property "lies wholly within or above the 100-year flood plain," (*id*.); (3) the Corps is precluded from jurisdiction under the CWA because neither of the

---

[2] Plaintiffs reference a "notice of violation" dated December 4, 2015, and a cease and desist order dated February 4, 2016 in their motion. (Doc. 35-1, p. 6). Plaintiffs refer to the notice and order collectively as "cease and desist orders" or "the orders".

tests set out in *Lucas*[3] and *Lipar*[4] can be satisfied, (*id*., p. 9); and (4) because there is no jurisdiction under the CWA, the Corps' notices must be ruled invalid, (*id*.).

## 1. "Waters of the United States"

The CWA makes unlawful the discharge of pollutants into "navigable waters". "Navigable waters" is defined as "waters of the United States". 33 U.S.C. § 1311(a) and § 1362. Plaintiffs argue that "waters of the United States" may include "wetlands adjacent to other bodies of water over which the Corps has jurisdiction." (*Id*., p. 11, citing *U.S. v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 135, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985)). "Adjacent", however, does not include "bordering, contiguous, or neighboring." (*Id*., p. 12, citing 33 C.F.R. § 328.3(c)). Plaintiffs argue that "the Corps' description of 'adjacent' wetlands as those that form the border of or are in reasonable proximity to other waters … of the United States … provides no support for the inclusion of physically unconnected wetlands as covered 'waters'". (*Id*., citing *Rapanos v. U.S.*, 547 U.S. 715, 746-47, 126 S.Ct. 2208, 165 L.Ed.2d 159 (2006) (internal quotations omitted)). Plaintiffs conclude that "[i]f the wetland is not 'adjacent' to a water of the United States, *i.e.* physically abutting, it is not a jurisdictional 'water'". (*Id*.). Plaintiffs maintain that Defendants have only identified a "roadside ditch" and a "downstream tributary" on Plaintiffs' property, which are not "waters of the United States". If the "roadside ditch" or the "downstream tributary" are not waters of the United States, then any wetlands adjacent to them would be isolated and excluded from jurisdiction. (*Id*., p. 13).

## 2. A Roadside Ditch

Plaintiffs contend that roadside ditches do not qualify as "waters of the United States", and, therefore, the Corps did not have jurisdiction to issue the cease and desist order or the notice. (*Id*.,

---

[3] *U.S. v. Lucas*, 516 F.3d 316 (5th Cir. 2008).
[4] *U.S. v. Lipar*, 665 F. App'x 322 (5th Cir. 2016).

pp. 13-15).  The rules in effect at the time Plaintiffs applied for a jurisdictional determination stated that "[d]itches with ephemeral flow that are not a relocated tributary or excavated in a tributary (are not waters of the U.S.)."  (*Id.*, p. 14, n. 4, citing 33 C.F.R. § 328.3(b)(3) (Jun. 29, 2015)).  Plaintiffs aver that "Defendants ignored the local U.S. Attorney belief that *Rapanos* eliminated jurisdiction over these lands."  (*Id.*, p. 14).  Plaintiffs conclude that "[t]hese Milton Ln. remote roadside ditches … are not a water of the United States, thus any wetlands are not 'adjacent wetlands.'"  (*Id.*, p. 15).

### 3.    100-Year Flood Plain

Again, relying upon *Rapanos*, Plaintiffs argue that one of the jurisdictional factors considered there was the unreasonableness "to assert CWA jurisdiction over wetlands within the 100-year flood plain (i.e. unlikelihood of merging of boundaries of the wetland and its TNW)." (*Id.*, p. 15).  Plaintiffs claim that "[t]his site" is within or above "the 500-year flood plain". Therefore, CWA jurisdiction over Plaintiffs' property does not exist.  (*Id.*).  Applying the "continuous surface connection" standard for "adjacent wetlands" in *Rapanos* to Defendants' FEMA map, Plaintiffs conclude that "these lands are almost entirely above the geographic confines of the '100 year flood plain' or the area with a 1% annual chance of flood, and furthermore almost entirely outside the geographic confines of the '500 year flood plain' or the area with 0.2% annual chance of flood (or) 1% chance of flood less than 1 foot (or) drainage areas less than one square mile."  (*Id.*, p. 16, citing *Rapanos*, 547 U.S. at 742, and Doc. 35-5, pp. 2, 5).  Thus, as a "matter of law," Plaintiffs contend that "there is no CWA jurisdiction on Milton Lane."  (*Id.*, p. 17).

