UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GARRY LEWIS, BRENDA GAYLE LEWIS,
G. LEWIS LOUISIANA, LLC, ROBERT
BEARD, CAROLYN MILTON, AND TOWN
OF LIVINGSTON, LA

VERSUS

UNITED STATES OF AMERICA AND
UNITED STATES ARMY CORPS OF
ENGINEERS

CIVIL ACTION

NO.  17-1644-JWD-RLB

## RULING AND ORDER

This matter comes before the Court on United States of America ("United States") and United States Army Corps of Engineers' ("Corps") (collectively "Defendants")  motion for reconsideration, (Doc. 69), of the Court's August 4, 2020 ruling, (Doc. 67), on Garry Lewis, Brenda Gayle Lewis, G. Lewis Louisiana, LLC, Robert Beard, Carolyn Milton, and Town of Livingston's ("Plaintiffs")[1] motion for partial summary judgment. (Doc. 35).  The August 4, 2020 ruling, (Doc. 67), on Plaintiffs' motion for partial summary judgment, (Doc. 35), denied Plaintiffs' motion without prejudice, remanded this matter to the administrative agency, and ordered the parties to submit a schedule of deadlines to complete certain actions at the agency level along with a rationale and basis for same. Plaintiffs oppose Defendants' motion for reconsideration.  (Doc. 73).   Defendants filed a reply.  (Doc. 76).  After carefully considering the law and the parties' arguments, the Court denies Defendants' Rule 59(e) motion for reconsideration.

---

[1] The Court notes that the pleadings and memoranda frequently do not distinguish among the various Plaintiffs or to whom "Plaintiffs" or "Plaintiff" is in reference.  The same holds true with references to "Defendants" and "Defendant".

1

Based on the ruling on Plaintiffs' motion for partial summary judgment, (Doc. 67), which remanded this matter to the administrative agency for further action, this Court subsequently ordered by text entry, (Doc. 68), a denial without prejudice of Defendants' motion for summary judgment, (Doc. 47). Defendants may re-urge their motion once this matter returns from the administrative agency. To the extent Defendants seek reconsideration of this text entry, (Doc. 68), and the denial without prejudice of Defendants' motion for summary judgment, (Doc. 47), which motion was not the subject of this Court's August 4, 2020, ruling, (Doc. 67), Defendants' motion for reconsideration is also denied.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiffs filed their initial Complaint on November 9, 2017. (Doc. 1). Plaintiffs own certain real property in Livingston Parish and claim that they have been damaged by Defendants' conduct with respect to 19 acres known as "Milton Lane". (*Id*., p. 1). Plaintiffs claim that the Corps declared regulatory jurisdiction over some of the land pursuant to the Clean Water Act ("CWA") and obstructed connection to municipal water supplies. (*Id*.). Plaintiffs further allege that the Corps "regulates Plaintiffs' freedom to use and enjoy said lands, such as restricting water supply utilities, normal timber harvesting, and development for needs of people of Livingston Parish." (*Id*., p. 2). Plaintiffs further claim that the "federal regulatory agencies involved" obstructed Plaintiffs' appeal rights regarding the Corps' actions, thereby allegedly depriving Plaintiffs of the due process of law. (*Id*.).

Defendants responded to Plaintiffs' original Complaint with a motion for partial dismissal on February 5, 2018. (Doc. 13). Defendants challenged some of Plaintiffs' claims under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. This Court granted the motion in part and denied the motion in part. The Court dismissed Counts II (the alleged bias of

Defendants) and III (claim of estoppel) of the Complaint and dismissed Counts IV (unreasonable delay) and V (an alleged "invalid" cease-and-desist order) as to the EPA.  Plaintiffs were ordered to amend their Complaint consistent with the Court's ruling.  (Doc. 22).

Plaintiffs amended their Complaint on September 6, 2018.  (Doc. 23).   Plaintiffs set forth a detailed "summary of facts" in their First Amended Complaint.  (*Id*., pp. 5-23).   The following is a summary of Plaintiffs' enhanced factual allegations.

