## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**GARRY LEWIS, ET AL.**

                  **CIVIL ACTION**

**VERSUS**

                  **NO. 17-1644-JWD-SDJ**

**UNITED STATES OF AMERICA, ET AL.**

### RULING AND ORDER

**I.   INTRODUCTION**

This matter comes before the Court on *Defendants' Partial Motion to Dismiss Plaintiffs' Second Supplemental and Amending Complaint for Want of Jurisdiction* (Doc. 160) (the "*Motion*") filed by Defendants the United States of America ("United States"), the United States Army Corps of Engineers ("Corps"), Colonel Michael Clancy, and the Environmental Protection Agency ("EPA") (collectively, "Defendants" or the "Government"). Plaintiffs Garry Lewis, Brenda Gayle Lewis, G. Lewis Louisiana, LLC, Robert Beard, Carolyn Milton, and Town of Livingston, LA (collectively, "Plaintiffs") oppose the *Motion*. (Doc. 166.) Defendants have filed a reply. (Doc. 169.) Plaintiffs have filed a *Motion for Leave to File Sur-Opposition to Defendants' Reply . . .* (Doc. 170), which the Court hereby grants. Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule.

Plaintiffs first sought a jurisdictional determination for the Milton Lane property in November 2014—nearly a decade ago. (Doc. 1.) They were forced to file suit three years later in 2017. (*Id.*) The Court has witnessed this arduous process firsthand, drafting several written rulings—*Lewis v. United States*, 483 F. Supp. 3d 382 (M.D. La. 2018); *Lewis v. United States*, No. 17-1644, 2019 WL 4738791 (M.D. La. Sept. 27, 2019); *Lewis v. United States*, No. 17-1644, 2020

WL 4495473 (M.D. La. Aug. 4, 2020), *adhered to on denial of reconsideration*, No. 17-1644, 2020 WL 5542665 (M.D. La. Sept. 16, 2020)—and holding countless status conferences.

On October 21, 2020, the Court issued a scheduling order

> remanding this matter to the Corps "to respond to Plaintiffs' requests for jurisdictional determination; to respond to Plaintiffs' permit application; to re-visit the notice of violation and cease and desist order previously issued by Defendants, which should include conducting a proper hearing and fully explaining the basis of Defendants' revised determination; and to prepare and certify a complete administrative record to be filed with the Court." (Doc. 67 at 26.)

(Doc. 85 at 1.) The Government was supposed to complete the process within 285 days, and the Court further ordered that "**no additional time will be granted**" and that, because the "matter ha[d] been delayed for years[,] . . . [a]ll parties [were] ordered to make this a top priority and to cooperate with one another in every way." (*Id.* at 2.)

The Court granted the Government an extension to comply with the order, (Doc. 99), yet the Government did not comply. Consequently, the Court held the Government "in contempt for [its] unreasonable, unjustified, and unexplained delay in the permit process." (Doc. 110 at 1.) More time was given to comply. (*Id.* at 1–2.)[1]

And what has been the result? The Government has delayed so much that Plaintiffs withdrew their application, (Doc. 131), and filed the *Second Supplemental and Amending Complaint* ("*SAC*"), (Doc. 143). Plaintiffs now claim that pine beetles destroyed the Lewises' timber, that their commercial venture is no longer viable, that some Plaintiffs were deprived of

---

[1] The Court notes that it instructed Plaintiffs to file a separate motion for attorney's fees. (Doc. 110.) Defendants did not appeal the contempt order. Due to ongoing settlement negotiations between the parties, this Court denied Plaintiffs' motion for attorney's fees without prejudice to Plaintiffs' right to refile if settlement negotiations failed. (Doc. 152.) Those negotiations did fail, and the case was reopened. (Docs. 153, 154.) To date, Plaintiffs have not been compensated for the contempt order.

safe drinking water and suffered injuries, and that the Town of Livingston was deprived of a water system. (*SAC*, Doc. 143 at 7–8.) They now seek over $68,000,000 in damages. (*See id*.)

Do they have this recourse? Defendants say no. They move for dismissal of all claims for damages on the basis of sovereign immunity. (Doc. 160.) According to the Government, Plaintiffs have only one claim: the challenge to the Corps' approved jurisdictional determination ("AJD") for Milton Lane, which the Corps intends to reconsider in light of *Sackett v. EPA*, 143 S. Ct. 1322 (2023). (Doc. 169 at 10 n.7.) That is, after years of delay, the Government is willing to provide Plaintiffs with the AJD they initially wanted, only now after considerable losses.

The Government's position strikes the Court as deeply inequitable. "Nowhere does the medieval concept of 'the King can do no wrong' underlying the doctrine of sovereign immunity sound more hollow and abusive than when an imperial power applies it to a group of helpless subjects. This cannot be a proper role for the United States of America." *Sanchez ex rel. D.R.-S. v. United States*, 671 F.3d 86, 119 (1st Cir. 2012) (Torruella, J., dissenting). That is strong language. But, surely, while the Court recognizes that "[w]aivers of sovereign immunity should be narrowly construed in favor of the United States," *In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Miss. Pls.)*, 668 F.3d 281, 287 (5th Cir. 2012) (citations omitted), at the very least, that doctrine cannot be stretched to the point of serving as a total immunity, even where the United States has specifically allowed for a waiver.

With that in mind, and having carefully considered the matter, the Court will grant in part and deny in part Defendants' motion. On the one hand, the Government is entitled to some relief. Count II seeks damages under the Clean Water Act, 33. U.S.C. § 1251 *et seq*. ("CWA"). Because compensatory damages are not recoverable under the CWA, Plaintiffs' claims under this statute must be dismissed.

Likewise, in Count III, Plaintiffs seek to stay the EPA from taking certain action over their 93.7-acre tract under 5 U.S.C. § 705 of the Administrative Procedure Act (the "APA"). But such relief is only available for "final agency action." Since the EPA's notice of violation does not constitute such final agency action, Plaintiffs are not entitled to a stay under § 705.

But the heart of the matter is Count I—Plaintiffs' claim under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1). Plaintiffs use the private actor analogue of the FTCA, arguing that the United States has waived sovereign immunity because a private actor in the Government's position would be liable under state law. Defendants respond that there is no waiver of sovereign immunity on this claim because (1) the private person analogue cannot be used when, as here, a plaintiff alleges a violation of federal law; (2) according to *Sanchez*, the FTCA's more general scheme of tort liability is trumped by the more specific limitation on damages contained in the CWA; and (3) some of Plaintiffs' claims fall within an exception to the FTCA's waiver of sovereign immunity for any "claim arising out of . . . interference with contract rights[.]" 28 U.S.C. § 2680(h).

The Court disagrees. First, Plaintiffs are not alleging violations of federal law; rather, they have pled allegations and pointed to evidence in the record that Defendants breached a duty owed to them under *Louisiana* law. That is, Defendants voluntarily undertook a duty to timely process the AJD requests and CWA permit applications and otherwise promptly deal with Plaintiffs. They breached that duty through years of delay and negligent acts, and this breach caused damages to the Plaintiffs—all of which harm was easily foreseeable.

Second, the Court is not persuaded by Defendants' reliance on *Sanchez* that the CWA precludes an action for damages under the FTCA. *Sanchez*'s proclamation that the CWA cannot allow for an award of damages of any kind conflicts with both the plain language of the CWA and *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), which specifically rejected the argument that

the CWA preempted an award for punitive damages under general maritime law. For the same reasons, the Court finds that the CWA is not so comprehensive as to foreclose an award of compensatory damages under the FTCA and its incorporation of Louisiana state law.

And third, the interference with contract exception does not preclude an award of compensatory damages under the FTCA as to Plaintiffs Beard, Milton, and the Town of Livingston. Again, Defendants are liable to these Plaintiffs for their negligence and the breach of the duty of care owed to them under Louisiana law, not for the tort of interference with contractual relations.

For all these reasons, Defendants' *Motion* will be granted in part and denied in part. The *Motion* will be granted as to Counts II and III, and it will be denied as to Count I.

## II.    RELEVANT FACTUAL BACKGROUND[2]

### A.  The Parties, Property in Dispute, and Overview of Claims

This case arises out of the Corps' assertion of regulatory jurisdiction under the CWA over certain real property in Livingston Parish, Louisiana. (*SAC*, Doc. 143 at 1.) This property includes (1) 2,000 acres of land removed from silviculture use, (2) two 20-acre tracts along Milton Lane, (3) Milton Lane, and (4) an adjacent 93.7-acre tract (sometimes referred to in this *Ruling and Order* as the RV Resort). (*Id.*)

In sum, Plaintiffs allege (a) that, for each of the above tracts, the Corps relies on the same non-jurisdictional ditches and tributaries which under applicable law "are constitutionally insufficient to confer CWA jurisdiction," and (2) that there are no mappable wetlands independent of these disputed ditches or tributaries. (*Id.* at 2.) Alternatively, regardless of jurisdiction, Plaintiffs

---

[2] The following allegations are taken from Plaintiffs' *Second Supplemental and Amending Complaint* (Doc. 143) and Plaintiffs' *First Amended and Superseding Complaint* (Doc. 23) ("*FAC*") to the extent it is incorporated into the former.

allege that the delays of the Corps in providing its AJD and withdrawing CWA exemptions caused Plaintiffs damages. (*Id.*)

Based on these allegations, Plaintiffs seek (a) damages under the FTCA (Count I), (b) damages under the CWA (Count II), and (c) judicial review under the APA (Count III). (*Id.* at 11–28.) The Court will provide more detail on each of these claims below.

### B. Factual Allegations in the *FAC* and *SAC*

Plaintiffs Garry and Brenda Lewis are owners of the above four properties. (*SAC*, Doc. 143 at 4.) The following section details Plaintiffs' efforts to use those properties and Defendants' alleged efforts to thwart them.

On or about December 2012, the local well water was contaminated after seismic test blasts. (*FAC*, Doc. 23 at 5.) The Town of Livingston and its citizens (including Plaintiffs) determined that a municipal water line was needed for the community. (*SAC*, Doc. 143 at 5.)