### 4.    The *Lucas* and *Lipar* Tests are not Satisfied

Plaintiffs claim that Defendants "ignore" *Lucas* and *Lipar*, both of which apply the *Rapanos* decision.  (*Id.*).  The Fifth Circuit stated in *Lipar* that the "legally permissible approach" is to apply

the "varying tests", referring to the tests suggested by Justices Scalia and Kennedy as set forth in *Rapanos*. *Lipar*, 665 F. App'x at 325-26. Plaintiffs conclude that "jurisdiction cannot possibly be met under both tests." (*Id*., p. 18; *see id.*, pp. 18-24 for Plaintiffs' proposed application of both tests).

### 5.    Set Aside Cease and Desist Order and Notice of Violation

Because Defendants do not have jurisdiction "over the 19-acre Milton Lane property," Plaintiffs maintain that "Defendants have no authority to issue its cease and desist order, no authority to issue a notice of violation, and no authority to criticize Plaintiffs' silviculture practices, much less purport to remove the CWA silviculture exemption." (*Id*., p. 24).

### B.    Defendants' Opposition

Defendants outline Plaintiffs' four pending claims: (1) denial of procedural due process limited to the deprivation of silvicultural rights; (2) unreasonably delayed agency action; (3) invalid cease and desist order; and (4) statutory violation of the CWA. (Doc. 48, p. 2). In opposition to Plaintiffs' motion, Defendants argue that Plaintiffs do not "specify which claims … are the subject of that motion." (*Id*.). Defendants then compare Plaintiffs' motion that seeks a ruling that Defendants do not have jurisdiction under the CWA, with Plaintiffs' proposed order, which is much more expansive and detailed and seeks a declaratory judgment on six specific points.[5] (*Id*., pp. 2-3).    Because Plaintiffs do not identify which claims are the subject of their

---

[5] Plaintiffs' proposed order seeks an order: (1) finding unlawful and enjoining certain acts, which are that Defendant unlawfully refused an approved jurisdictional determination delineating any regulated wetlands and unlawfully issued orders that prohibited installation of municipal waterlines and water tower, unlawfully restricted silviculture, or housings adjacent to the roadway, and generally for 5 years onerously regulated these lands over which it had no CWA jurisdiction; (2) that any land or non-traditionally navigable water that is more than one river mile from the nearest traditionally navigable water is not subject to regulation by the Corps under the Clean Water Act; (3) that any land or non-navigable tributaries at or above the hundred-year floodplain of the nearest traditionally navigable water is not subject to regulation by the Corps under the Clean Water Act; (4) that both the plurality and concurrence standards from *Rapanos v. United States*, 547 U.S. 715 (2006), must be established for regulation by the Corps under the Clean Water Act; (5) that federal agencies shall not limit or curtail silviculture practices pursuant to the Clean Water Act, except to require a timber management plan; and (6) that any federal agency's rule or interpretation inconsistent with

motion, Defendants argue that the motion "does not meet the basic requirements of the Federal Rules," thereby necessitating dismissal of the motion.  (Doc. 48, p. 4).

Second, Defendants argue that Plaintiffs are actually seeking injunctive and declaratory judgments, which are remedies, not causes of action.  (*Id*.).   Because Plaintiffs do not tether the remedy sought to a claim or cause of action, the motion should be denied.  (*Id*., pp. 4-5).

Defendants then explain, claim by claim, why Plaintiffs fail on summary judgment.  (*Id*., pp. 5-7).  Further, even if Plaintiffs were to prevail on their claims, Defendants argue that the relief sought by Plaintiffs is not available under the Administrative Procedure Act ("APA"), (*id*., pp. 8-12), and is not appropriate, (*id*., pp. 13-14).