On November 4, 2014, Lewis requested from the Corps a jurisdictional determination concerning Milton Lane.  (*Id*., p. 5).  The reason for the request was to prepare to begin construction of a water line.  (*Id*., p. 6).

Plaintiffs allege that the Corps did not "promptly" respond to the request in accordance with their own published guidelines.  (*Id*.).  Plaintiffs specifically allege that Defendants' response "should have been due on January 2, 2015."  (*Id*., p. 7).

Defendants allegedly made a visit to the "site"; however, Plaintiffs aver that Defendants focused on parts of land outside of the area at issue.  Because Defendants allegedly made references to improper logging operations, Plaintiffs claim that they asked the Corps to "do an additional [jurisdictional determination]" on the additional land to attempt to eliminate Defendants' concerns. (*Id*.).

On October 5, 2015, "Plaintiffs" met with "multiple top[-]level representatives of Defendants," who agreed to give the request for a jurisdictional determination "top priority". (*Id*., p. 8).  On October 14, 2015, the Corps issued a preliminary jurisdictional determination stating that the property "may be" subject to the Corps' jurisdiction.  On October 26, 2015, Defendants accepted a permit application concerning activities that Plaintiffs wished to conduct on the

3

property, "including [constructing] a water tower and water lines to serve both existing and future uses." (*Id.*).

On November 6, 2015, the Corps requested Environmental Protection Agency ("EPA") concurrence that a "logging operation" on the property did not qualify for the CWA's silviculture exemption. (*Id.*). The Corps' memorandum noted that a proposed project at the site included a "water tower and utility line project that will provide water to houses to the north." (*Id.*; Doc. 1-19).

On November 25, 2015, the EPA responded to the Corps' November 6th request, agreeing that the operation did not fall within the exemption. (*Id.*, p. 9; Doc. 1-20). After receiving this letter, the Corps issued a cease and desist letter dated December 4, 2015. (*Id.*, pp. 9-10; Doc. 1-14). The cease and desist letter states that the Corps "has reason to believe, and alleges, that you [Garry Lewis] are responsible for the recent deposition of fill material into a wetland … resulting from the excavation and side casting of material from a waterway locally known as Switch Cane Bayou." (Doc. 1-14, p. 3). The "cease and desist" letter goes on to state that Section 404 of the CWA prohibits the discharge of fill materials into a waterway unless authorized by a permit. The letter then orders Plaintiffs to cease and desist from such activity until a permit is obtained. (*Id.*). Plaintiffs allege that the "cease and desist" letter is referencing silviculture activities that Plaintiffs allege are not prohibited by the CWA. (Doc. 23, p. 9).

Plaintiffs allege that instead of "processing the [permit application to build the water tower and water lines] request," the Corps issued a cease and desist order "based on logging … technicalities," thereby denying Plaintiffs' rights to construct a water tower and utility line to provide access to water. (*Id.*, p. 9). Plaintiffs allege in the First Amending Complaint that the EPA's response letter on the silviculture exemption and the Corps' "cease and desist letter"

4

referred to different tracts of land than those included in the permit application "under review" and for which the judicial determination and permits were requested. (*Id*., pp. 9-10). Plaintiffs identify various items of correspondence that allegedly misconstrue the significance of the EPA letter and aver that this "Honorable Court (conceded to by EPA counsel) has ruled the EPA letter has no legal effect, and thus dismissed EPA from this action …. Plaintiff[s] request[] the Court on its own motion to set aside this [cease and desist order] based upon the pleadings and exhibits." (*Id*., pp. 10-11).

Plaintiffs allege that they were denied a proper hearing regarding the "logging activities". (*Id*., pp. 12-13). Plaintiffs claim that they were denied a proper mapping of the wetlands; instead, "Defendant" "merely said 38% of the tract was wetlands." (*Id*., p. 14). Plaintiffs further aver that "Defendant" violated due process in refusing to process a permit to allow a dry tract to be used as emergency flood housing. (*Id*.).