The Lewises entered into a verbal contract to provide land, rights of way, funds, and permit requests to provide municipal drinking water via a water tower. (*Id.* at 4.) Plaintiffs also agreed to install water lines along Milton Lane, along its roadside ditches and adjoining property, which was part of Lewises' historical pine plantation along Interstate 12 in Livingston Parish. (*Id.*)

Milton Lane is a long-established, gravel timber road within or above the 500-year floodplain (*Id.* at 5.) It is located about 10 to 15 miles from the nearest "'traditional' navigable water," lacking "significant [water] flow." (*Id.*)

On November 4, 2014, the Lewises submitted to the Corps a request for a determination of no jurisdictional wetlands and to allow for the installation of the municipal drinking lines along Milton Lane. (*Id.*) That request was delayed until a "preliminary" determination was issued on October 14, 2015. (*Id.*) On October 29, 2015, a 404-permit application was submitted to the Corps

to install the water lines. (*Id.*) But the Corps stopped all consideration of the permit until December 2015, despite requests from individuals, the municipality, and congressmen. (*Id.*) On November 9, 2017, Plaintiffs filed this suit challenging federal jurisdiction over these lands as "Navigable Waters." (*Id.*)

With respect to the two 20-acre adjoining tracts, on July 13, 2015, Plaintiffs submitted a request for a jurisdictional determination. (*Id.*) Owners retained environmental consultants who found no wetlands. (*Id.*) The Corps disagreed, deciding that there were "mappable wetlands present." (*Id.*) Plaintiffs asked the regulators to make their independent finding about both the existence of wetlands and jurisdiction, but the Corps delayed its requested AJD for over a year, until August 26, 2016. (*Id.* at 5–6.) Even though the Corps was unable to specifically locate any wetlands in its AJD, and even though the regulatory staff said that the parcels contained only 22%–38% wetlands, the Corps determined it had jurisdiction over "all" the property. (*Id.* at 6.)

After the August 2016 flood, there was an increased demand for high elevation replacement housing, so on October 26, 2016, Plaintiffs replaced their 404-permit application to utilize the land for silviculture with a 404-permit application to use the non-wetlands portion for housing. (*Id.*) The Corps refused to process the permit without issuing reasons. (*Id.*) Plaintiffs sued on February 21, 2018, in the United States District Court, Eastern District of Louisiana to challenge the Corps' exercise of jurisdiction over these lands as "Navigable Waters." (*Id.*)

With respect to silviculture, Plaintiffs claim Defendants' top manager used silviculture activity to justify "punishing delays and omissions without any hearing or due process to stop conversion of these silviculture lands for development," even though silviculture is exempted from the CWA. (*Id.*) Plaintiffs were directed to submit a timber management plan in 2012, yet Defendants' enforcement chief was unaware of the plan's existence. (*Id.*) On November 6, 2015,

the Corps requested an EPA letter determining that the logging operation on the property did not qualify for the CWA's silviculture exception, which was received on November 25, 2015. (*FAC*, Doc. 23 at 8–9; Doc. 1-19; Doc. 1-20.) On December 4, 2015, the Corps issued a notice of violation based on the EPA's letter, followed by what the Plaintiffs characterize as "effectively . . . a Cease and Desist." (*FAC*, Doc. 23 at 9–10.) Ultimately, Defendants stopped all of the Lewises' silviculture activity, and Defendants' lack of due care caused significant losses and damages from a pine beetle infestation that led to $10,000,000 in economic loss. (*SAC*, Doc. 143 at 7.)

Plaintiffs also claim the Corps' negligence (a) precluded the use of the land for housing, for which the property was well suited because it did not flood and because according to FEMA it was not wetlands; (b) stopped the installation of drinking water lines, causing damages to all Plaintiffs; and (c) deprived Plaintiffs Beard and Milton of safe drinking water, which led to the contamination of Beard's private well water, caused him injury, and shortened his life expectancy. (*Id.*)

### C. Plaintiffs' Claims for Relief in the *SAC*

#### 1. Count I: FTCA

Plaintiffs first seek damages under the FTCA, alleging that Defendants' conduct was the proximate cause of the damages suffered by the Plaintiffs. (*SAC*, Doc. 143 at 11.) Plaintiffs allege fifty-one (51) instances of acts or omissions giving rise to liability under the statute, including but not limited to the failure to timely complete approved jurisdictional determinations (after telling Plaintiffs it would be a "top priority"), the failure to timely process 404-permit applications, and multiple failures to properly apply and enforce the CWA to the disputed lands. (*See id.* at 13–18.)

As a result of these actions, Plaintiffs claim individual damages for the harm they incurred. More specifically, Mr. Lewis, Ms. Lewis, and Lewis Louisiana, LLC claim $10,000,000 in

damages due to a pine beetle infestation that occurred after Defendants issued their cease-and-desist order regarding the land's silviculture operations. (*Id.* at 18–19.) Ms. Milton claims $100,000 in damages for injuries and medical conditions (including rashes and damage to her internal organs and stomach) caused by drinking contaminated water after Defendants obstructed the installation of the municipal water system. (*Id.* at 19.) Mr. Beard, who was also exposed to contaminated water, claims $1,010,000 for kidney damage and other injuries to his internal organs, medical expenses, and property damage. (*Id.* at 19–20.) Finally, the Town of Livingston claims $100,000 in damages for the loss of grants, customers, and revenue pertaining to the installation of the municipal water system. (*Id.* at 19.)

### 2. *Count II: CWA*

In their second count, in the alternative to damages under the FTCA and relief under the APA, Plaintiffs seek damages under the CWA and Louisiana Civil Code article 2315. (*Id.* at 21.) In sum, Plaintiffs plead that they have "a statutory right not to be adversely affected by Defendants' improper or wrongful conduct when defendants wrongfully apply the CWA directly to the complaining citizen or to a third party." (*Id.* at 21–22.) Plaintiffs assert eight types of wrongful conduct, including but not limited to the improper exercise of jurisdiction over silviculture-based lands, unjustified delays in requested agency action, the failure to process permits properly, and utilizing incorrect legal standards which define the scope of navigable waters. (*Id.* at 22–25.)

Plaintiffs seek additional damages totaling $68,708,000. (*Id.* at 25–26.) These damages are derived from attorney fees, consultant fees, expenses associated with administrative action, and lost income from idle lands (including from silviculture use and the inability to develop and rent 452 residential units that had the approval of the Livingston Parish planning and zoning organization). (*Id.*)

### 3.  *Count III: APA*

In their third count, Plaintiffs sue under the APA to supplement their existing claims under the United States Constitution and to challenge the Defendants' finding of jurisdiction under the CWA. (*Id.* at 26.) Plaintiffs argue that such an exercise of jurisdiction exceeds the constitutional limits established by *Rapanos v. United States*, 547 U.S. 715 (2006), and the plain terms of the Navigable Water Protection Rule. (*Id.*)

Particularly relevant here, Plaintiffs contend that the EPA action of November 2, 2021, is a final agency action that imposes restraints on their 93.7-acre parcel. (*Id.* at 26–27.) Alternatively, Plaintiffs ask the Court to postpone any EPA action pending judicial review of the relevant wetland determination, as they will be irreparably injured. (*Id.* at 27.) Plaintiffs seek declaratory relief, asking the Court to rule that the agency action is arbitrary and capricious due to a lack of proper jurisdictional determinations and the EPA letter's inconsistency in applying the *Rapanos* test. (*Id.*) Additionally, Plaintiffs claim the Corps' investigation was unauthorized due to the lack of landowner consent or an administrative warrant, and thus, their actions violated the Plaintiffs' right to due process. (*Id.*)

Accordingly, Plaintiffs pray that the Court review the AJD issued regarding Milton Lane and determine that there is no CWA jurisdiction over it and the adjacent properties. (*Id.* at 28.) Plaintiffs further pray that the Court find that the EPA's enforcement action is arbitrary and capricious, since there is no jurisdiction over the 93.7-acre RV Resort. (*Id.*) Finally, Plaintiffs ask for interim relief including but not limited to a preliminary injunction over the EPA and USACE action regarding the 93.7-acre tract to preserve the status quo through the pendency of this litigation. (*Id.*)

### III.   RULE 12(B)(1) STANDARD

A party may raise the defense of lack of subject matter jurisdiction in a motion brought under Federal Rule of Civil Procedure 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1). "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer*, 668 F.3d at 286 (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citation omitted)).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). But, "[a] motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders*, 143 F.3d at 1010; *see also Ramming*, 281 F.3d at 161 (citing *Home Builders* with approval).

There are two forms of Rule 12(b)(1) challenges to subject matter jurisdiction: "facial attacks" and "factual attacks." *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings." *Harmouche v. Consulate Gen. of the State of Qatar*, 313 F. Supp. 3d 815, 819 (S.D. Tex. 2018) (citing *Paterson*, 644 F.2d at 523). In considering a "facial attack," a court "is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands." *Paterson*, 644 F.2d at 523.

11

Conversely, "[a] factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings—such as testimony and affidavits—may be considered." *Harmouche*, 313 F. Supp. 3d at 819 (citing *Paterson*, 644 F.2d at 523). The "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (citation omitted). "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (citation omitted). When a factual attack is made, the plaintiff, as the party seeking to invoke jurisdiction, must "submit facts through some evidentiary method and . . . prov[e] by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson*, 644 F.2d at 523.

## IV.   DISCUSSION

### A.   Count II: CWA Claims

#### 1.   *Parties' Arguments*

Defendants contend that the Court should dismiss Plaintiffs' Count II, seeking damages under the CWA against the Corps. (Doc. 160-1 at 13.) Defendants first assert that the Court's prior order on Plaintiffs' *FAC* (Doc. 30) cannot serve as the basis for jurisdiction over Count II; that prior order found a waiver of immunity under the APA for non-monetary relief, but, here, Plaintiffs pray for damages. (Doc. 160-1 at 13.)

Additionally, the Supreme Court has found no private remedies available under the CWA except those provided by Congress within the CWA itself; there can be no implied remedy. (*Id.* at 14.) Congress allowed for two types of claims—(1) under 33 U.S.C. §§ 1365(a)(1), for a violation of an effluent standard or limitation or order concerning same, and (2) under § 1365(a)(2), where

the Administrator has failed to perform an act which was not discretionary. (Doc. 160-1 at 14.) Here, Plaintiff has brought no claims under either of these provisions. (*Id.*)

Rather, the only relief available under the citizen's suit provision is prospective injunctive relief and civil monetary penalties payable to the Government. (*Id.* at 15.) Further, the Supreme Court has rejected a claim for compensatory or punitive damages. (*Id.*) Defendants rely on *Sanchez ex rel. D.R.-S. v. United States*, 671 F.3d 86 (1st Cir. 2012), for this proposition. (*Id.*) Consequently, the Court lacks jurisdiction over the claims in Count II under the CWA. (*Id.*) This claim should be dismissed with prejudice, and Plaintiffs should be denied leave to amend as futile. (*Id.*)

Plaintiffs respond that the CWA does allow a damage remedy to affected citizens. (Doc. 166 at 13 ("[a] reasonable reading of the act in Louisiana and FTCA, would include all damages against all parties. . . .").) Defendants' negligence and delay has caused considerable losses to Plaintiffs. (*Id.* at 13–14.) According to Plaintiffs, this Court previously found that the CWA provides a remedy "disparate and apart from the APA, including for e.g., 'improper procedures and over-regulation[.]'" (*Id.* at 14.) Defendants did not seek a timely reconsideration of this ruling, and, again, Louisiana Civil Code article 2315 allows recovery. (*Id.*)

In reply, Defendants reiterate that Plaintiffs seek $68,708,000 in compensatory damages, but they do not seek non-monetary relief. (Doc. 169 at 8.) Defendants again stress that the Supreme Court has rejected claims for compensatory and punitive damages under the CWA, as such claims are not expressly allowed by the statute. (*Id.*) The Court's prior order only found a waiver of sovereign immunity as to claims of non-monetary declaratory and injunctive relief, not claims for monetary relief. (*Id.* (citing Doc. 30 at 41–48).) As a result, the Court must dismiss Plaintiffs' claims. (*Id.* at 10.)