C.      Plaintiffs' Reply

In reply, Plaintiffs address each of their claims:

1.      Due Process

Plaintiffs complain that Defendants stopped legitimate silviculture activities without jurisdiction to do so when the Corps issued the cease and desist order.  (Doc. 56, p. 1).  The silviculture activities should have been exempt from regulation under the CWA.  (*Id*., pp. 1-2).  Therefore, Plaintiffs contend that they are seeking summary judgment  that Defendants' "unlawful" "stoppage of silviculture activity is void" and should be rescinded.  (*Id*., p. 2).

2.      Unreasonable Delay

Here, Plaintiffs argue that five years is long enough.  "The failure of the Corps to provide the requested jurisdictional determinations and permitting should be considered final agency action as denying Plaintiffs of the safe harbor provided by either a permit or a negative jurisdictional

---

this Court's judgment is not enforceable within the Fifth Circuit.  (Doc. 48, p. 3, referencing "Lewis Proposed Order at 6-7").

determination." (*Id*., p. 3).  Alternatively, Plaintiffs argue that Defendants should be given 15 days to make a decision on the permit and the jurisdictional determination.  (*Id*.).

### 3.   "Invalid" Cease and Desist Order

Plaintiffs contend that Defendants have "refused" to answer any discovery propounded by Plaintiffs and to produce an administrative record.  (*Id*.).  Plaintiffs reiterate that Defendants did not have "regulatory jurisdiction" to issue the cease and desist order.  (*Id*.).

### 4.   Clean Water Act

The only statement offered by Plaintiffs is that this Court has "already ruled that Plaintiffs stated a valid claim for relief here".  (*Id*.).

### 5.   Relief

Because the totality of "the Government's" actions and inactions deprived Plaintiffs of protected rights, Plaintiffs argue that the Court is "free to fashion remedies" under the Constitution and apart from the APA.  (*Id*., p. 4).

## IV.   ANALYSIS

### A.   Is Plaintiffs' motion procedurally proper?

Defendants' primary argument is that Plaintiffs' motion is not procedurally proper.   In moving for summary judgment, the Federal Rules of Civil Procedure require that Plaintiffs "identify[] each claim or defense" on which summary judgment is sought and set forth the evidence that establishes the elements of Plaintiffs' claims.  (Doc. 48, pp. 3-4, citing FRCP 56(a); *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986); *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)).  Defendants are correct that Plaintiffs must prove their prima facie case before being entitled to summary judgment and declaratory relief, as is sought here.  *Whitney Bank v. Nafel*, Civ. A. No. 14-208, 2015 WL 1457528, *12 (M.D. La. Mar. 30, 2015)("the Court cannot grant summary

judgment or declaratory relief" when the plaintiff has not proven a prima facie case). Further, once Plaintiffs prove the merits of their claims, they must provide the Court with legal authority for the injunctive and declaratory relief that they seek in order to secure the partial summary judgment. *People's Workshop, Inc. v. Federal Emergency Management Agency*, Civ. A. No. 17-107, 2019 WL 1140196, *9 (M.D. La. Mar. 12, 2019) ("Even to the extent any of the plaintiffs' claims were plausible on their merits, they have failed to provide the Court with any legal authority whatsoever for the injunctive and declaratory relief they seek ...."). Defendants challenge the relief sought by Plaintiffs on these grounds as well, arguing that the APA does not authorize the injunctive and declaratory relief sought and that the claimed relief is "inappropriate". (Doc. 48, pp. 8-14). With this in mind, the Court first determines whether Plaintiffs have sufficiently identified and offered evidence in support of their causes of action that, arguably, entitle them to the relief that they seek.