In September of 2016, Plaintiffs requested an appealable jurisdictional determination which was not answered. Plaintiffs plead the "equitable principal of 'action delayed is action denied.'" (*Id*., p. 16). Plaintiffs aver, "[t]heir finding of jurisdiction is final, occurred without so establishing same by judicially required tests, and equitable estoppel should prevent them from seeking remand for them to do it now and waste more time." (*Id*.).

Plaintiffs aver that the Corps "has asserted its offensive conduct was actually a determination of silviculture non-compliance by EPA contained in an EPA letter dated November 25, 2015 or facilitated by that EPA as a determination." (*Id*., p. 2). Plaintiffs claim that the "court has ruled there was no such determination". (*Id*. (citing Doc. 22, pp. 19-20)). The present dispute arises "because Corp[s] has declared regulatory jurisdiction over Satsuma lands under the Clean Water Act." (*Id*., p. 2).

5

Plaintiffs allege that "Defendants are unlawfully, unconstitutionally, inequitably[:] (1) obstructing needed construction of a municipal water project to replace contaminated well water[;] (2) obstructing Timber farming/silviculture on the lands[;] (3) obstructing the land[']s use for housing and development[;] and (4) … since May 2014, in conscious disregard of Plaintiffs['] collective damages enabled an adjacent Waste management facility to operate and pollute and fill conceded wetlands by intentionally enforcing the CWA unequally[.]" (*Id*.). Further, Plaintiffs contend that Defendants "intentionally delayed, damaged Plaintiffs and even obstructed appeal rights." (*Id*.).

Plaintiffs, Town of Livingston, Robert Beard, and Carolyn Milton, allege rights in Milton Lane and "desir[e] to use these property rights to serve this area with pure water to replace contaminated water."  (Doc. 23, p. 3).  Plaintiffs request the Court's[:] "(1) declaratory determination that Federal jurisdiction is absent under the CWA and judicial interpretation thereof requiring regulated wetlands be at the same time 'adjacent' and 'significantly connected' to regulated Federal waters[;] … (2) declaratory determination that a … percentage estimate of wetlands identification of the whole lands is an unlawful failure to delineate boundaries of wetland thereby restricting use of 'non-wetlands'[;] (3) … staying of all actions of Defendants [as] unlawful and commanding timely actions where lawful, and (4) setting aside an unlawful or unconstitutional Cease and Desist order[;] (5) [granting] [m]onetary relief for damages caused by unlawful conduct where appropriate, or retain jurisdiction thereover until ripe under the Federal Tort Claims Act".  (*Id*.).

Defendants responded to Plaintiffs' First Amended Complaint with a second motion for partial dismissal, (Doc. 26), that was granted in part and denied in part, (Doc. 30). The Court

6

dismissed Plaintiffs' regulatory taking claim without prejudice and dismissed Plaintiffs' procedural due process claim as to the right to access drinking water with prejudice. (*Id*.).

Plaintiffs then moved for partial summary judgment. (Doc. 35). Plaintiffs sought a ruling under Rule 56 that: (1) Defendants do not have jurisdiction over Plaintiffs' property under the Clean Water Act ("CWA"); and (2) that the Corps' cease and desist orders stopping silviculture activities be set aside. (Doc. 35-1, p. 3). This Court found that, given that there was no administrative record before it, the Court was unable to review this matter and grant Plaintiffs the relief that they sought. (Doc. 67, p. 23). That is, the Court was not permitted under the law to make a *de novo* ruling as to whether the Corps has jurisdiction under the CWA, at least not without some factual foundation on which to make such a review. (*Id.*). Plaintiffs' motion for summary judgment was denied without prejudice, and the Court remanded this matter to the proper agency to proceed with certain, defined actions, including preparing and certifying a complete administrative record. (*Id*., p. 24).

Defendants' current motion requests that the Court reconsider its ruling on the following grounds: (1) it was "clear and manifest legal error" for the Court to order the Corps to reconsider the cease-and-desist orders without first "assuring itself of jurisdiction to review those orders," and if the Court finds that it has jurisdiction to review the orders, the Court does not have authority to order the Corps to conduct a hearing, (Doc. 69-1, p. 4); (2) the Court must first make a finding of unreasonable delay before ordering the Corps to respond to Plaintiffs' request for a jurisdictional determination and permit application, (*id*., p. 5); and (3) the Court's order for an administrative record is premature, (*id*., p. 7). Additionally, Defendants request that the Court extend Defendants' deadline to submit a proposed schedule until "fifteen days after any denial of reconsideration." (*Id*., p. 8).