In surreply, Plaintiffs concede:

> We are content to the extent that Louisiana Civil Code Art. 2315 is consumed in the FTCA for federal torts committed in Louisiana. As we pointed out in note 23 of our Opposition (Rec. Doc. 166, pg. 10, fn. 23), violation of a statute is fault under Art. 2315, as well as most negligence is under the FTCA. Both laws apply here, regardless of whether the CWA alone provides for damages. . . . Neither the *Middlesex County Sewerage Authority v. Nat. Sea Clammers Assoc.*, or *Sanchez v. U.S.* cases cited by Defendants in their Reply involve Louisiana torts or the Louisiana Civil Code.

(Doc. 170-1 at 5 & n.2.)

### 2. *Law and Analysis*

Preliminarily, the Court agrees with Defendants that its prior ruling on Plaintiffs' CWA claim is not controlling here. As Defendants contend, that order only found a waiver of sovereign immunity for claims of injunctive and declaratory relief. (*See* Doc. 30 at 38–48.) Thus, this Court has not resolved whether Plaintiffs are entitled to damages under the CWA.

"A plaintiff may only sue the United States if a federal statute explicitly provides for a waiver of sovereign immunity. The United States must consent to be sued, and that consent is a prerequisite to federal jurisdiction." *In re FEMA Trailer*, 668 F.3d at 287 (citing *Delta Com. Fisheries Ass'n v. Gulf of Mex. Fishery Mgmt. Council*, 364 F.3d 269, 273 (5th Cir. 2004)). "Waivers of sovereign immunity should be narrowly construed in favor of the United States." *Id.* (citing *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 253 (5th Cir. 2006)).

"Congress enacted the CWA with the express purpose of 'restor[ing] and maintain[ing] the chemical, physical, and biological integrity of the Nation's waters.'" *Env't Conservation Org. v. City of Dall.*, 529 F.3d 519, 525 (5th Cir. 2008) (quoting 33 U.S.C. § 1251(a)). "Among the myriad of mechanisms for achieving this goal, Congress empowered private citizens to bring suit in federal court against alleged violators of the Act." *Id.* at 525–26 (citing 33 U.S.C. § 1365). "Under the

CWA citizen-suit provision, federal courts are authorized to enter injunctions and assess civil penalties, payable to the United States Treasury, against any person found to be in violation of 'an effluent standard or limitation' under the Act." *Id.* at 526 (quoting 33 U.S.C. § 1365(a); and then citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 175 (2000)); *see also Ailor v. City of Maynardville, Tenn.*, 368 F.3d 587, 590 (6th Cir. 2004) ("The CWA limits the remedies available to citizen plaintiffs to injunctive relief, the assessment of civil penalties, and attorney's fees." (citing 33 U.S.C. § 1365(a), (d); and then citing *Friends of the Earth*, 528 U.S. at 175)).

Critically, "[n]o compensatory damages are authorized under the CWA." *Ailor*, 368 F.3d at 590 (citing *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 18 (1981)). *See also Riverkeeper v. Taylor Energy Co.*, *LLC*, 113 F. Supp. 3d 870, 880 n.47 (E.D. La. 2015) (citing *Ailor* and *Env't Conservation* for the proposition that the remedies available under the CWA are injunctive relief, civil monetary penalties, and attorney fees); ***Boone v. DuBose***, 718 F. Supp. 479, 484 (M.D. La. 1988) (the CWA does not "permit a private right of action for the recovery of compensatory damages")); *Ward v. Stucke*, No. 18-263, 2021 WL 4033166, at *4 (S.D. Ohio Sept. 3, 2021), *aff'd*, No. 21-3911, 2022 WL 1467652 (6th Cir. May 10, 2022) (same) (citing *Day, LLC v. Plantation Pipe Line Co*., 315 F. Supp. 3d 1219, 1238 (N.D. Ala. 2018) ("The inescapable 'prospective orientation' of the phrase 'in violation' is mirrored by the relief the CWA affords plaintiffs suing under the citizen-suit provision, which does not give citizen-plaintiffs the right to damages." (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 61–62 (1987) ("Members of Congress frequently characterized the citizen suit provisions as 'abatement' provisions or as injunctive measures. . . . Moreover, both the Senate and House Reports explicitly connected § 505 to the citizen suit provisions authorized by the [CWA], which

are wholly injunctive in nature."(citations omitted)); and then citing *City of Evansville v. Kentucky Liquid Recycling, Inc.*, 604 F.2d 1008, 1014 (7th Cir. 1979)); *Palmer v. Charleston Water Sys.*, No. 20-3506, 2021 WL 11490999, at *3 (D.S.C. Feb. 10, 2021), *report and recommendation adopted*, 2021 WL 11491095 (D.S.C. Mar. 2, 2021) ("Plaintiff appears to request monetary damages pursuant to the . . . [CWA]. However, such claims should additionally be dismissed as th[is] statute[ ] do[es] not permit a private right of action for recovery of compensatory damages." (citing, *inter alia* , *Sea Clammers*, 453 U.S. at 14–15; and *Boone*, 718 F. Supp. at 484)); *Ailor*, 368 F.3d at 601 ("the relief available under § 6972 of the RCRA is virtually identical to that available under the CWA, i.e., injunctive relief, civil penalties, and attorney fees. The RCRA, like the CWA, does not provide for compensatory damages." (cleaned up)).

Here, Plaintiffs only assert a claim for compensatory damages under the CWA. (*See SAC*, Doc. 143 at 25–26.) But, under the above authorities, Plaintiffs have no such claim. Indeed, they concede as much in their sur-reply. (*See* Doc. 170-1.) Consequently, this claim must be dismissed for lack of jurisdiction.

### B.  Count I: FTCA Claims

#### 1.  *Parties' Arguments*

##### a.  Defendants' Motion (Doc. 160) and Original Memorandum (Doc. 160-1)

In sum, Defendants argue that Count I must be dismissed because Plaintiffs' allegations would not establish that a private person would be liable under similar circumstances, which is necessary for jurisdiction under the FTCA. (Doc. 160 at 1.) Plaintiffs have no claim for damages under the FTCA based on their allegations that the Corps misinterpreted and misapplied the CWA. (*Id.*) Finally, Defendants argue that Plaintiffs Beard, Milton, and the Town of Livingston's claims

are also jurisdictionally barred by the FTCA's exclusion for interference with contract rights and because Defendants owed them no duty. (*Id.* at 2.)

Defendants assert that the FTCA only waives sovereign immunity for tort claims "in the same manner and to the same extent as a private individual under like circumstances." (Doc. 160-1 at 9 (citing 8 U.S.C. § 2674).) The "reference to the 'law of the place' means law of the State – the source of substantive liability under the FTCA." (*Id.* (citing *FDIC v. Meyer,* 510 U.S. 471, 478 (1994)).) According to Defendants, Plaintiffs admit in their Complaint that they seek to hold the United States liable for alleged negligence "in their duties and obligations including enforcement of the" CWA. (*Id.* (quoting Doc. 143 at 11).) The Eighth Circuit has noted, "[b]ecause the Corps alone has the authority to make permit decisions, no private analogue exists for the relevant conduct in this case." (*Id.* (quoting *Green Acres Enters., Inc. v. United States,* 418 F.3d 852, 857 (8th Cir. 2005) (alteration in original)).)

Defendants maintain that no private right of action exists under the CWA to allow a private party to recover money damages as a result of the federal government misinterpreting or misapplying the CWA. (*Id.* at 10.) The only private right of action in the CWA is the citizen's suit provision, but the citizen's suit provision does not allow a private party to recover money damages against Defendants for any of the claims asserted by Plaintiffs, and the Supreme Court has held that there are no implied private causes of action under the CWA. (*Id.* (citing *Sea Clammers*, 453 U.S. at 18; and then comparing to *Sanchez*, 671 F.3d at 95).) In sum, because there is no analogous private liability provision for the United States in carrying out its statutory and regulatory duties under the CWA, there is no subject matter jurisdiction for any of the Plaintiffs' tort claims. (*Id.*)

Defendants next assert that Plaintiffs Beard, Milton, and the Town of Livingston's claims are not cognizable because: (1) the claims are "arising out of . . . interference with contract rights"

17

and there is no subject matter jurisdiction pursuant to 28 U.S.C. § 2680(h); and (2) the United Stated owed no duty to these Plaintiffs. (*Id.* at 11.) Defendants also note that the FCTA's exclusion for claims arising out of interference with contract rights also bars claims for interference with "prospective advantage." (*Id.* (citations omitted).) Defendants say the alleged underlying speculative theory is that Plaintiffs allegedly would have indirectly benefitted from Lewis receiving a 404 permit for the installation of municipal drinking water lines, but these claims arise out of an alleged interference with hypothetical future contracts. (*Id.* at 11–12.) Such claims are barred by § 2680(h). (*Id.* at 12.)