### 1. Have Plaintiffs identified the claims made the subject of their motion?

Pursuant to this Court's most recent ruling on Defendants' second motion to dismiss, Plaintiffs' remaining claims are for: (1) denial of procedural due process with regard to silviculture rights; (2) unreasonable delay; (3) invalid cease and desist order; and (4) violations of the CWA. (Doc. 30). In their present motion, Plaintiffs seek a partial summary judgment that "Defendants are without ... CWA ... jurisdiction over certain real property .... Further, said judgment would necessarily set aside the Corps' cease and desist orders, stopping normal silviculture activities." (Doc. 35-1, p. 3).

This motion for injunctive and declaratory relief is premised on the following: that Defendants issued a notice of violation on December 4, 2015, and a cease and desist order on February 4, 2016 "essentially revoking Lewis' silviculture exemption" as provided by 33 U.S.C.

§ 1344(f)(1)(A), which exempts from regulation the discharge of fill material from "normal" silviculture activities into "waters of the United States", (Doc. 35-1, p. 6); the Corps has jurisdiction under the CWA to issue permits for the discharge of fill material into the "waters of the United States" and to issue "approved jurisdictional determinations" stating whether waters of the United States are present on a particular parcel of land; the notice of violation and the cease and desist order were issued without a response to Plaintiffs' prior requests for a jurisdictional determination, a response to Plaintiffs' prior application for permits, and without first conducting a hearing, (Doc. 23, p. 24); Plaintiffs' offered evidence which purportedly shows that the "waters" on Plaintiffs' property made the subject of the notice of violation and cease and desist order is "merely a remote roadside ditch," (Doc. 35-1, p. 8); a "roadside ditch" does not qualify as "waters of the United States" under *In re Needham*, 354 F.3d 340 (5th Cir. 2003), (*id.*); the property at issue "lies wholly within or above the 100-year flood plain", (*id.*); because the property is above the 100-year flood plain, it is outside of the jurisdiction of the Corps under the CWA, (*id.*); Defendants do not meet the *Lucas* and *Lipar* tests for CWA jurisdiction, (*id.*, p. 9);  the notice of violation and cease and desist order were issued without CWA jurisdiction, (*id.*);  therefore, the notice and order are "invalid" and should be revoked, (*id.*).  In addition, Plaintiffs argue that Defendants' delay in failing to respond to Plaintiffs' requests was an improper implementation of the CWA, "causing significant damages," and that Plaintiffs were deprived of procedural due process.  (Doc. 35-1, pp. 24-26).  Plaintiffs conclude by praying "for an order of partial summary judgment, setting aside jurisdiction under the CWA as unlawful, setting aside the cease and desist orders as unlawful, and setting aside revocation of the silviculture exemption as unlawful with specific findings that the delay was unlawful, and the refusal to process permits was unlawful." (*Id.*, p. 27).  Plaintiffs also "pray the case remains open for one year after summary judgment on

jurisdiction and any potential ruling on attorney fees, in order that Plaintiffs may litigate pending claims." (*Id.*).

While Plaintiffs do not specifically state upon which counts of their complaint they move for partial summary judgment, their allegations and argument in support of their motion are those underlying all of their remaining claims. Plaintiffs claim that they were denied procedural due process with regard to their silviculture rights because they were stopped from "normal" silviculture activities without a jurisdictional determination or hearing. Plaintiffs claim unreasonable delay for the Corps' alleged failure to respond to their multiple requests for jurisdictional determinations and permits. Based on these allegedly faulty actions, Plaintiffs allege that the Corps' cease and desist order is "invalid" and issued outside of the Corps' jurisdiction as dictated by the CWA. Finally, Plaintiffs allege that Defendants' improper procedures and over-regulation violated the CWA. *See Willis v. Cleco Corp.*, 749 F.3d 314, 319 (5th Cir. 2014) (the mover must "identify a theory as a proposed basis for deciding the claim" and explain "why the facts would allow a reasonable jury to decide in his favor"). The motion is partial in nature as it seeks a determination of the issue of jurisdiction under the CWA and only seeks injunctive and declaratory relief, not monetary relief. *See, e.g., Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 553-54 (5th Cir. 1996).