7

Plaintiffs oppose Defendants' motion. (Doc. 73, p. 1). Plaintiffs primarily re-argue their motion for partial summary judgment, again seeking a finding from the Court that Defendants do not have jurisdiction under the Clean Water Act. (*Id*., pp. 1-5). Second, Plaintiffs argue that the Defendants' plan has been to "delay endlessly" and to prevent Plaintiffs from "any recourse or relief." (*Id*., p. 5). Plaintiffs seek a swift denial of Defendants' motion and a brief schedule of deadlines within which the Corps is ordered to conduct the necessary actions. (*Id*.).

Plaintiffs then supplemented their opposition to Defendants' motion, asking the Court to take judicial notice of the decision entered on August 18, 2020, in *Lewis v. United States*, 18-cv-01838-MVL-JVM (E.D. La. Feb. 21, 2018). There, District Judge Lemmon granted Plaintiffs' Motion for Summary Judgment and set aside the Corps' Approved Jurisdictional Determination because Defendants' claim of jurisdiction was not supported under either the *Rapanos* Scalia "adjacency test" or the Kennedy "significant nexus test". (Doc. 75-2).

Defendants filed a reply arguing that: (1) Plaintiffs failed to provide any legal authority for the Court to order a hearing on the cease-and-desist orders, (Doc. 76, pp. 1-2); (2) Plaintiffs failed to provide any legal authority for the Court to order the Corps to respond to Plaintiffs' request for a jurisdictional determination and permit application without first finding unreasonable delay, (*id*., p. 2); (3) Plaintiffs fail to explain why it is appropriate to prepare an administrative record at this time, (*id*., p. 3); and (4) Defendants argue that Plaintiffs' arguments in opposition to their motion are inapplicable, particularly that the ruling in the Eastern District case does not apply, (*id*., pp. 3-5).

## II.  STANDARD OF REVIEW

While the Federal Rules of Civil Procedure do not formally recognize the existence of motions for reconsideration (*e.g., Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir.

1991)), courts customarily consider such motions under Rule 60(b) or Rule 59(e). *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991). Rule 59(e) of the Federal Rules of Civil Procedure allows a party to move to alter or amend a judgment within twenty-eight (28) days of its entry. Fed. R. Civ. P. 59(e).

District courts have considerable discretion in deciding whether to grant a Rule 59(e) motion. *Edward H. Bohlin Co., v. Banning Co.,* 6 F.3d 350, 355 (5th Cir. 1993). The factors to be considered in a Rule 59(e) analysis are: (1) the judgment is based upon a manifest error of fact or law; (2) newly discovered or previously unavailable evidence exists; (3) the initial decision was manifestly unjust; (4) counsel engaged in serious misconduct; and (5) an intervening change in law alters the appropriate outcome. *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F.Supp.2d 471, 475-76 (M.D. La. 2002) (citing *Metairie Bank & Tr. Co. v. Payne*, No. CIV A. 99-202, 2000 WL 979980 (E.D. La. July 17, 2000); *Campbell v. St. Tammany Par. Sch. Bd.*, No. CIV A. 98-2605, 1999 WL 777720 (E.D. La. Sept. 29, 1999)). However, a motion for reconsideration is an extraordinary remedy and should be used sparingly in the interest of finality and conservation of judicial resources. *Carroll v. Nakatani*, 342 F.3d 943, 945 (9th Cir. 2003). The court should deny a motion for reconsideration when the movant rehashes legal theories and arguments that were raised or could have been raised before the entry of the judgment. *See Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004). A motion for reconsideration does not support old arguments that are reconfigured. *Resolution Tr. Corp. v. Holmes*, 846 F.Supp. 1310, 1316, n.18 (S.D. Tex. 1994). Mere disagreement with a prior ruling does not support a Rule 59(e) motion. *See, e.g., Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993).