Defendants further argue that even in the absence of § 2680(h), Plaintiffs Beard, Milton, and the Town of Livingston's claims all fail for the independent reason that they do not allege Defendants had any knowledge of Lewis's side dealings with these three Plaintiffs. (*Id.*) In other words, any harm resulting to these three Plaintiffs was unforeseeable to Defendants, and thus Defendants owed them no duty. (*Id.*)

### b.  Plaintiffs' Opposition Memorandum (Doc. 166)

Plaintiffs dispute Defendants' position on private person analogue liability, arguing that this position is illogical because the United States is only liable if its negligent employee is acting within the scope of his office or employment. (*Id.* at 4.) Here, Defendants do not seriously contend that Corps employees were off duty during their actions or that the FTCA gives no universal exception for federal employees working with regulatory duties. (*Id.*)

Plaintiffs further posit that the "private" person analogy clause is not an exception to FTCA liability as Defendants argue. (*Id.* at 5.) The U.S. Supreme Court held that FTCA liability applied if local law would make a private person liable in tort, even where uniquely governmental

functions are at issue. (*Id.* (citing *United States v. Olson*, 546 U.S. 43 (2005)).) Thus, today the private person analogy "exception" is inapplicable. (*Id.*)

Plaintiffs then contend that, under Louisiana law (which is incorporated into the FTCA), a person who voluntarily undertakes a duty must do so with due care. (*Id.* (citing *Hoery v. United States*, 324 F.3d 1220, 1222 (10th Cir. 2003)).) Defendants voluntarily undertook multiple duties including issuance of jurisdictional determinations, processing permits, and managing Lewis's timber plantation. (*Id.*)

Plaintiffs next turn to Defendants' duty to process wetland paperwork (*e.g.*, AJDs and permits). (*Id.*) Plaintiffs maintain that the government should be liable in tort for not processing regulatory and paperwork submissions timely, and for only doing so after this Court ordered it to do so and after this Court found them in contempt for not complying with that order. (*Id.* at 6.) Plaintiffs note that the United States was on notice of the foreseeable damages to Plaintiffs, as their concerns were expressed to the Colonel, District Engineer ("DE"), and USACE staff in the 2015 meeting, and all Plaintiffs attended that October 15, 2015, meeting to explain the dire need for the processing the juridical determinations and permits for this immediate area and the necessary water tower project. (*Id.*) Plaintiffs argue that these duties were assumed directly by the Colonel on the Corps' behalf as to each of the named Plaintiffs in this case. (*Id.* at 7.) Plaintiffs' position is that, regardless of the general statutory framework the Agency employees claim to be operating under, their negligent acts are actionable under state law and the FTCA. (*Id.* (citing *Sowell v. United States*, 835 F.2d 1133 (5th Cir. 1988); and then citing *Nanouk v. United States*, 974 F.3d 941, 950 (9th Cir. 2020)).)

The Corps voluntarily undertook the duty to expeditiously process AJD requests and CWA permit applications, whether through RGL 08-02, through Colonel Hansen's assurances to

Plaintiffs directly, or both, and then failed to act upon that duty with due care. (*Id.* at 7–8.) Plaintiffs contend that these failures to perform the AJDs and process the permit applications, after repeated assurances, have resulted in drastic damages to the Plaintiffs. (*Id.* at 8.)

Plaintiffs then assert claims as to Defendants' duty to manage Lewis's timber plantation. (*Id.* at 9.) Plaintiffs contend that it is irrelevant whether USACE had the authority or expertise to assume control of Lewis's timber management operations. (*Id.*) The USACE voluntarily assumed a duty to manage those operations when issuing Cease and Desist orders for silviculture and when directing Lewis to operate his timber only at their direction. (*Id.*) Regardless of whether USACE took control of the timber plantation as a punishment or as a free service to Lewis, it still must perform the duty under Louisiana law with due care to avoid damages to Lewis. (*Id.* (citing La. Civ. Code art. 2315).) Therefore, Defendants are incorrect to argue that there is no analogous private liability here simply because some level of regulation may be involved. (*Id.*) Most silviculture activity is specifically exempted from the CWA, yet, when the USACE assumed the duty to manage Lewis's timber plantation and failed to do so with due care, it becomes liable for damages caused under Louisiana law. (*Id.* at 9–10.)

Plaintiffs next contend that Defendants' alleged FTCA exception for regulatory duties does not excuse the timing delays (*Id.* at 10 (citations omitted).) Plaintiffs argue that the same logic applies here; the Government's action was no longer protected when it made its decision to remove hot spot contamination after years of delay. (*Id.*)

Plaintiffs then argue that in the instant case there is no unforeseeable break in causation between the Government delay and injury to Plaintiffs. (*Id.* at 11.) According to Plaintiffs, they pled their concern to the Corps in 2015 when Lewis's manager explained to the attendees the importance of the actions in taking care of the timber plantation. (*Id.*) Likewise, when the Corps

ordered timber operations to cease under the CWA and assumed control of Lewis's timber operations with no training or expertise, it should have been anticipated that damages to the timber plantation would be probable. (*Id.*)

Finally, Plaintiffs argue that, though Defendants color the torts as interference with contracts, Plaintiffs do not make this claim in the operative complaint. (*Id.* at 12.) The Town of Livingston was to be the beneficiary of part of the property where the water tower would be constructed. (*Id.*) And Beard and Milton were among the beneficiaries of the safe drinking water the project would provide. (*Id.*) All Plaintiffs were parties to the AJDs/applications, and Defendants knew all Plaintiffs were represented and affected applicants. (*Id.*) Corps personnel were very aware of the dire need for drinking water in this immediate area, and as such the damages suffered by these plaintiffs were foreseeable if not expected. (*Id.* at 13.) Here, the Corps commander announced the Corps' duty to process the paperwork, but the Corps staff did not process regulatory paperwork and submissions timely, causing continuing damages to the land and people involved. (*Id.*) Thus, the Government is liable in tort for its lack of due care. (*Id.*)

### c.  Defendants' Reply Memorandum (Doc. 169)

In reply, Defendants note that Plaintiffs' operative complaint lists "51 allegedly negligent acts or omissions, all related to the 'issuance of jurisdictional determinations, processing permits, and [allegedly] managing Lewis's timber plantation.'" (Doc. 169 at 2.) But, these allegations all suffer from the same fatal jurisdictional flaw—a lack of analogous private liability—for three reasons. (*Id.* at 3.)

First, Defendants say these claims all spring from alleged federal statutory duties under the CWA and not state tort law duties, as required by the FTCA. (*Id.* (citing 28 U.S.C. § 1346(b)(1); *Meyer*, 510 U.S. at 478).) Because the Corps alone has the authority to enforce the CWA and to

make permit decisions, no private analog exists for the relevant conduct in this case." (*Id.* (citing 33 C.F.R. §§ 320.2, 326.1–326.6; *Green Acres*, 418 F.3d at 857).) Additionally, the Corps' performance of its obligations under the CWA is precisely the type of federal agency action that Congress intended to carve out of the FTCA's waiver of sovereign immunity by requiring analogous private liability. (*Id.* (citing *Jayvee Brand, Inc. v. United States*, 721 F.2d 385, 390 (D.C. Cir. 1983).)

Second, the CWA does not provide a money damages remedy for alleged delays in responding to requests for AJDs and permits under the CWA. (*Id.*) Thus, since the CWA is a detailed remedial scheme, "only its *own* text can determine whether the damages liability Congress crafted extends to the Federal Government." (*Id.* at 4 (citing *United States v. Bormes*, 568 U.S. 6, 15 (2012) (emphasis in original).) Thus, Plaintiffs cannot use the FTCA as a tool to expand the remedies available under the CWA beyond Congress's intent. (*Id.* (citing *Sanchez*, 671 F.3d at 94–95.)

Third, Defendants argue that Plaintiffs may not rely on *Sowell* because, unlike that case, the Corps did not undertake anything voluntarily; rather, the Corps was performing quasi-adjudicative federal statutory duties. (*Id.* at 4–5.) Although the federal statutory duties vest the Corps employees with discretion in deciding how they perform their various obligations under the CWA, and when to issue AJDs and permits, the Corps' obligation to receive and evaluate requests for AJDs and CWA permits is not a voluntary undertaking. (*Id.* at 5.) Defendants state that the simple instruction in the Cease-and-Desist letters to stop performing unlawful fill activities on a piece of land does not equate to a change in ownership or functional control, and certainly does not establish that the Corps voluntarily undertook to manage Lewis's timber plantation. (*Id.*)

22

Defendants thus conclude that there is no analogous private liability under state law for challenges to the manner in which a CWA permit is adjudicated. (*Id.* at 6.) As such, Plaintiffs' FTCA claims should be dismissed under 28 U.S.C. § 1346(b)(1). (*Id.*)

Defendants next assert Plaintiffs Beard's, Milton's, and the Town of Livingston's claims are further barred by the FTCA's exclusion for interference with contract rights and because Defendants owed them no duty. (*Id.*) Defendants state that Plaintiffs' primary argument about the interference with contract rights exception is that Plaintiffs' operative Complaint does not use the specific phrase "interference with contracts," but this is not required by the Fifth Circuit. (*Id.* (citing *Truman v. United States*, 26 F.3d 592, 594–95 (5th Cir. 1994); *United States v. Neustadt*, 366 U.S. 696, 703 (1961)).) Plaintiffs seek compensation for prospective advantage they claim they would have revived absent alleged interference with a verbal contract between Lewis and the Town of Livingston for the construction of a water tower, and this falls squarely in the FTCA's interference with contract rights exception. (*Id.* at 6–7 (citing 28 U.S.C. § 2680(h)).)

Defendants further argue that even if these claims were not barred by Section 2680(h), which they are, the alleged "injuries" incurred by these three Plaintiffs would be too speculative and remote to be foreseeable, and thus Defendants owed them no duty. (*Id.* at 7.) Plaintiffs attached a self-made transcript based on a partial recording of a 2015 meeting with the Corps, but the transcript does not appear to contain a single comment attributable to Plaintiffs Beard, Milton, or the Town of Livingston. (*Id.* (citing Doc 166-1).) Thus, for the above reasons, Defendants contend that Plaintiffs' claims should be dismissed. (*Id.*)

### d.  Plaintiffs' Sur-Opposition (Doc. 170-1)

In sur-reply, Plaintiffs argue that their claim should survive because they can show that there are private analogical liabilities to the government regulators' negligence; that Defendants'

23

Col. Hansen volunteered his Corps staff for top priority action on Plaintiffs' regulatory requests; and that the Corps' lack of due care delays foreseeably impacted Plaintiffs detrimentally. (Doc. 170-1 at 1.) Plaintiffs argue that they were under the justified belief that the Corps had taken over their silviculture activities, because the Corps had issued Cease and Desists specifically telling Plaintiffs to cease their silviculture activities and the Corps specifically directed Lewis to stop timber harvesting unless at their direction and provided examples of Corps employees monitoring and limiting Plaintiffs' silviculture activities. (*Id.* at 2.) Plaintiffs also offer to provide the Court with a copy of the video recording made at the 2015 meeting. (*Id.*)

Plaintiffs next contend that the private analogy exception does not protect the Corps from the waiver of sovereign immunity in the FTCA. (*Id.* at 3.) Plaintiff points to different instances where private actors can perform statutory duties—relevant here, that private consultants can do and prepare wetland delineations and 404-permit application and respond to cease and desist orders. (*Id.*) While there is no statutory deadline for performing its duties, the assurances of the Corps' commander to act upon Plaintiffs' requests as top priority, after recognizing the urgency of the need for water, was an assumption of a duty outside of any posed by the CWA. (*Id.*)

Plaintiffs note that Defendants raise the claim of interference with contract rights as an FTCA exception, but Plaintiffs do not raise that count at all. (*Id.* at 4) Plaintiffs further state that *Sowell* properly classified the government's negligent delay as a breach of a voluntarily undertaken duty, not interference with contracts rights. (*Id.*) The *Sowell* court did so even though the government delay barred an insurance claim. (*Id.*) Plaintiffs say the same FTCA waiver of immunity holds true here. (*Id.*)

Next, Plaintiffs assert that, because the Corps' COL promised "top priority" for the AJDs and permit processing, the Corps' processing regulatory material in this case was voluntary but

24

without due care. (*Id.*) Concerning Defendants' attempt to distinguish *Sowell*, Plaintiffs contend that the Corps flip-flops on voluntary or not, citing their current Regulatory Guidance Letter providing that AJDs are voluntary with the Corps. (*Id.* (citing Regulatory Guidance Letter 16-1 p.1 Jurisdictional Determinations (2016)).)