Based on the foregoing, it appears to the Court that all of Plaintiffs' pending claims are at issue in the present motion. This conclusion is supported by Plaintiffs' arguments in reply to Defendants' opposition. (Doc. 56). To be clear, the fact that Plaintiffs are seeking partial summary judgment on one legal issue underlying all four of its claims does not mean that Plaintiffs have met their burden of proof entitling them to the relief sought. Before determining whether Plaintiffs have made a sufficient evidentiary showing that they prevail on their causes of action, thus entitling

them to the relief sought, the Court next turns to the procedural issue of whether the injunctive and declaratory relief sought is even available to the Plaintiffs.

## 2.    Is the relief sought available under the law?

The Court first looks to Plaintiffs' motion to identify the precise relief sought.  Plaintiffs state that they are seeking a ruling that "Defendants are without … CWA … jurisdiction" over Plaintiffs' property, and a ruling setting aside the cease and desist order and notice of violation issued by the Corps, which effectively stopped normal silviculture activities.  (Doc. 35-1, p. 3).  In their prayer, Plaintiffs pray "for an order of partial summary judgment setting aside jurisdiction under the CWA as unlawful, setting aside the cease and desist orders as unlawful, and setting aside revocation of the silviculture exemption as unlawful with specific findings that the delay was unlawful, and the refusal to process permits was unlawful." (Doc. 35-1, p. 27).  Plaintiffs' prayer is more expansive than Plaintiffs' initial characterization of their motion.  Defendants argue that the sought-after relief is not available under the APA and is not appropriate.

Since the Clean Water Act does not set forth the standards for reviewing the Corps' decisions, we look to the APA, 5 U.S.C. §§ 701 *et seq.* (1976), for guidance. *See Save the Bay, Inc. v. Administrator of the EPA,* 556 F.2d 1282 (5th Cir.1977); *Natural Resources Defense Council, Inc. v. Train,* 510 F.2d 692 (D.C.Cir.1975). In general, the APA provides that a court shall set aside agency findings, conclusions, and actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or that fail to meet statutory, procedural or constitutional requirements. 5 U.S.C. §§ 706(2)(A), (B), (C), (D). This standard of review is highly deferential. A final agency decision is "entitled to a presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). While the court "must consider whether the decision was based on a consideration of the relevant

factors and whether there has been a clear error of judgment," and while "this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one." *Id.* at 416. In *Overton Park,* the Supreme Court stated unequivocally that the "court is not empowered to substitute its judgment for that of the agency." *Id.; accord Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285, 290, 95 S.Ct. 438, 442, 444, 42 L.Ed.2d 447 (1974); *Louisiana Environmental Society, Inc. v. Dole,* 707 F.2d 116, 118–19 (5th Cir.1983); *City of Houston v. FAA,* 679 F.2d 1184, 1190 (5th Cir.1982).

In *Ethyl Corp. v. EPA,* 541 F.2d 1 (D.C.Cir.) (en banc), *cert. denied,* 426 U.S. 941, 96 S.Ct. 2663, 49 L.Ed.2d 394 (1976), the Court of Appeals for the District of Columbia explained the boundaries of a court's role in reviewing an agency decision under the arbitrary and capricious standard. The *Ethyl* Court directed reviewing courts to "immerse" themselves in the evidence in the administrative record in order to determine whether the "agency decision was rational and based on consideration of the relevant factors." 541 F.2d at 36 (citing *Overton Park* ). The court warned, however, that this effort to understand the evidence must be performed with a "conscientious awareness of the limited nature" of the court's function and the need to defer to the agency's expertise:

> The enforced education into the intricacies of the problem before the agency is not designed to enable the court to become a superagency that can supplant the agency's expert decision-maker. To the contrary, the court must give due deference to the agency's ability to rely on its own developed expertise....
>
> Thus, after our careful study of the record, we must take a step back from the agency decision. We must look at the decision not as the chemist, biologist or statistician that we are qualified neither by training nor experience to be, but as a reviewing court exercising our narrowly defined duty of holding agencies to certain minimal standards of rationality.