Courts in the Fifth Circuit are directed to take motions under Rule 59(e) seriously. Two cases note that Rule 59(e) does not place any particular limitations upon the possible grounds for

9

relief. *Ford v. Elsbury*, 32 F.3d 931, 937 (5th Cir. 1994); *Lavespere v. Niagara Mach. & Tool Works, Inc*., 910 F.2d 167, 174 (5th Cir. 1990), *cert. denied*, 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993), *abrogated on other grounds by Little v. Liquid Air Corp*., 37 F.3d 1069 (5th Cir. 1994). The Court notes the Fifth Circuit's general principle that "the district court must strike a proper balance between two competing interests: 'the need to bring litigation to an end and the need to render just decisions.'" *Ford v. Elsbury*, 32 F.3d at 937 (quoting *Lavespere,* 910 F.2d at 174).

## III. PARTIES' ARGUMENTS AND ANALYSIS

At the outset, it is important to recognize two key points before analyzing Defendants' motion. First, the motion before the Court on its August 4, 2020, ruling, (Doc. 67), was Plaintiffs' motion for partial summary judgment, (Doc. 35). In ruling upon Plaintiffs' motion for partial summary judgment, the Court considered the record and memoranda before it relevant to Plaintiffs' motion. It was not Defendants' motion for summary judgment, (Doc. 47), that was before the Court.

Second, Plaintiffs' motion for partial summary judgment was a stand-alone motion. The parties did not present cross motions for summary judgment to the Court. In fact, Defendants pointedly explained to the Court that they had previously asked the Magistrate Judge if the motions should be presented as separate motions or cross motions, and Defendants stated in their briefing that Defendants were advised to proceed with separate motions. (Doc. 47-8, p. 8, n. 2; Doc. 48, p. 1).

Based on the foregoing, the Ruling issued by this Court, of which Defendants seek reconsideration, is on Plaintiffs' motion for partial summary judgment. (Doc. 67). Therefore, the

Court will apply the standard of law for motions for reconsideration under Rule 59(e) to determine whether the Court made a manifest error of law in ruling upon Plaintiffs' motion.

As set forth above, the factors to be considered in a Rule 59(e) analysis are: (1) the judgment is based upon a manifest error of fact or law; (2) newly discovered or previously unavailable evidence exists; (3) the initial decision was manifestly unjust; (4) counsel engaged in serious misconduct; and (5) an intervening change in law alters the appropriate outcome. *Livingston Downs Racing Ass'n, Inc.*, 259 F.Supp.2d at 475-76. Further, the Court is mindful that reconsideration is an "extraordinary" remedy, applied sparingly, and should be exercised in pursuit of the balance between bringing litigation to an end and achieving a just result. *Carroll*, 342 F.3d at 945; *Ford v. Elsbury*, 32 F.3d at 937.

Defendants contend that this Court should grant its motion for reconsideration because the ruling was "manifest error of law". "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)). The Court has considered the briefing on Defendants' motion for reconsideration as well as its briefing on the underlying motion, Plaintiffs' motion for partial summary judgment. The Court disagrees with Defendants and denies the motion for reconsideration. The Court finds its ruling was proper and was neither plainly and indisputably erroneous, nor was it rendered in complete disregard of controlling law, for the following reasons.

As set forth above, the factual and procedural background of this matter is complex and marked by delay and lack of resolution. Whether or not the delay in handling and lack of resolution was justified or reasonable was not and is not before the Court. Not only did Plaintiffs' motion not ask the Court to rule on this issue, but the issue is not procedurally ripe for such a review by this Court.