Plaintiffs only state that they are content to the extent that Louisiana Civil Code article 2315 is subsumed in the FTCA for federal torts committed in Louisiana. (*Id.* at 5.) Violation of a statute is fault under Article 2315 and negligence under the FTCA. (*Id.*) Both laws apply here, regardless of whether the CWA alone provides for damages. (*Id.*)

As to foreseeability, Plaintiffs again argue that the October 2015 meeting with COL Hansen put the Corps on notice as to damages threatened by Corps delays. (*Id.*) Both a representative of Livingston (Senator Erdey) and Robert Beard explained their need for water. (*Id.* (citing Doc. 166-1 at 10, 14, 17, etc.).) Defendants' claim to the contrary is simply false. (*Id.*) The Court is allowed to consider evidence in a motion like this. (*Id.*) The close tie between Corps' delays and Plaintiffs' damage to timber rights and loss of water supply is clear. (*Id.*)

### 2. Law and Analysis

#### a. Private Person Analogue and Interference Exception

"The FTCA is recognized as providing a waiver of sovereign immunity and provides the sole basis of recovery for tort claims against the United States." *In re FEMA Trailer*, 668 F.3d at 287 (citing 28 U.S.C. § 1346 and § 2671 *et seq.*; and then citing *In re Supreme Beef Processors*, 468 F.3d at 252 n.4). "Section 2674 provides that the United States shall be liable in the same manner and to the same extent as a private individual under like circumstances." *Id.* (citing 28 U.S.C. § 2674). Likewise, § 1346 states in relevant part:

> [D]istrict courts . . . shall have exclusive jurisdiction of civil actions
> on claims against the United States, for money damages . . . for

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Id.* (quoting 28 U.S.C. § 1346(b)(1)).

"The 'law of the place where the act or omission occurred' refers exclusively to state law." *Id.* (citing *Brown v. United States*, 653 F.2d 196, 201 (5th Cir. 1981)). "Since the FTCA requires the Government's liability to be measured in accordance with the law of the state where the alleged act or omission occurred," here, the Court looks to Louisiana law to assess Plaintiffs' FTCA claims. *See id.* (citations omitted).

Additionally, "[e]xplicit exceptions in the FTCA reserve the tort immunity of the United States for claims of[,] [*inter alia*,] . . . interference with contract rights." *Atorie Air, Inc. v. F.A.A. of U.S. Dep't of Transp.*, 942 F.2d 954, 957 (5th Cir. 1991) (citing 28 U.S.C. § 2680(h)). "Because the FTCA provides a waiver of immunity otherwise to be accorded the sovereign, the limitations and conditions upon which the government consents to be sued must be strictly construed in favor of the United States." *Id.* at 958 (citing, *inter alia*, *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981)). "In accord with this principle, causes of action distinct from those excepted under section 2680(h) are nevertheless deemed to be barred when the underlying governmental conduct essential to the plaintiff's claim can fairly be read to arise out of conduct that would establish an excepted cause of action." *Id.* (cleaned up). Any cause of action which Plaintiffs could assert, regardless of how it is characterized, which necessarily stems from an interference with contract, would not be cognizable under the FTCA. *See id.*

Having carefully considered the matter, the Court agrees with Plaintiffs' position on this issue. This result is plainly mandated by the Fifth Circuit's ruling in *Sowell*.

There, an army private died, and his widow filed suit against the United States for negligently misplacing a life insurance form and negligently failing to pay the life insurer from the private's paychecks. *Sowell*, 835 F.2d at 1134. The district court ultimately awarded damages to the widow in the amount of the life insurance benefits. *Id.* On appeal, the government argued that her claim was barred by the "interference with contract rights" exception to the FTCA. *Id.*

The Fifth Circuit affirmed. *Id.* at 1135. The Court looked to Louisiana state law, which in turn incorporated Section 323 of the Restatement (Second) of Torts (1965). (*Id.* at 1134.) This Restatement section provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increased the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

*Sowell*, 835 F.2d at 1134 (quoting Restatement, *supra*, at § 323). The Fifth Circuit stated that liability in these circumstances "derive[s] from the general principle that one who voluntarily undertakes to perform an action must do so with due care," and "Louisiana courts have extended this duty to provide recovery for damage to chattels." *Id.* at 1134–35 (citations omitted). While the Fifth Circuit recognized that "the United States is not liable under the [FTCA] for 'any claim arising out of . . . interference with contract rights,'" *id.* at 1135 (quoting 28 U.S.C. § 2680(h)), that exception did not bar recovery here:

> [I]n this case, the duty the Army owed to use due care in processing [the private's] allotment forms is distinct from any duty the Army may have had not to interfere with existing or potential contractual relationships between [the private] and [the life insurer]. . . . The fact that the measure of damages—loss of the value of insurance

> coverage—from the Army's failure to fulfill its duty to process the forms correctly is the same as it would have been for interfering with contract rights does not merge the duties.

*Id.*

*Sowell* controls here. Plaintiffs submit evidence that, at the October 5, 2015, meeting in the New Orleans USACE District Office, Colonel Hansen stated:

> the thing is we've got a recent submission from last week, we want the JD to be done so we can move on, get in that Nationwide permit process which does not need to take long for the evaluation of course we'd have to have an application next but I certainly recognize the urgency of a reliable water utility both for the residents that live along the highway and then also for the hospital.

(Doc. 166-1 at 1–2, 11.) Hansen also said that the "greatest need and the top priority needs to be the Milton Lane water tower project." (*Id.* at 16.) He declared, "I'm making this our field folks['] top priorities. Us getting out here in the field here very soon." (*Id* at 13.)

Others at the meeting stressed the need for urgency and importance of the project to the Town of Livingston and citizens like Plaintiffs:

> Robert [Beard]: It[']s been 3 years. I can't drink that water. I buy water every week.
>
> [Senator Erdey]: If I might add, this is not just a local issue. This is for the entire community for the back up system if the other system goes down for fire protection as well for the Town of Livingston as well, so that's extremely important to get done as quickly as possible sir. . . .
>
>                       * * *
>
> Erdey: May I just say thank you very much for the opportunity to have this meeting but and I would be glad to convey the positive sense of urgency to the Mayor of Livingston that this water well project will move forward.

(*Id.* at 14, 17.) And all of this is consistent with the allegations of the *SAC*:

> Defendants negligently authorized subordinates to advise Plaintiffs they were being given top priority on AJD and permit requests, while negligently ignoring, soliciting, or authorizing employees to

> solicit a determination, or a concurrence from EPA that was
> intended to, and did, stop its permit requests and AJDs from being
> processed.

(*SAC*, Doc. 143 at 14 (¶ 12).)

In sum, Plaintiffs have pled allegations and provided evidence in the record that Defendants undertook a duty to timely and properly process the AJD requests and CWA permit applications, that they breached that duty through years of delay and negligence, that this breach caused harm to the Plaintiffs, and that this harm was easily foreseeable. All of this conduct falls squarely with Louisiana Civil Code article 2315 and its adoption of the Restatement, and Defendants' effort to distinguish *Sowell* ring hollow. For these reasons, the Court finds that the FTCA waives sovereign immunity for Plaintiffs' claims.

### b.  Does the CWA preclude a FTCA claim?

Another aspect of sovereign immunity remains at play. Defendants contend that Plaintiffs' claims under the FTCA are barred because its more general waiver of immunity is trumped by the more specific limitations of the CWA. Defendants point to two cases for this proposition: *Bormes* and *Sanchez*.

In *Bormes*, the question before the Court was whether a damage claim under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, fell within the terms of the Little Tucker Act, 28 U.S.C. § 1346(a)(2), such that the United States consented to suit. *Bormes*, 568 U.S. at 11 (citation omitted). The Supreme Court held, "It does not. Where, as in FCRA, a statute contains its own self-executing remedial scheme, we look only to that statute to determine whether Congress intended to subject the United States to damages liability." *Id.* The Supreme Court explained:

> The Tucker Act's jurisdictional grant, and accompanying immunity
> waiver, supplied the missing ingredient for an action against the

> United States for the breach of monetary obligations not otherwise judicially enforceable. . . .
>
> The Tucker Act is displaced, however, when a law assertedly imposing monetary liability on the United States contains its own judicial remedies. In that event, the specific remedial scheme establishes the exclusive framework for the liability Congress created under the statute. Because a precisely drawn, detailed statute pre-empts more general remedies, FCRA's self-executing remedial scheme supersedes the gap-filling role of the Tucker Act. . . .
>
> Our more recent cases have consistently held that statutory schemes with their own remedial framework exclude alternative relief under the general terms of the Tucker Act. . . . But our precedents collectively stand for a more basic proposition: Where a specific statutory scheme provides the accoutrements of a judicial action, the metes and bounds of the liability Congress intended to create can only be divined from the text of the statute itself.

*Id.* at 12–15 (cleaned up). The "FCRA creates a detailed remedial scheme" which "set[s] out a carefully circumscribed, time-limited, plaintiff-specific cause of action," and, "without resort to the Tucker Act, FCRA enables claimants to pursue in court the monetary relief contemplated by the statute." *Id.* at 15 (cleaned up). The Supreme Court concluded:

> Plaintiffs cannot, therefore, mix and match FCRA's provisions with the Little Tucker Act's immunity waiver to create an action against the United States. Since FCRA is a detailed remedial scheme, only *its own* text can determine whether the damages liability Congress crafted extends to the Federal Government. To hold otherwise—to permit plaintiffs to remedy the absence of a waiver of sovereign immunity in specific, detailed statutes by pleading general Tucker Act jurisdiction—would transform the sovereign-immunity landscape.

*Id.* at 15 (emphasis in original).

Similar reasoning was used by the First Circuit in *Sanchez* to find that a party could not recover damages under the FTCA for actions falling under the umbrella of the CWA. The appellate court looked to prior case law interpreting the Resource Conservation and Recovery Act ("RCRA"):

30

In *Abreu* [*v. United States*]*,* we held that the unavailability of
damages under the RCRA demonstrated that "allowing recovery of
compensatory damages under the FTCA for RCRA violations would
adversely affect the RCRA statutory scheme." [468 F.3d 20, 31 (1st
Cir. 2006)].