*Id.* (citations and footnotes omitted).

The basis for a court's review of an agency decision is subject to narrow limitations. Where an agency's decision is based on an administrative record, the decision should be reviewed in light of that record. *Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *accord Louisiana Environmental Society, supra.* If the agency decision is not sustainable on the basis of the administrative record, then "the matter [should be] *remanded* to [the agency] for further consideration." *Camp,* 411 U.S. at 143 (emphasis added); *accord Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council, Inc.,* 435 U.S. 519, 549, 98 S.Ct. 1197, 1214, 55 L.Ed.2d 460 (1978).

In "certain narrow, specifically limited situations," agency action may also be set aside if it is not supported by "substantial evidence," 5 U.S.C. § 706(2)(E), or, in "other equally narrow circumstances," a court may engage in *de novo* review of the action and set it aside if it is "unwarranted by the facts." 5 U.S.C. § 706(2)(F). *Overton Park,* 401 U.S. at 414. *De novo* review under section 706(2)(F) is authorized only "when the action is adjudicatory in nature and the agency factfinding procedures are inadequate," or "when issues that were not raised before the agency are raised in a proceeding to enforce non-adjudicatory agency action." *Overton Park,* 401 U.S. at 415.

The determination of what qualifies as "waters of the United States" is precisely the type of agency decision that is normally subject to limited judicial review. The determination, which requires an analysis of the types of vegetation, soil and water conditions that would indicate the existence of wetlands and sophisticated mapping of various types of water bodies, is the kind of scientific decision normally accorded significant deference by the courts. *See Deltona Corp., supra; Hercules, Inc. v. EPA,* 598 F.2d 91, 106 (D.C.Cir.1978); *Ethyl, supra; see also U.S. Army Corps of Engineers v. Hawkes Co., Inc.,* ___ U.S. ___, 136 S.Ct. 1807, 1812, 195 L.Ed.2d 77

20

(2016) (it is for the Corps to specify "whether particular property contains 'waters of the United States' by issuing 'jurisdictional determinations' … on a case-by-case basis").  *De novo* review would permit the courts to intrude into an area in which they have no particular competence, and the presentation of the scientific evidence at both the administrative and judicial levels of the proceeding would result in inefficiencies and delays where they are most harmful. *See Sierra Club v. Sigler,* 695 F.2d 957, 981 (5th Cir. 1983) (noting that "protracted litigation in environmental cases can kill projects by delay").  The arbitrary and capricious standard affords the proper deference to the agency's scientific expertise, while the requirement that a court engage in a thorough, in-depth review of the administrative record to ascertain whether the agency has considered all of the relevant factors and whether the agency's decision is rational, *Overton Park,* 401 U.S. at 416, assures that deference to the agency does not result in abdication of judicial responsibility. *See Ethyl, supra,* 541 F.2d at 36–37.

Both parties address *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897 (5th Cir. 1983), but for different reasons.  In *Avoyelles*, the Fifth Circuit applied the standard set forth above. Defendants are correct that the procedural posture of *Avoyelles* was different than the matter presently before the Court.  (Doc. 48, p. 11, n. 4).  However, the Court notes that in *Avoyelles*, the district court had previously remanded the matter and ordered that a proper administrative record be prepared evidencing the determination of jurisdiction under the CWA.  *Avoyelles*, 715 F.2d at 907.  The parties were ordered to prepare an administrative record within 60 days. *Id.*  It was this administrative record that the Fifth Circuit found should have been the "focal point" of the district court's review of the jurisdictional determination.  *Id.*, citing *Camp, supra,* 411 U.S. at 142, 93 S.Ct. at 1244; *Louisiana Environmental Society, supra,* 707 F.2d at 119.  The Fifth Circuit held that "the district court erred in substituting its own wetlands determination for the EPA's instead

of reviewing the agency's decision, as supported by the administrative record, under the arbitrary and capricious standard." *Id*.