Defendants issued a notice of violation on December 4, 2015, and a cease and desist order on February 4, 2016 (referred to as "the orders" by Defendants), "essentially revoking Lewis' silviculture exemption" as provided by 33 U.S.C. § 1344(f)(1)(A), which exempts from regulation the discharge of fill material from "normal" silviculture activities into "waters of the United States", (Doc. 35-1, p. 6). The Corps allegedly has jurisdiction under the CWA to issue permits for the discharge of fill material into the "waters of the United States" and to issue "approved jurisdictional determinations" stating whether waters of the United States are present on a particular parcel of land. All parties agree that the notice of violation and the cease and desist order were issued without a response to Plaintiffs' prior requests for a jurisdictional determination, a response to Plaintiffs' prior application for permits, and without first conducting a hearing, (Doc. 23, p. 24). Plaintiffs offered evidence and argue that the Defendants acted outside of the jurisdiction of the Corps under the CWA, (Doc. 35-1, pp. 8-9); that the notice of violation and cease and desist order were issued without CWA jurisdiction, (*id*.); and therefore, that the notice and order are "invalid" and should be revoked, (*id*.).

On January 28, 2020, Plaintiffs filed their motion for partial summary judgment seeking a ruling that Defendants do not have jurisdiction under the CWA. (Doc. 35). As explained in the Ruling, (Doc. 67), the Court was prohibited from making the determination that Plaintiffs sought because there was no jurisdictional determination by the Corps in the record and/or a certified administrative record before the Court for it to review. (*Id*., pp. 18-24). Defendants do not challenge this portion of the Court's ruling in its motion for reconsideration.

While the Court could have simply denied Plaintiff's motion and gone no further, the Court believed (and believes) that by remanding the matter for the completion of administrative processing and the preparation and certification of the administrative record, the Court will be in

12

a better position to fairly and expeditiously decide this matter. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) ("If … the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Only then can this case be in the proper posture to allow this Court to review Defendants' actions and rule whether Defendants acted arbitrarily and capriciously. *See United States v. Menendez*, 48 F.3d 1401 (5th Cir. 1995) (finding that the district court erred in granting summary judgment without considering record as a whole, which was rendered impossible by the failure to file a certified copy of the administrative record; court remanded and ordered that mover provide a certified copy of the administrative record to the district court). Therefore, the Court remanded this matter to the underlying administrative agency, as it is authorized to do.

In doing so, the Court ordered the underlying administrative agency to respond to Plaintiffs' request for a jurisdictional determination and permit application, re-visit the Corps' previously issued notice of violation and cease-and-desist order, and then prepare and certify an administrative record. (Doc. 67, pp. 24-26). Once these actions are completed, Plaintiffs may re-urge their motion or bring a wholly different motion to this Court. At that time, it is anticipated that the Court will have an Approved Jurisdictional Determination ("AJD") and a certified administrative record to review and assess whether the Corps was arbitrary and capricious in its determinations. Significantly, when the Eastern District Court ruled upon Plaintiffs' motion for summary judgment, it had the Corps' AJD and an administrative record to consider. *Lewis v. United States,* 18-cv-01838-MVL-JVM (E.D. La. Feb. 21, 2018). Plaintiffs asked this Court to make the same ruling as the Eastern District Court on what Plaintiffs portrayed to be essentially

13

the same motion, (Doc. 75-2); however, this Court could not do that because this Court did not have an adequate record before it to make the proper review.

It is this Court's remand and order of certain identified actions with which Defendants take issue. (Doc. 69). There are three categories of dispute. The Court addresses each in turn.

### A. Hearing on notice of violation and cease-and-desist order

First, Defendants argue that the Court was manifestly erroneous in ordering the Corps to conduct a hearing when it re-visits the prior notice of violation and cease-and-desist order. (Doc. 69-1, p. 3). While Defendants admit that they requested a remand so that the Corps could re-visit the notice of violation and cease-and-desist orders, they argue that remand was only proper "if and only if" the Court determined that it had jurisdiction to review these orders. (*Id.*, p. 4). Defendants argue that it was "manifest legal error" for the Court not to address the United States' argument regarding the Court's lack of jurisdiction to review the orders. (*Id.*).