The RCRA, we held, did not present "a situation in which Congress
simply left unaddressed the question of damages liability under the
mandatory statute." *Id.* The statute's citizen-suit provision confers
jurisdiction on district courts to "restrain" violations and order
persons in violation of permits, standards, regulations, conditions,
requirements, prohibitions, or orders effective under the statute to
"take such other action as may be necessary." 42 U.S.C. § 6972(a);
*see also Abreu,* 468 F.3d at 31. We stated that although this
provision "confers jurisdiction over suits for injunctive relief,"
*Abreu,* 468 F.3d at 31, the Supreme Court had recognized limits on
this grant of jurisdiction to compensatory damages, *id.* (citing
*Meghrig v. KFC W., Inc.,* 516 U.S. 479, 484–85 [ ] (1996)), and it
was clear that Congress did not intend that the RCRA "authorize
civil tort actions against the federal government for damages," *id.* at
32 (quoting H. Rep. No. 102–111, at 15 (1991), *as reprinted in* 1992
U.S.C.C.A.N. 1287, 1301) (internal quotation mark omitted).

*Sanchez*, 671 F.3d at 94 (footnotes omitted). The First Circuit went on to say how, under the same

reasoning, Congress's enactment of the comprehensive CWA precluded any action for damages

under the FTCA:

It is clear that Congress did not intend that the CWA authorize civil
tort actions against the federal government for damages. The
plaintiffs' theory that they may sue under the FTCA for alleged
CWA violations is expressly barred by the intent of Congress. In
*Meghrig,* the Supreme Court relied on its decision in [*Sea
Clammers*], for the proposition that when "Congress has provided
'elaborate enforcement provisions' for remedying the violation of a
federal statute . . . 'it cannot be assumed that Congress intended to
authorize by implication additional judicial remedies for private
citizens suing under' the statute." *Meghrig,* 516 U.S. at 487–88 [ ]
(quoting *Sea Clammers,* 453 U.S. at 14 [ ]). The decision in *Sea
Clammers* addressed, inter alia, the availability of compensatory
damages under 33 U.S.C. § 1365(a), the citizen-suit provision in the
CWA. 453 U.S. at 14 [ ]. . . .

In *Sea Clammers,* the Supreme Court held that both the structure
and legislative history of the CWA dictate that "Congress intended

31

that private remedies in addition to those expressly provided [in the CWA] should not be implied." 453 U.S. at 18 [ ]. It reasoned that "[w]here, as here, Congress has made clear that implied private actions are not contemplated, the courts are not authorized to ignore this legislative judgment." *Id.* The Court emphasized that the Senate Report for the Act "placed particular emphasis on the limited nature of the citizen suits being authorized." *Id.* at 18 n. 27 [ ] (citing S.Rep. No. 92–414, at 81 (1971)). It also emphasized that "the citizen-suit provision of the [CWA] was expressly modeled on the parallel provision of the Clean Air Act," and that the "legislative history of the latter Act contains explicit indications that private enforcement suits were intended to be limited to the injunctive relief expressly provided for." *Id.*

*Sea Clammers* does not only demand the conclusion that Congress intended to foreclose the availability of compensatory damages under the CWA. The decision also supports the conclusion, required by *Abreu,* that this clear congressional intent is relevant in determining the availability of an action for damages under the FTCA. *See Abreu,* 468 F.3d at 30. In *Sea Clammers,* the Court held that "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under [42 U.S.C.] § 1983." *Sea Clammers,* 453 U.S. at 20 [ ]. "It is hard to believe," the Court stated, "that Congress intended to preserve the § 1983 right of action when it created so many specific statutory remedies," including the citizen-suit provision in the CWA, 33 U.S.C. § 1365(a), and a parallel provision in the Marine Protection, Research, and Sanctuaries Act, 33 U.S.C. § 1415(g). *Sea Clammers,* 453 U.S. at 20 [ ].

As in *Abreu,* "allowing the recovery of damages in a FTCA suit, based on the violation of a mandatory permitting requirement" under a federal statute that precludes compensatory damages "would undermine the intent of Congress." *Abreu,* 468 F.3d at 32. For the reasons already articulated in *Abreu,* moreover, "the waiver of sovereign immunity reflected in various statutes must be interpreted in light of significant policies reflected in other related federal statutes." *Id.* at 30. *Sea Clammers* makes clear that the decision not to permit damages under the CWA is a significant policy of that statute, and a policy significant enough to demand the conclusion that Congress intended the CWA to foreclose the availability of damages available before the statute was enacted. *Sea Clammers,* 453 U.S. at 20–21 [ ].

*Sanchez*, 671 F.3d at 94–96 (footnotes omitted).

Nevertheless, this Court finds *Sanchez* to be unpersuasive in light of the Supreme Court's ruling in *Exxon Shipping Co. v. Baker*. In *Baker*, the High Court was specifically asked to determine if the CWA preempted a claim for maritime punitive damages at common law. 554 U.S. at 484–85. The Court explained:

> If Exxon were correct here, there would be preemption of provisions for compensatory damages for thwarting economic activity or, for that matter, compensatory damages for physical, personal injury from oil spills or other water pollution. But we find it too hard to conclude that a statute expressly geared to protecting "water," "shorelines," and "natural resources" was intended to eliminate *sub silentio* oil companies' common law duties to refrain from injuring the bodies and livelihoods of private individuals. . . .
>
> All in all, we see no clear indication of congressional intent to occupy the entire field of pollution remedies, *see, e.g., United States v. Texas*, 507 U.S. 529, 534 [ ] (1993) ("In order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law" (internal quotation marks omitted)); nor for that matter do we perceive that punitive damages for private harms will have any frustrating effect on the CWA remedial scheme, which would point to preemption. . . . In this respect, this case differs from two invoked by Exxon, [*Sea Clammers*], 453 U.S. 1 [ ], and *Milwaukee v. Illinois*, 451 U.S. 304 [ ] (1981), where plaintiffs' common law nuisance claims amounted to arguments for effluent-discharge standards different from those provided by the CWA. Here, Baker's private claims for economic injury do not threaten similar interference with federal regulatory goals with respect to "water," "shorelines," or "natural resources."

*Id.* at 489 & n.7.

*Baker* was decided years after *Sea Clammers*, and it serves as convincing authority that the CWA was not intended to occupy the entire area of common law actions comparable to what was seen in *Bormes*. Moreover, as is evident from the *Baker* footnote, Plaintiffs' claim that Defendants were negligent in its untimely processing of Plaintiffs' AJDs and permits is materially different than the "common law nuisance claims" of *Sea Clammers*, which "amount[ ] to arguments for effluent-discharge standards different from those provided by the CWA." *Id.* at 489 n.7. Indeed,

33

Plaintiffs' claim have nothing to do with the CWA's standards; rather, Plaintiffs' claims involve the voluntary assumption of the duty to timely process their applications and the harm resulting from a breach of that duty.

Instead, this Court finds persuasive Magistrate Judge Hanna's opinion in *Louisiana Crawfish Producers Ass'n—W. v. Amerada Hess Corp.*, No. 10-348, 2015 WL 12781021 (W.D. La. Oct. 28, 2015), *report and recommendation adopted*, No. 10-348, 2016 WL 1267914 (W.D. La. Mar. 29, 2016). There, commercial crawfishermen brought suit alleging that defendants' activities in building and operating pipelines and oil and gas access canals and in discharging pollutants and spoil/dredge material adversely affected their crawfishing. *Id.* at *1, *4. They also claimed:

> As is set forth in more detail in connection with the specific facts of each Plaintiff's case, the incidents complained of herein giving rise to Plaintiff's damages are the result of the dredging of canals through the navigable waters of the Atchafalaya Basin for the purpose of allowing drilling vessels to gain access to drilling and/or production sites. In connection therewith, the creation of spoil banks and conducting other activities which obstructed commercial navigation and blocked the natural flow of water through the Buffalo Cove Area had both a real and potential disruptive impact on maritime commerce.

*Id.* at *4. Plaintiffs also pled that defendants' dredging of canals and creation of spoil banks in the Buffalo Cove Area "blocked the natural flow of water through [that area], obstructed or destroyed completely some of the navigable waterways and/or destroyed the health of the water upon which they relied for successful operation of their businesses, and/or destroyed the natural plant and animal life" there. *Id.* Plaintiffs alleged that defendants were required to get certain permits from the USACE that were "designed to insure the natural flow of water through the Buffalo Cove Area and that the natural environment [would] not be adversely impacted," yet the "defendants

negligently or intentionally conducted their operations in violation of these permits, thereby causing the plaintiffs' damages." *Id.*

Defendants moved to dismiss on the grounds that, among other issues, plaintiffs' maritime torts were displaced "because the CWA creates a comprehensive scheme for regulation of discharges of dredged spoil and the creation of spoil banks which 'speaks directly' to the plaintiffs' damage claims . . . ." *Id.* at *5. Plaintiffs replied that they did not seek relief under the CWA; rather, they brought "private maritime tort claims for economic injury." *Id.* They said that "there is nothing in the CWA which indicates a Congressional intent to displace their general maritime law tort claims for damages, and that their claims do not conflict or interfere with the federal regulatory goals of CWA." *Id.* at *6. Defendants, conversely, relied on *Sea Clammers* and *Milwaukee*. *Id.* at *7.

Judge Hanna rejected Defendants' position and concluded that "the CWA does not preclude private negligent and intentional maritime tort claims for compensatory damages for economic injury to the livelihood of private individuals." *Id.* at *8. He first looked at § 1365(e) of the CWA, which provides, "Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief . . . ." *Id.* at *8. The court said that "Section 1365(e) of the citizen's suit provisions in the CWA expressly provides that it does not displace common law rights to other relief[.]" *Id.* The magistrate judge then explained (which this Court will quote at length):

> While this savings clause was held in *Sea Clammers* not to preserve the federal common law nuisance claims made by the plaintiff, those claims were for substantive violations of the CWA in which the savings clause was found, and the Court explained that "[i]t is doubtful that the phrase 'any statute' includes the very statute in which this statement was contained." *Sea Clammers*, 453 U.S. at 30.

35

By contrast, the action in this case is brought entirely under the general maritime law and not for a substantive violation of the CWA, the statute in which the savings clause is found. This Court interprets the citations to the permits and alleged violations in the Fifth Supplemental and Amended Complaint, not as stating a substantive claim for relief under the CWA, but as stating a standard of care, the breach of which, may constitute negligence under a general maritime tort analysis. As noted by the plaintiffs, in another context, the Fifth Circuit has acknowledged the propriety of utilizing evidence of a permit violation to demonstrate fault, in order to impose liability on a permittee. *See Pennzoil Producing Co. v. Offshore Exp., Inc.,* 943 F.2d 1465, 1469 (5th Cir. 1991). Moreover, contrary to the defendants' argument, this Court finds that the plaintiffs' cause of action for maritime tort would still stand and be viable even in the absence of such allegations.