"If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985); *see also I.N.S. v. Ventura*, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam). When a court remands to an agency to clarify the reasons supporting its decision, the case law suggests that remand, without vacating the agency's order, is the appropriate course of action. *U.S. Postal Serv. v. Postal Regulatory Comm'n*, 785 F.3d 740, 756 (D.C. Cir. 2015); *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1086 (D.C. Cir. 2001)(remanding without vacating when the court is unsure of the grounds the agency asserts to defend its action); *see also Redeemed Christian Church of God v. United States Citizenship and Immigration Services*, 387 F.Supp.3d 734 (S.D. Tex. May 26, 2016) (where matter remanded to agency to clarify the administrative record and for the agency to clearly explain the basis for its decision based on the record).

Defendants set forth the APA standards in opposition to Plaintiffs' motion and argue that: (1) the "only possible remedy provided in the APA for Count I [procedural due process related to silviculture activity] is to set aside any unconstitutional Corps action," (Doc. 48, p. 9); (2) the "most the Court could do is to issue an order that the Corps either grant or deny the request for an approved [jurisdictional determination] and either grant or deny the permit application," (*id*.); however, the Court cannot "dictate how the Corps will act on the request for an approved jurisdictional determination or permit application," (*id*., p. 10); and (3) the Court should remand

the cease and desist order and notice of violation to the Corps for reconsideration rather than reaching the merits, (*id*.), and the Court cannot at any time "step in for the Corps" and "decide the jurisdictional status of Lewis's property *de novo*," (*id*., p. 11).   In summary, Defendants argue that this Court is not able to determine whether the Corps has jurisdiction under the CWA de novo and provide the relief that Plaintiffs have moved the Court to deliver.   In fact, as Plaintiffs note in their reply brief, there *is no administrative record* for the Court to review to determine if the Corps' exercise of jurisdiction under the CWA was "unlawful" or not.   (*See*, Doc. 56, p. 3).   Defendants admit that the Court may set aside any "unconstitutional" action, remand the matter to the Corps for further action, and order the Corps to act upon the request for a permit and rule upon the request for an approved jurisdictional determination.   Plaintiffs seem to concede this point in requesting, in the alternative, that "the Defendants should be given 15 days to make decisions on the permit and jurisdictional determination."

The Court agrees with Defendants that, given that there is no administrative record before it, the Court is unable to review this matter and grant Plaintiffs the relief that they seek.   That is, the Court is not permitted under the law to make a *de novo* ruling as to whether the Corps has jurisdiction under the CWA, at least not without some factual foundation on which to make such a review.   Such a determination requires the Court to assess affidavits of environmental consultants, maps of wetlands, and consideration of various elements that are, as the Fifth Circuit stated in *Avoyelles*, "precisely the type of agency decision that is normally subject to limited judicial review … the kind of scientific decision normally accorded significant deference by the courts." *Avoyelles*, 715 F.2d at 906-07.   Significantly, there is no administrative record before the Court to review, only Plaintiffs' offered affidavits and documentation of the "frustrating" process and delay at the administrative level.   For the Court to issue the ruling sought by Plaintiffs based

on the present record would therefore be premature.  *See U.S. v. Menendez*, 48 F.3d 1401 (5th Cir. 1995) (finding that the district court erred in granting summary judgment without considering record as a whole, which was rendered impossible  by the failure to file a certified copy of the administrative record; court remanded and ordered that mover provide a certified copy of the administrative record wot the district court).

Based on the foregoing, Plaintiffs' motion for summary judgment will be denied without prejudice.  The Court will therefore remand this matter to the proper agency to proceed with certain, defined actions, including preparing and certifying a complete administrative record.  Once this is complete, Plaintiffs may re-urge its motion.

### B.    Remand and Order

Defendants admit it has not produced an administrative record for the Court to review.  (Doc. 47-8, pp. 5, 29).  Defendants suggest as an alternative resolution to not only Plaintiffs' motion for partial summary judgment, but also its own, that the Court remand this matter to the Corps and order the Corps to rule upon Plaintiffs' request for an approved jurisdictional determination, to conduct a proper hearing, to rule upon Plaintiffs' request for a permit, to allow the Corps to re-visit its cease and desist order and better explain its basis for same, and to supplement and produce a complete and certified administrative record within a reasonable amount of time.  (Doc. 48, pp. 9-10; Doc. 47-8, pp. 5, 15, 18, 20, 25-27).