Defendants sought a finding that the Court lacked jurisdiction to review the notice of violation and the cease-and-desist order in its motion for summary judgment. (Doc. 47-8, pp. 21-26). That motion, Defendants' motion for summary judgment, (Doc. 47), was not before the Court when it issued the ruling for which Defendants seek reconsideration. When this Court ruled on Plaintiffs' motion for partial summary judgment, Defendants are correct that the Court did not address whether it had jurisdiction "to review" the notice of violation and cease-and-desist order. This is because such a jurisdictional finding was not warranted at the time. Plaintiffs moved this Court to set aside the notice of violation and cease-and-desist order *after and because* the Court found that the Corps lacked jurisdiction under the CWA. However, the Court never reached that issue, because the Court was unable to make the initial jurisdictional determination sought.

14

Defendants also do not direct the Court to any legal authority requiring the Court to first make this jurisdictional determination prior to remand. For these reasons, the Court is satisfied that its decision was correct and finds that there was no manifest error of law in remanding this matter to the administrative agency to re-visit the Corps' prior notice of violation and cease-and-desist order.

Defendants' biggest concern seems to be this Court's order requiring that a hearing be held in conjunction with re-visiting the notice of violation and cease-and-desist order. (Doc. 69-1, p. 4). Defendants argue that the Court lacks the authority to order a hearing and that Defendants only suggested that a hearing might be necessary for the permit application, not for the cease-and-desist order. (*Id.*, citing Doc. 47-8, pp. 5, 20, 25-27, 29). Here, the Court finds some merit in Defendants' argument, and the Court takes this opportunity to clarify its prior ruling on this point.

In its Ruling, the Court ordered the Corps to "re-visit the notice of violation and cease and desist order previously issued by Defendants, which should include conducting a proper hearing and fully explaining the basis of Defendants' revised determination." (Doc. 67, p. 25). In making this ruling, it was the Court's intention for the Corps to utilize this opportunity on remand to re-visit the previously issued orders, just as the Corps proposed in Defendants' motion for summary judgment. (Doc. 47-8, p. 25). Defendants stated in their motion, "Here, the Corps has reviewed the record and believes that the Court could benefit from additional explanation of its bases for the orders. That review could potentially result in a range of outcomes, which could include obtaining additional relevant information and reaffirming the order with a supplemented record, or a different Corps action altogether." (*Id.*, p. 26).[2] The Court's intention was to achieve this goal

---

[2] Defendants also elaborated as to the benefits of a remand: "Remand would save the parties from having to spend any more time litigating over the current record. On remand, the Corps could supplement the record, modify the cease-and-desist orders in ways that narrow issues for judicial review, or even withdraw the orders and eliminate the need for further review. Even if the Corps reaffirms its prior cease-and-desist orders, Lewis will have a number of options.

15

and to allow for a hearing *if necessary*. In review of its ruling and in response to Defendants' motion for reconsideration, the Court realizes that clarification of its ruling is in order, as it presently can be interpreted as ordering a mandatory hearing. That was not the Court's intention.

To clarify, in remand of this matter to the administrative agency, the Court orders that the Corps re-visit the notice of violation and cease-and-desist order previously issued. If the Corps deems it necessary to its review of these orders to conduct a hearing, then the Corps' review and actions on remand should include such a hearing. The hearing is *not* a requirement.

**B.        Request for jurisdictional determination and permit application**

Turning to the Court's order for the Corps to respond to Plaintiffs' request for a jurisdictional determination and permit application, the Court finds its order to be proper and not a manifest error of the law. Just as with the review of the notice of violation and cease-and-desist order, the reasonableness or unreasonableness of the Corps' delay in responding to the jurisdictional determination request and permit application was not before the Court in its ruling. Plaintiffs did not move for summary judgment on their unreasonable delay claim. Plaintiffs moved for summary judgment seeking a specific finding – whether or not Defendants had jurisdiction under the CWA. Therefore, it was not necessary for the Court to analyze Plaintiffs' unreasonable delay claim, as Defendants argue in their motion for reconsideration. (Doc. 69-1, p. 5). Further, Defendants do not direct the Court to any legal authority dictating otherwise.