Unlike the plaintiffs in *Sea Clammers* and *Milwaukee*, the plaintiffs do not assert a federal common law nuisance claim. Their claim is for negligent and intentional maritime tort under the general maritime law. The reason this distinction makes a difference is that, as the Supreme Court explained in *Milwaukee*, a nuisance theory would enable a federal district judge to substitute a different balancing of interests from the one made by the agency to which Congress assigned the job in the permit system. *See In re Exxon Valdez*, 270 F.3d 1215, 1231 (9th Cir. 2001) *citing Milwaukee,* 451 U.S. at 320. This case presents this Court with no such opportunity for balancing of interests.

Finally, the defendants do not argue that the plaintiffs seek any remedies that might conflict with the decision of an administrative agency charged with enforcement responsibility. The plaintiffs make no such claim. The penalties set forth in the CWA are for damage to public resources, enforceable by the United States, which the Court finds do not necessarily conflict with the award of compensatory damages for the private interests that may have been harmed. The CWA does not "speak directly to" rules which limit who can recover damages in a maritime tort claim, and allowing such an action therefore will merely "fill[ ] a gap" in the regulatory scheme, not provide a different regulatory scheme. *In re Ballard Shipping, Co.,* 810 F. Supp. 359, 367-368 (D. Rhode Island 1993), *aff'd in part and r'vd in part on other grounds,* 32 F.3d 623 (1st Cir. 1994) *citing Milwaukee,* 451 U.S. at 324 n. 18.

Where a private remedy does not interfere with administrative judgments (as it would have in *Milwaukee*) and does not conflict with the statutory scheme (as it would have in *Sea Clammers*), a

statute providing a comprehensive scheme of public remedies need not be read to displace a preexisting common law private remedy. *In re Exxon Valdez*, 270 F.3d 1215, 1231 (9ᵗʰ Cir. 2001). It is reasonable to infer that had Congress meant to limit the remedies for private damage to private interests, it would have said so. The absence of any private right of action in the CWA for compensatory damages may more reasonably be construed as leaving private claims for maritime torts alone than as implicitly destroying them. *Id.*

*La. Crawfish*, 2015 WL 12781021, at *8–9.

Judge Hanna also relied on the language quoted above from *Baker* and concluded:

While *Exxon* was primarily concerned with § 1321 of the CWA which deals with liability for oil spills, the reasoning of the Court in reaching its result is fully applicable to the instant case. The objective of the CWA is to "restore and maintain the . . . biological integrity of the Nation's waters. . . ." 33 U.S.C. § 1251(a). It is hard for this Court to find that a statute geared toward maintaining the integrity of the Nation's waters was intended to eliminate *sub silento* the defendants' general maritime law duties to refrain from injuring the "livelihoods of private individuals." *Exxon*, 554 U.S. at 488-489.

Furthermore, given the savings clause set forth in § 1365(e) of the CWA, the Court finds "no clear indication of congressional intent to occupy the entire field of . . . remedies, nor for that matter [does the Court] perceive that [compensatory] damages for private harms [would] have any frustrating effect on the CWA remedial scheme, which would point to preemption." *Id.* at 489. To the contrary, the Senate Report on the 1972 Amendments to the CWA states that the savings clause "would specifically preserve any rights or remedies under any other law. Thus, if damages could be shown, other remedies would remain available. Compliance with requirements under this Act would not be a defense to a common law action for pollution damages." S. Rep. No. 92-414, pg. 81 (1971), U.S. Code Cong. & Admin. News 1972, pg. 3746-3747. The remedy of compensatory damages under the general maritime tort law is such an "other law."

*Id.* at *10 (footnotes omitted).

Judge Hanna next reiterated the distinction between *Louisiana Crawfish* and *Sea Clammers* and *Milwaukee*: in those cases, "the plaintiffs' common law nuisance claims amounted to

arguments for effluent-discharge standards different from those provided by the CWA," whereas, in *Louisiana Crawfish*,

> [t]he plaintiffs do not state a claim for nuisance, nor do they seek to impose or enforce different or more stringent standards than those set forth by the CWA. To the contrary, the plaintiffs' state claims for negligent and intentional maritime torts, and "the plaintiffs' claims for economic injury do not threatened similar interference with federal regulatory goals" with respect to the "biological integrity of the Nation's waters." [*Baker*, 554 U.S. at 489 n.7.]

*Id.* The Western District then cited a number of other cases finding that negligence actions were not preempted by the CWA. *See id.* at *10–11 (citing, *inter alia*, *Golnoy Barge Co. v. M/T Shinoussa*, No. 90-2414 *et al.*, 1993 WL 735038 (S.D. Tex. Aug. 17, 1993), *aff'd on other grounds*, 3 F.3d 439 (5th Cir. 1993)).

Judge Hanna concluded:

> In sum, . . . the CWA does not displace a private maritime tort cause of action for compensatory damages which is asserted to vindicate only private economic interests. Stated differently, the CWA does not "speak to" private maritime tort actions seeking private remedies for private harms. The CWA therefore does not displace the claims asserted by the plaintiffs.

*Id.* at *11. Accordingly, he recommended denial of defendants' motion for summary judgment. *Id.*

The same reasoning applies here. As Plaintiffs make clear in their opposition memorandum, the heart of their FTCA claims is not that the Corps negligently applied or interpreted the CWA a particular way;[3] rather, Plaintiffs' FTCA claim for negligence under Article 2315 is that Defendants voluntarily undertook a duty to timely process their jurisdictional

---

[3] To the extent the *SAC* can be read to allege that the Corps negligently interpreted or applied the CWA, such claims would likely be waived by Plaintiffs' opposition. *See Payton v. Town of Maringouin*, No. 18-563, 2021 WL 2544416, at *26 (M.D. La. June 21, 2021) (deGravelles, J.), *aff'd*, No. 21-30440, 2022 WL 3097846 (5th Cir. Aug. 3, 2022) (per curiam) (collecting authorities on waiver for failure to properly oppose). Further, to the extent Plaintiffs have not waived such claims, they would likely be more in line with *Sanchez* than *Louisiana Crawfish* and thus subject to dismissal. But, again, the Court finds, based on a fair, reasonable reading of the *SAC*, that the essence of Plaintiffs' FTCA claim is Defendants' delay, which the numerous alleged acts of negligence serve to support rather than supplant. (*See SAC*, Doc. 143 at 12–18.)

determinations and applications and that, through a lack of due care, they failed to do so. (*See, e.g.*, *SAC*, Doc. 143 at 14–15 (¶¶ 12, 23).) Indeed, Plaintiffs write in their Background Summary, "Alternatively, whether or not jurisdiction is constitutional, the *delays* of the Corps in providing requested AJD and requested permits and withdrawing CWA exemptions caused Plaintiffs['] damages." (*Id.* at 2 (¶ 4) (emphasis added).)

Such claims would clearly fall under the CWA's savings clause. *See* 33 U.S.C. § 1365(e). Moreover, Plaintiffs make no federal or state common law nuisance claim; rather, they allege that Defendants undertook the duty to timely process their permits and applications and that Defendants breached that duty by failing to exercise due care. Here, there is simply no chance that, like a federal nuisance claim, (a) this Court would "substitute a different balancing of interests from the one made by the agency to which Congress assigned the job in the permit system," or (b) the plaintiffs would "seek any remedies that might conflict with the decision of an administrative agency charged with enforcement responsibility." *La. Crawfish*, 2015 WL 12781021, at *8–9 (citations omitted). Indeed, this case is even further removed from *Sea Clammers* and *Milwaukee* than *Louisiana Crawfish*, as, unlike the Western District case, Plaintiffs will not need evidence of permit violations to demonstrate fault. As with Judge Hanna's analysis of *Baker*, "[i]t is hard for this Court to find that a statute geared toward maintaining the integrity of the Nation's waters was intended to eliminate *sub silento* the defendants'" duties under state law to exercise with due care those duties which it has voluntarily assumed, particularly in light of the savings clause of § 1365(e) and particularly when those duties are detached from the substance of their permitting decisions. *La. Crawfish*, 2015 WL 12781021, at *10.

### 3.  Summary of Count I Ruling

In sum, Defendants' *Motion* as to Count I will be denied. Under *Sowell*, the Government can waive sovereign immunity under the FTCA as to Article 2315 for failing to exercise due care in those duties voluntarily assumed. Here, Defendants voluntarily assumed the duty to *promptly* and *timely* process Plaintiffs' jurisdictional determinations and applications, which the Government itself deemed a "top priority." Defendants breached that duty and caused harm which was easily foreseeable. And if the United States' conduct did not constitute interference with contract in *Sowell*, then it certainly does not here.

Further, *Baker* and *Louisiana Crawfish* make clear that the CWA is not so comprehensive as to "speak to" all of Plaintiffs' claims under the FTCA for state law negligence for breach of the above duty. That is to say, if the CWA did not trump the claims sought in *Baker* and *Louisiana Crawfish* under general maritime common law, then they do not preempt all of Plaintiffs' Article 2315 claims here. As a result, Defendants' *Motion* on this issue will be denied.

### C.  Count III: APA Claim Concerning Lewis's 93.7-Acre Tract (the RV Resort)

### 1.  Parties' Arguments

Defendants finally argue that the Court should dismiss for want of jurisdiction Count III's claim under the EPA as to Lewis's 93.7-acre tract (*i.e.*, the RV Resort). (Doc. 160-1 at 15–16.) Defendants maintain that the APA waives sovereign immunity only for the review of final agency actions, and the only such action alleged with respect to the RV Resort is the November 2, 2021, letter. (*Id.* at 16 (citing Docs. 160-2, 131-4).) Defendants point to *Luminant Generation Co. v. United States Environmental Protection Agency*, 757 F.3d 439 (5th Cir. 2014), to support the proposition that this November 2, 2021, letter does not constitute final agency action, as the letter does not (1) commit the EPA to a particular course of action and (2) establish legal rights or

obligations. (*Id.* at 16–17.) As a result, Plaintiffs' Count III claim concerning the RV Resort should be dismissed. (*Id.* at 17.)

In response, Plaintiffs contend that final agency action is not required. (Doc. 166 at 14.) Rather, under 5 U.S.C. § 705, a Court is authorized to hold interim agency actions in abeyance pending further developments in the case. (*Id.*) Here, Plaintiffs ask for a stay of the EPA enforcement deadline. (*Id.* (citing Doc. 143-9).) Plaintiffs contend that they satisfy the elements of a stay under *Texas v. United States Environmental Protection Agency*, 829 F.3d 405, 424–25 (5th Cir. 2016). (Doc. 166 at 14–15.)