While Defendants argue that their alleged "unreasonable delay" was justified under the law, they concede their process could have been better explained.  (Doc. 47-8, p. 26).  Defendants also suggest that a hearing and further consideration of Plaintiffs' requests on a supplemented record might result in a different outcome, or the same outcome but with better clarity and in a better posture for the Court to review a complete administrative record to determine whether Defendants

acted arbitrarily and capriciously.  (Doc. 47-8, pp. 26-27).  Defendants admit that the Court may order the Corps to respond to the requests for an approved jurisdictional determination and respond to the permit application.  (Doc. 48, p. 9).

Based on the foregoing, it is clear to the Court that an administrative record has not been completed or produced; that Plaintiffs were not given a hearing; that while Defendants argue justification for their delay and the issuance of the cease and desist order, Defendants do not dispute that they could have been clearer in how and why they reached their determination; and that a supplemented and more complete administrative record might yield a different result.  While Plaintiffs understandably argue against remand because this will only result in further delay, (Doc. 56), they provide no legal authority to support a different procedure to move this matter forward.

Therefore, the Court remands this case to the Corps to conduct the following actions: respond to Plaintiffs' requests for jurisdictional determination; respond to Plaintiffs' permit application; re-visit the notice of violation and cease and desist order previously issued by Defendants, which should include conducting a proper hearing and fully explaining the basis of Defendants' revised determination; and prepare and certify a complete administrative record to be filed with the Court.

It is necessary for the Court to set a timeframe within which the ordered actions must take place.  Defendants suggest a time period ranging from 30 days to respond to the requests for jurisdictional determination, (Doc. 47-8, p. 18), to six months to respond to the permit application, (*id*., p. 20).  Plaintiffs suggest a timeframe of 15 days for Defendants to respond to the requests for a jurisdictional determination and application for a permit.  (Doc. 56, p. 3).  A review of jurisprudence from within the Fifth Circuit reflects that sixty days was ordered as a reasonable amount of time to compile a complete administrative record, *Avoyelles*, 715 F.2d at 907; and forty-

five days was ordered for the agency to issue a preliminary finding in re-visiting a prior determination and 120 days to issue the final finding, *Ecee, Inc., v. Federal Energy Regulatory Commission*, 645 F.2d 339, 345 (5th Cir. 1981).

In order to avoid further unnecessary delay and in an effort to determine the precise timeframe needed to conduct the ordered actions on remand, the Court orders Defendants to submit to the Court a proposed schedule for these actions within fifteen (15) days from the date of this Ruling and Order.  Plaintiffs are granted ten (10) days from the date of Defendants' proposed schedule to respond.  All parties are to include a rationale and basis to support the timeframe encompassed within their proposed schedule.  All parties are to be mindful of avoiding any unnecessary delay in their proposed schedule.

## V.     CONCLUSION

For these reasons, **IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Doc. 35) is **DENIED without prejudice**.   This matter is remanded to the Corps to proceed in accordance with this Ruling and Order: to respond to Plaintiffs' requests for jurisdictional determination; to respond to Plaintiffs' permit application; to re-visit the notice of violation and cease and desist order previously issued by Defendants, which should include conducting a proper hearing and fully explaining the basis of Defendants' revised determination; and to prepare and certify a complete administrative record to be filed with the Court.

The Court further orders Defendants to submit to the Court a proposed schedule for these actions within fifteen (15) days from the date of this Ruling and Order.  Plaintiffs are granted ten (10) days from the date of Defendants' proposed schedule to respond.  All parties are to include a rationale and basis to support the timeframe encompassed within their proposed schedule.  All parties are to be mindful of avoiding any unnecessary delay in their proposed schedule.

Signed in Baton Rouge, Louisiana, on August 4, 2020.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**