More pertinent to Plaintiffs' motion for partial summary judgment was the Court's explanation of what was missing from the record that prohibited the Court from making the determination requested by Plaintiffs. The Court did not have an AJD or an administrative record

---

He could seek an after-the-fact permit to resolve the alleged violation, if a permit is denied, he could seek judicial review of the denial. Or, if Lewis seeks judicial review of a reaffirmed cease-and-desist order, a supplemented record would make it easier for the Court to assess the agency's rationale. Accordingly, the Court should grant the United States' remand request rather than deciding Count 5 on the merits." (Doc. 47-8, p. 26).

16

to review.  For the reasons explained in the Court's Ruling, both an AJD and administrative record are necessary before the Court can properly analyze and rule upon Plaintiffs' motion.  (Doc. 67, pp. 18-24).  Therefore, the Court's remand to the Corps to respond to Plaintiffs' prior request for a jurisdictional determination and their permit application was within the Court's authority and proper under the law.

Defendants argue that they only suggested a remand in order to re-visit the cease-and-desist orders, not to respond to the jurisdictional demand and permit application.  (Doc. 69-1, p. 6).  Defendants maintain that their delay in responding to the request and application was reasonable; therefore, a remand has not been requested by Defendants.  (*Id*.).  This may be true.  However, Defendants do not deny or retract their prior statement that "the most that the Court could do is to issue an order that the Corps either grant or deny the request for an approved [jurisdictional determination] and either grant or deny the permit application."  (Doc. 47-8, p. 15).  Defendants also state in their motion for summary judgment that "if the Court finds that it is not reasonable for the Corps to wait for the resolution of the two pending cases and orders the Corps to act on [Plaintiffs'] approved [jurisdictional] request, the Courts should set a deadline for action no sooner than thirty days."  (*Id*., pp. 17-18).  Regarding the permit application, Defendants suggested "the Court should set a deadline for action no sooner than six months."  (*Id*., p. 20).

Simply put, Defendants do not provide legal authority for its contention that the Court cannot remand this matter and order the Corps to grant or deny the jurisdictional request and the permit application.  In fact, Defendants' representations and argument to the Court suggest a possible remand and order along these lines.[3]  The Court does not find manifest error of law and maintains its prior ruling on Plaintiffs' motion for partial summary judgment.

---

[3] "The Court can compel an agency to take action that is legally required, but it has 'no power to specify what the action must be.'" (Doc. 48, p. 9 (citing *Norton v. S. Utah Wilderness All. (SUWA)*, 542 U.S. 55, 65 (2004))).  "As

17

### C.       Administrative record

Finally, Defendants contend that an order for a certified administrative record is premature. (Doc. 69-1, p. 7). Defendants reason that the Court should wait to see how the Corps acts on remand and *then* enter a deadline for the Corps to produce the administrative record *if* the Plaintiffs challenge any of the Corps' orders generated by the remand. (*Id*.). While Defendants' position will result in further delay and avoidance in producing a complete administrative record, the Court agrees that it would be premature to prepare and certify the record prior to the Corps re-visiting the notice of violation and cease-and-desist order and prior to responding to the request for a jurisdictional determination and permit application. However, there is nothing in the Court's Ruling preventing a schedule of deadlines that allows for the preparation of the administrative record after these actions take place. When the parties propose schedules to the Court in accordance with the Court's Ruling, the parties may allocate the last deadline in the schedule for the preparation of the record.

## IV.    CONCLUSION

For these reasons, **IT IS ORDERED** that Defendants' Motion for Reconsideration (Doc. 69) is **DENIED**. The Court orders Defendants to submit to the Court a proposed schedule for the actions set forth in its Ruling, (Doc. 67), within seven (7) days from the date of this Ruling and Order. Plaintiffs are granted five (5) days from the date of Defendants' proposed schedule to

---

such, the most the Court could do is to issue an order that the Corps either grant or deny the request for an approved JD and either grant or deny the permit application." (*Id*. (citing U.S. Br. at 11)).

respond.  All parties are to include a rationale and basis to support their proposed timeframe.  All parties are to be mindful of avoiding any unnecessary delay in their proposed schedules.

Signed in Baton Rouge, Louisiana, on September 16, 2020.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**