In reply, Defendants again emphasize that, in July 2021, the Corps made an enforcement referral to the EPA over the RV Resort; that, to date, the EPA has not acted on this referral; and that nothing requires the EPA to act. (Doc. 169 at 9.) According to Defendants, Plaintiffs do not dispute the lack of final agency action. (*Id.*) Rather, Plaintiffs only point to § 705, which allows a "reviewing court" in a suit for judicial review under the APA "to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." (*Id.*) But this language requires that a suit for judicial review under the APA exists, and such a suit requires final agency action. (*Id.*) Defendants assert,

> There has been no final agency action regarding the RV Resort, and there is no suit for judicial review of any action concerning the RV Resort. This case has always been about Milton Lane, not the RV Resort, and G. Lewis cannot use this suit as a vehicle to raise claims about a separate property for which there has been no final agency action.

(*Id.* at 9–10.) Defendants note that "[t]he sole remaining claim in this case is the challenge of Plaintiffs Garry Lewis, Brenda Lewis, and G. Lewis Louisiana, LLC to the Corps' AJD for Milton Lane," and that "[t]he Corps is re-evaluating the AJD in light of . . . *Sackett v. EPA*, 143 S. Ct. 1322 (2023)." (Doc. 169 at 10 n.7.)

In sur-reply, Plaintiffs assert only the following about the stay under § 705:

> Defendants maintain that interim relief is only possible if final agency action is also under review. In footnote 7 of Defendants' reply they admit that the AJD is reviewable. Rec. Doc. 169, pg. 10, fn.7. Interim relief of the EPA action, acting as a Corps surrogate to further their *interrelated* wetland cases, is proper.

(Doc. 170-1 at 6 (emphasis added).)

### 2. *Law and Analysis*

"Under the [APA], 'final agency action for which there is no other adequate remedy in a court [is] subject to judicial review.'" *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) (quoting 5 U.S.C. § 704). "If there is no final agency action, a federal court lacks subject matter jurisdiction." *Id.* (quoting *Peoples Nat'l Bank v. Off. of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir.2004) (citation and internal quotation marks omitted)).

There are two requirements for final agency action: "First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Luminant Generation*, 757 F.3d at 441 (quoting *Nat'l Pork Producers Council v. EPA*, 635 F.3d 738, 755 (5th Cir. 2011) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997))). The Fifth Circuit "is guided by the Supreme Court's interpretation of the APA's finality requirement as 'flexible' and 'pragmatic.'" *Qureshi*, 663 F.3d at 781 (citation omitted).

An agency order does not constitute final agency action where the order "does not itself adversely affect [a plaintiff] but only affects [its] rights adversely on the contingency of future administrative action." *La. Real Est. Appraisers Bd. v. FTC*, 976 F.3d 597, 605 n.7 (5th Cir. 2020) (quoting *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 288 (5th Cir. 1999) (quoting *Rochester Tel.*

*Corp. v. United States*, 307 U.S. 125, 130 (1939))); *see also Qureshi*, 663 F.3d at 781 (finding no agency action when the action at issue "represent[ed] only an intermediate step in a multi-stage administrative process . . .").

Thus, in *Luminant Generation*, the EPA issued two notices of violations under the Clean Air Act, and the Fifth Circuit determined that these notices lacked finality for a number of reasons. 757 F.3d at 440. Relevant here, "issuing a notice does not commit the EPA to any particular course of action," given the fact that the EPA may but is not required to take several courses of actions after issuing a notice, including issuing an order, issuing an administrative penalty after a formal hearing, bringing a civil action, withdrawing or amending the notice, or taking no further action. *Id.* at 442. "Issuing notice, therefore, does not end the EPA's decisionmaking: It still must make further significant decisions even if it does not confer on Luminant the ability to influence those decisions." *Id.* Additionally, the notice did not determine plaintiff's rights or obligations, and "no legal consequences flow[ed] from the issuance of the notice. . . . [I]f the EPA issued notice and then took no further action, [appellant] would have no new legal obligation imposed on it and would have lost no right it otherwise enjoyed." *Id.*

The same reasoning applies here. The November 2, 2021, notice has as its subject, "*Potential* Unauthorized Placement of Fill Materials into Wetlands . . . ." (Doc. 160-2 (emphasis added).) After stating that the EPA "recently received an enforcement case referral" from the Corps, the notice goes on to say:

> The discharge of fill material into waters of the United States (such as forested wetlands) without a permit from COE is a violation of Section 301 of the Clean Water Act (the Act). Section 309 of the Act provides EPA authority to require compliance with the Act, including, but not limited to, the removal of the unauthorized fill and restoration to pre-violation conditions, and provides that EPA may assess appropriate penalties under Section 309 of the Act. *At this time, EPA is not ordering you to take any remedial action. As soon*

> *as we can safely travel in accordance with agency COVID safety*
> *procedures, we will contact you or your designated point of contact*
> *to schedule a site visit. During this site visit we will review the*
> *project, discuss EPA's role in the Clean Water Act program, and, if*
> *appropriate, initiate the process of resolving the matter.*

(*Id.* (emphasis added).) Thus, by its plain language, the EPA was not committed to a particular

course of action, and the letter does not end the EPA's decisionmaking. *See Luminant Generation*,

757 F.3d at 442. The notice is contingent on further agency action, including a site inspection, so

it is not final agency action. *See La. Real Est. Appraisers Bd.*, 976 F.3d at 605 n.7.

Plaintiffs do not seriously dispute this. (*See* Doc. 166 at 14–15.) Rather, they maintain that,

with respect to the RV Resort, Count III is brought under § 705 and that this section does not

require final agency action. (*See id.*)

Section 705 provides in relevant part:

> When an agency finds that justice so requires, it may postpone the
> effective date of action taken by it, pending judicial review. On such
> conditions as may be required and to the extent necessary to prevent
> irreparable injury, the reviewing court, including the court to which
> a case may be taken on appeal from or on application for certiorari
> or other writ to a reviewing court, may issue all necessary and
> appropriate process to postpone the effective date of an agency
> action or to preserve status or rights pending conclusion of the
> review proceedings.

5 U.S.C. § 705. The central question here is whether a stay can be issued in the absence of final

agency action. Neither side provided any cases to support its position on this specific issue.

However, the Court's own research shows that Defendants have the better argument; while

"there is some support for the idea that § 705 is not completely restricted to only a final agency

action," *Purpose Built Fams. Found., Inc. v. United States*, No. 22-60938, 2022 WL 6226946, at

*2 (S.D. Fla. July 29, 2022) (noting this but ultimately concluding that there was final agency

action in that case), the weight of authority on this issue supports the conclusion that § 705 requires

final agency action. *See Med-Cert Home Care, LLC v. Becerra*, No. 18-2372, 2023 WL 6202050, at *14 (N.D. Tex. Sept. 21, 2023) (rejecting "preservation of status or rights" injunction under § 705 of the APA because, *inter alia*, Court agreed with Defendants that "there [was] no final agency action in this case under the APA"); *Avon Dairy Co. v. Eisaman*, 69 F. Supp. 500, 501 (N.D. Ohio 1946) (finding that "[t]he jurisdiction and power in this Court to take such action arise only when the final adverse action of the Secretary . . . is pending here on review, in which event this Court would be authorized to issue all necessary and appropriate process to postpone the effective date of any action of the Secretary . . . or to preserve the status or the rights of the complainants pending conclusion of the review proceedings.").

*Alegre v. Jewell*, No. 16-2442, 2017 WL 3525278 (S.D. Cal. Aug. 15, 2017), is strong support for Defendants. There, plaintiffs argued for a broad interpretation of § 705, but the district court rejected this position:

> Like § 704, § 705 requires final agency action before the Court can grant such relief. . . .

> > The "reviewing court" in which section 10(d) (i.e., § 705) vests the power to stay agency action is the court, and only that court, which has obtained jurisdiction to review the final agency action in accordance with subsections (b) and (c) and the applicable provisions of particular statutes. Section 10(d) confers no power upon a court in advance of the submission to it of final agency action for review on the merits. See *Federal Power Commission v. Metropolitan Edison Co.*, 304 U.S. 375, 383 (1938). This is the only logical conclusion to be drawn from the employment of the phrase "reviewing court", rather than "any court." Any other construction would twist section 10(d) into a general grant of power to the Federal courts to review all kinds of questions presented by preliminary and intermediate agency action.

[*Attorney General's Manual on the Administrative Procedure Act*] at 106, available at https://ia600406.us.archive.org/30/items/AttorneyGeneralsManual OnTheAdministrativeProcedureActOf1947/AttorneyGeneralsMan ualOnTheAdministrativeProcedureActOf1947.pdf.

The Court agrees with Defendants that the only reasonable interpretation of § 705 is that contained in the *Attorney General's Manual.* First, "[t]he Supreme Court has accorded deference to the interpretations of APA provisions contained in the *Attorney General's Manual*, both because it was issued contemporaneously with the passage of the APA and because of the significant role played by the Justice Department in drafting the APA." *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1012 n.7 (9th Cir. 1987) (citing *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council*, 435 U.S. 519, 546 (1978)). Second, even without the guidance contained in the *Attorney General's Manual*, giving § 705 the jurisdictional reach Plaintiffs argue it has would be inconsistent with the restriction on jurisdiction contained in § 704. It is a basic tenant of statutory construction that the courts must "avoid inconsistency" and "superfluity and nullities." *In re Loretto Winery Ltd.*, 898 F.2d 715, 722 (9th Cir. 1990). Accordingly, the Court will not interpret § 705 in such a way that renders it inherently inconsistent with § 704.

*Id.* at *9.

For the same reasons, the Court finds that Plaintiffs are not entitled to a stay at this time. The EPA's notice of a violation does not constitute a final agency action, and, until that happens, Plaintiffs are not entitled to a stay under § 705. As a result, Plaintiffs' claim in Count III requesting a stay from the EPA with respect to the RV Resort will be dismissed.

## V.  CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiffs' *Motion for Leave to File Sur-Opposition to Defendants' Reply Memorandum in Support of its Motion to Dismiss* (Doc. 170) is **GRANTED**, and Plaintiffs' Sur-Opposition (Doc. 170-1) shall be accepted into the record.

**IT IS FURTHER ORDERED** that *Defendants' Partial Motion to Dismiss Plaintiffs' Second Supplemental and Amending Complaint for Want of Jurisdiction* (Doc. 160) is **GRANTED IN PART** and **DENIED IN PART**. The *Motion* is **GRANTED** in that the following claims are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction: (1) Plaintiffs' claims for damages under the CWA (Count II), and (2) Plaintiffs' request for a stay under the APA for the EPA's actions on Lewis's 93.7-acre tract (the RV Resort) (Count III). With respect to Count I's claims under the FTCA that, as a matter of Louisiana law, Defendants voluntarily undertook a duty to timely process the AJD requests and CWA permit applications and otherwise promptly deal with Plaintiffs, the *Motion* is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>March 21, 2024</u>.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**