**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**GARRY LEWIS, ET AL.**

**CIVIL ACTION**

**VERSUS**

**NO. 17-1644-JWD-SDJ**

**UNITED STATES OF AMERICA, ET AL.**

**RULING AND ORDER**

This matter comes before the Court on the *Motion for Attorney Fees* (Doc. 216), filed by Plaintiff Garry Lewis and others ("Plaintiffs"). Defendants United States of America and others ("Defendants") have filed an *Opposition to Plaintiffs' Motion for Attorney Fees* (Doc. 220). Plaintiffs have not filed a reply. Having carefully considered the law, the facts in the record, and the arguments and submissions of the parties, the Court will grant Plaintiffs' motion.

## I. Relevant Factual & Procedural Background

It is unnecessary to recount the history of this case in full. (*See, e.g.*, Doc. 192 at 2–8.) Relevant here, the Court resolved cross-motions for summary judgment in August 2020, (*see* Doc. 67 at 26–27), and then issued a *Scheduling Order* in October of that same year, (*see* Doc. 85 at 1). The deadlines established by the *Scheduling Order* passed, after which Plaintiffs deemed it necessary to file a *Motion for Order of Contempt and Enforcement of Order* (Doc. 97). The Court issued a briefing schedule and set a hearing for September 21, 2021. (*See* Doc. 99 at 2; Doc. 104.)

At the hearing, the Court granted in part (and denied in part) Plaintiffs' motion. (Doc. 110 at 1; *accord* Doc. 111 at 5–17 (supplying oral reasons).) Specifically, the Court found that (1) Defendants were in contempt of the Court's order, and (2) "the most appropriate sanction" was attorney's fees, "limited . . . to the costs [which] Plaintiffs incurred in drafting and filing [their] contempt motion, reviewing [Defendants'] opposition, drafting a reply, and preparing for and appearing at th[e] [hearing on September 21, 2021]." (Doc. 110 at 1.) The Court declined to order

Defendant United States Army Corps of Engineers to pay Plaintiffs' expenses associated with the 404-permit application or to make a final decision on the application within ten or thirty days. (*See* Doc. 97-1 at 8; Doc. 102 at 9 (requesting other, similar relief); Doc. 111 at 13–16 (allowing seventy-five days instead); Doc. 110 at 1–2 (reproducing the Court's order).)

Subsequently, Plaintiffs filed their original *Motion for Attorney Fees* (Doc. 112), which attached the Declaration of Attorney Drake L. Lewis, (*see* Doc. 112-2), and invoices addressed to Plaintiff Garry Lewis, including for relevant legal services provided by Attorney Drake L. Lewis, (*see* Docs. 112-3, 112-4). The Court promptly issued its standard briefing schedule. (*See* Doc. 113.) Defendants timely filed their *Response to Motion for Attorney Fees (ECF No. 112)* (Doc. 116). Plaintiffs did not file a reply. While the motion was pending, the parties advised the Court that they had agreed to engage in settlement negotiations. (*See* Doc. 148 at 1 (citing Docs. 146, 147).) Accordingly, the Court denied Plaintiffs' original motion without prejudice to Plaintiffs' ability to re-file in the event that mediation proved unsuccessful. (*See* Doc. 152.)

Ultimately, mediation failed, and the parties moved to re-open the case. (Doc. 153 at 1; *see also* Doc. 154 (re-opening the case); Doc. 175 at 2 n.1 (noting that Plaintiffs had yet to be "compensated for the contempt order").) In September 2025, Plaintiffs re-filed their *Motion for Attorney Fees*, attaching the same evidence as before. (*See* Doc. 216-1 at 2–3; *see also* Docs. 216-2, 216-3, 216-4.) Defendants agree that Plaintiffs' motion is now ripe for decision by this Court. (Doc. 220 at 1.) Defendants adopt their original opposition. (*Id.* (citing Doc. 116).)

## II. DISCUSSION

### A. Parties' Arguments

#### *1. Plaintiffs' Motion (Doc. 216)*

Plaintiffs adopt their previously filed *Motion for Attorney Fees*. (*See* Doc. 216-1 at 2–3

(reincorporating Doc. 112).) They again note that the Court: (1) ordered Defendants to "respond to [Plaintiffs'] permit application," (*id.* at 3 (quoting Doc. 67 at 25)), and (2) established "specific requirements" for Defendants' compliance with the *Scheduling Order*, (*id.* (citing Doc. 85)). Plaintiffs add that, subsequently, the Court determined that Defendants were "in contempt of the Court's order." (*Id.* at 4.) The Court therefore "instructed Plaintiffs to file a motion for attorney['s] fees." (*Id.*) Plaintiffs have done so. (*See id.* (noting that Plaintiffs have also attached supporting documentation); *see also* Doc. 219 (re-filing supporting documentation).) They therefore seek an award of $18,606.25 in attorney's fees. (Doc. 216-1 at 3.)

According to Plaintiffs, the attached Declaration of Attorney Drake L. Lewis "supplies appropriate evidence of the reasonable hourly rate and the hours spent on [Plaintiffs'] contempt motion" and reply, the hearing on same, and the instant motion. (*Id.* at 5 (referencing Doc. 216-2 at 1–2; Doc. 219-1 at 1–2).)[1] Additionally, Plaintiffs have provided documentation of amounts paid to lead counsel and to assistant counsel for work on similar issues during the relevant timeframe. (*Id.* (referencing Doc. 216-3).) Lastly, Plaintiffs have attached "detailed time records . . . supporting hours expended through the filing of th[e] [instant] motion." (*Id.* (referencing Doc. 216-4).) "Considering the[se] filings, the Court should have proper and sufficient evidence to enable it to" calculate the lodestar figure and to make any necessary adjustments. (*Id.*)

***2. Defendants' Opposition (Doc. 220)***

Like Plaintiffs, Defendants adopt their previously filed *Response to Motion for Attorney Fees (ECF No. 112)*. (Doc. 220 at 1 (reincorporating Doc. 116).) Defendants make two principal arguments: First, "Plaintiffs did not include adequate documentation in September 2021 that the fees sought were *actually* incurred by Plaintiffs," nor have Plaintiffs attached such documentation

---

[1] Because the attachments are the same, the Court will generally cite Docs. 216-2, 216-3, and 216-4 rather than Docs. 112-2, 112-3, and 112-4 or Docs. 219-1, 219-2, and 219-3.

to their instant motion. (*Id.*) Second, the Court should reduce the reasonable number of hours spent on the matter by ten percent in order to "account for the partial success of Plaintiffs' contempt motion." (*Id.* (citing Doc. 97-1 at 8; Doc. 102).)

Previously, Defendants emphasized that an award of attorney's fees for contempt "must be compensatory rather than punitive in nature." (Doc. 116 at 1 (quoting Doc. 111 at 15 (quoting *Auto Parts Mfg. Miss. Inc. v. King Constr. of Houston, LLC*, 258 F. Supp. 3d 740, 751 (N.D. Miss. 2017))).) Plaintiffs must therefore have incurred a loss. (*See id.* at 1–2 (citing, *inter alia*, *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976)).)

According to Defendants, Plaintiffs' original motion for attorney's fees did not demonstrate actual loss, because the "sole invoice" attached to the motion "[wa]s directed solely to [Plaintiff] Garry Lewis" and was "unpaid." (*Id.* at 2.) Defendants question whether the hourly rate quoted by Attorney Drake L. Lewis "[wa]s the actual rate that Garry Lewis ha[d] been paying," given the relationship between these two individuals. (*Id.*; *see also id.* at 3 (citing *United States v. Claro*, 579 F.3d 452, 462 (5th Cir. 2009); *Marre v. United States*, 38 F.3d 823, 829 (5th Cir. 1994)). *But see id.* at 4 ("[I]f Plaintiffs submit additional documentation showing that the fee arrangement with their counsel for this litigation has in fact been hourly billing at a $325 rate, then [Defendants] would not dispute the reasonableness of that rate.").)

Finally, Defendants previously noted—and reiterate here—that "Plaintiffs' contempt motion raised various arguments and sought certain remedies" which the Court rejected. (*Id.* at 4 (citing Doc. 97-1 at 8; Doc. 111 at 5, 13–14).) Defendants therefore seek to reduce any award by ten percent to account for "any time spent on . . . unsuccessful issues." (*Id.* (citing *Grant v. Gusman*, No. 18-6465, 2020 WL 5821753, at *6 (E.D. La. Sept. 9, 2020), *report and recommendation adopted*, 2020 WL 5820378 (E.D. La. Sept. 30, 2020)).)

**B. Applicable Law**

The Fifth Circuit uses the lodestar method when calculating attorney's fees. *In re Fender*, 12 F.3d 480, 487 (5th Cir. 1994). Under the lodestar method, a district court must first determine the reasonable number of hours spent on the matter, as well as the reasonable hourly rate. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323–24 (5th Cir. 1995) (per curiam); *see also Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) ("[T]he relevant market for purposes of determining the prevailing rate . . . is the community in which the district court sits." (cleaned up)). The court multiplies the time spent by the rate. *Kellstrom*, 50 F.3d at 324. The court is deemed "an expert" at making this calculation. *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976) (citing *Weeks v. S. Bell Tel. & Tel. Co.*, 467 F.2d 95, 98 (5th Cir. 1972) (per curiam); *Mass. Mut. Life Ins. Co. v. Brock*, 405 F.2d 429, 435 (5th Cir. 1968)).

The resulting lodestar figure is presumed to be reasonable. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54 (2010). But "[t]he Supreme Court has . . . made clear that 'the most critical factor' in determining the reasonableness of a fee award . . . 'is the degree of success obtained.'" *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *accord Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (per curiam).[2] In other words, where a party "has achieved only partial or limited success," multiplying the time "reasonably expended on the litigation as a whole" by "a reasonable hourly rate" may yield "excessive" fees. *Migis*, 135 F.3d at 1048. In such a situation, deviation

[2] *Accord Douglas W. ex rel. Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (per curiam) (citing *Farrar*, 506 U.S. at 114); *Kellstrom*, 50 F.3d at 330 & n.23 (citing, *inter alia*, *George Hyman Cosntr. Co. v. Brooks*, 963 F.2d 1532, 1536 (D.C. Cir. 1992)); *cf. Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983) ("The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'").

from the lodestar figure may be appropriate. *See Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983) ("The district court . . . may simply reduce the award to account for the limited success.").

More generally, the court can adjust the lodestar figure based on certain factors not already incorporated into the calculation. *See Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 & n.4 (5th Cir. 1998); *Saizan*, 448 F.3d at 800. The factors which the court may consider appear in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).[3] Importantly, though, the Fifth Circuit has observed that "[s]ome of these factors are subsumed in the initial lodestar calculation and should not be double counted." *Migis*, 135 F.3d at 1047 (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993)); *accord Douglas W. ex rel. Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (per curiam) ("Many of the[] factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate . . . and should not be double-counted. . . ." (citations omitted)).

### C. Analysis

#### *1. Adequacy of Documentation*

Mainly, Defendants quibble about the adequacy of the attachments to Plaintiffs' motion. (*See* Doc. 116 at 2–3.) The Court has reviewed the attachments carefully and does not share Defendants' concerns. Specifically, the invoice sent to Plaintiff Garry Lewis captures *all* of the legal services for which Attorney Drake L. Lewis now seeks reimbursement. (*See* Doc. 216-4 at 1–2.) This invoice is itemized, with clear descriptions of each of the services rendered. (*See id.*)

[3] The twelve *Johnson* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the issues, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Strong*, 137 F.3d at 850 n.4 (citing *Johnson*, 488 F.2d at 717–19).

The invoice also clearly identifies the dates of performance, the number of hours per item, the hourly rate, the amount owed per item, the total time spent, and the total amount owed. (*See id.*)

Defendants do not contend that the invoice inadequately summarizes the services rendered, nor do they contend that such services fall outside the scope of the Court's order. (*See* Doc. 110 at 1 ("[T]he award for [Plaintiffs'] motion will be limited solely to the costs [which] Plaintiffs incurred in drafting and filing [their] contempt motion, reviewing [Defendants'] opposition, drafting a reply, and preparing for and appearing at th[e] [hearing on September 21, 2021].").) Further, Defendants "do[] not dispute" the reasonableness of Attorney Drake L. Lewis's hourly rate (i.e., $325.00). (Doc. 220 at 1; *see* Doc. 116 at 4.) Instead, Defendants assert that Plaintiffs have failed to demonstrate that they "*actually* incurred" the fees which they seek. (Doc. 220 at 1.)

Specifically, Defendants posit that, given the relationship between Attorney Drake L. Lewis and Plaintiff Garry Lewis, there could exist some "alternative fee arrangement" not reflected in the invoice. (*See* Doc. 116 at 2–3.)[4] But Defendants' rank speculation does not, on its own, cast doubt upon the legitimacy of the invoice. (*See* Doc. 216-4 at 1–2; *see also* Doc. 216-2 at 2 ("I [Attorney Drake L. Lewis] have represented the plaintiffs in this matter since its inception . . . . My hourly billable rate *in this matter* is $325.00 . . . ." (emphasis added)).) Effectively, Defendants are taking the untenable position that Plaintiffs' documentation of the loss incurred is inadequate unless and until Plaintiffs produce additional evidence disproving the sheer possibility of an alternative fee arrangement. (*See* Doc. 116 at 4 ("[I]f Plaintiffs submit additional documentation showing that the fee arrangement with their counsel for this litigation has in fact been hourly billing

[4] Defendants make the additional argument that the invoice attached to Plaintiffs' motion "[wa]s directed solely to Garry Lewis, even though [Plaintiffs'] motion requests fees for 'Plaintiffs'" (generally). (Doc. 116 at 2 & n.1.) This argument is perplexing. Garry Lewis is a plaintiff in this case, so any invoice directed toward him reflects a loss incurred by at least one plaintiff. To the extent that Defendants are arguing that Plaintiffs' Counsel should have attached additional invoices reflecting losses incurred by other/all plaintiffs, the Court notes that such a contention runs counter to Defendants' interest here. That is, Plaintiffs' attaching additional invoices would invariably result in Defendants' being responsible for additional attorney's fees.

at a $325 rate, then [Defendants] would not dispute the reasonableness of that rate.").) The Court is not persuaded by Defendants' argument.

Given the invoice, and given the Declaration, the Court finds that Plaintiffs have presented adequate documentation of the actual loss incurred. (*See* Docs. 216-2, 216-4.) Consequently, the Court need not discuss at length Defendants' invocation of cases like *Marre v. United States* and *United States v. Claro*. (*See* Doc. 116 at 3 (citing both).)[5]

### ***2. Hourly Rate & Time Spent***

The Court next turns to the calculation of the lodestar figure. Defendants have conceded that an hourly rate of $325.00 is reasonable. (Doc. 220 at 1; *see* Doc. 116 at 4.) Thus, the rate "is *prima facie* reasonable." *See Kellstrom*, 50 F.3d at 328 (quoting *Islamic Ctr. of Miss., Inc. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989)). For safe measure, however, the Court has also considered the "regular rate[]" of Plaintiffs' Counsel, "as well as prevailing rates." *See id.* (citations omitted); *see also McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (indicating that the reasonableness of an attorney's hourly rate is determined with reference to "those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation" (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11

[5] The Court observes, however, that *Marre* concerned Section 7430 of the Internal Revenue Code (26 U.S.C. § 7430), which specifically provides for, *inter alia*, the shifting of "reasonable fees '*paid or incurred*.'" *Marre*, 38 F.3d at 828–29 (emphasis added) (quoting 26 U.S.C. § 7430(c)(1)(B)(iii)). Likewise, in *Claro*, the Fifth Circuit reasoned that, "because the Hyde Amendment incorporates the 'incurred' requirement from the [Equal Access to Justice Act], amounts awarded under the Hyde Amendment are capped at the rates provided for in contingent-fee contracts, unless . . . a court determines a contingent-fee amount is unreasonable." *See Claro*, 579 F.3d at 459–62 (citing, *inter alia*, *Marre*, 38 F.3d at 828–29). The Court strongly doubts whether, from these cases, it automatically follows that courts must—or should—imply and/or fixate on the term "incurred" in all instances. *See, e.g.*, *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 681–82 (10th Cir. 2012) ("[W]e disagree with the reliance on the word *incurred*."); *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 286–87 (2d Cir. 2021) ("We find persuasive the Tenth Circuit's conclusion that the use of such a phrase [as 'reasonably incurred'] does not restrict fees to those actually charged to the client."); *see also United States v. City of Jackson*, 359 F.3d 727, 731–34, (5th Cir. 2004) (approving district court's use of hourly rate of $125.00, even though the Government's actual hourly rate (based on attorney's salary) was only $55.00); *Fairley v. Patterson*, 493 F.2d 598, 606 & n.13 (5th Cir. 1974) ("This Court has indicated on several occasions that allowable fees and expenses may not be reduced because appellants' attorney was employed or funded by a civil rights organization and/or tax exempt foundation or because the attorney does not exact a fee.").

(1984))). "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citing *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993)).

Here, Attorney Drake L. Lewis's Declaration notes that, in this community, "[i]t is customary for lead counsel to charge" between $375.00 and $425.00 per hour, whereas Plaintiffs' Counsel—who serves as lead counsel in this matter—has billed at a lower hourly rate of $325.00. (Doc. 216-2 at 2; *see also* Doc. 216-3 at 1–6 (attaching invoices sent to Plaintiffs for similar legal services rendered within the relevant timeframe).) Given the attachments and Defendants' lack of objection, the Court will calculate the lodestar figure using the reasonable hourly rate of $325.00. *See also Davis*, 526 F.2d at 868 ("[T]he district court is . . . an expert in assessing these matters.").

Worth repeating, Defendants do not dispute that the invoice adequately summarizes the legal services rendered, nor do they dispute that such services fall within the scope of the Court's order. (*See* Doc. 110 at 1.) Similarly, Defendants do not suggest that the time spent per item or the total time spent is unreasonable. (*See* Docs. 116, 220.)

"[C]ourts customarily require the applicant [for attorney's fees] to produce contemporaneous billing records or other sufficient documentation . . . ." *Kellstrom*, 50 F.3d at 324 (citing *Hensley*, 461 U.S. at 433); *accord* M.D. La. Civ. R. 54(b)(1) ("In all cases where attorney's fees are sought, the party desiring to be awarded such fees shall submit to the Court a contemporaneous time report reflecting the date, time involved, and nature of the services performed."). "[A] district court may reduce the number of hours awarded if the documentation is vague or incomplete." *Kellstrom*, 50 F.3d at 324 (emphasis omitted) (citing, *inter alia*, *Hensley*,

461 U.S. at 433). After careful review, the Court finds that the relevant invoice is sufficiently clear that such a reduction is unnecessary.[6] (*See* Doc. 216-4 at 1–2.)

***3. Limited Success***

Defendants argue that the Court should reduce the reasonable number of hours spent by ten percent in order to account for the limited success of Plaintiffs' contempt motion. (Doc. 220 at 1; *see* Doc. 116 at 4 (citing Doc. 97-1 at 8; Doc. 102; Doc. 111 at 5, 13–14).) Defendants are correct, of course, that "[f]ederal courts typically deny attorney's fees for unsuccessful, futile, or wasteful litigation efforts because such fees cannot be characterized as reasonable." *Grant*, 2020 WL 5821753, at *6 (citing, *inter alia*, *Douglas W. ex rel. Jason D.W.*, 158 F.3d at 211); *see also S.E.C. v. AmeriFirst Funding, Inc.*, No. 7-1188, 2008 WL 2185193, at *3–4 (N.D. Tex. May 27, 2008) ("[B]ased on the Receiver's and SEC's limited success in the contempt proceeding, the court . . . concludes that the lodestar amount, once it is determined, must be reduced."). But the Court also notes that "[t]here is no precise rule or formula for making" such a reduction. *See Hensley*, 461 U.S. at 436–37. Equally important, the fact that a reduction for limited success may be appropriate does not, *ipso facto*, mean that it is required. *See Kellstrom*, 50 F.3d at 330 ("'[A]ppropriate' is not synonymous with 'required.' Inasmuch as the district court here clearly did consider limited success *and* explain its reasons for not further reducing the lodestar therefor,

[6] "'Block-billing' is a time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *United States ex rel. Cook-Reska v. Cmty. Health Sys., Inc.*, 641 F. App'x 396, 399 n.7 (5th Cir. 2016) (quoting *Glass v. United States*, 335 F. Supp. 2d 736, 739 (N.D. Tex. 2004)). Courts disfavor this time-keeping method. *Id.* But "[a] reduction for block billing is not automatic." *La. State Conf. of NAACP v. Louisiana*, No. 19-479, 2024 WL 964171, at *8 (M.D. La. Mar. 6, 2024) (deGravelles, J.) (quoting *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 9-752, 2011 WL 487754, at *5 (N.D. Tex. Feb. 11, 2011)); *see Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392–93 & n.18 (5th Cir. 2000) ("Indeed, even a failure to provide contemporaneous billing statements 'does not preclude an award of fees per se, as long as the evidence produced is adequate to determine reasonable hours.'" (quoting *Kellstrom*, 50 F.3d at 325)). Here, Defendants have not raised the subject of block billing. And in any event, a reduction for block billing would be inappropriate, because the relevant invoice "is adequate to enable [the Court] to determine the reasonableness of the hours expended." *See Fralick*, 2011 WL 487754, at *5.

the court cannot be said to have abused its discretion . . . ." (emphasis in original)); *see also City of Riverside v. Rivera*, 477 U.S. 561, 570–72 (1986) (declining to reduce attorney's fees where unsuccessful claims depended upon same factual core as successful claims).

Here, Defendants devote a single paragraph to their contention. (*See* Doc. 116 at 4.) They do not endeavor to explain why a reduction of ten percent (specifically) is warranted. (*See id.*)[7] And aside from gesturing at Plaintiffs' contempt motion and reply, Defendants do not identify which of Plaintiffs' "various arguments" were unsuccessful, nor do Defendants adequately explain why "any time spent" on same "was unreasonable." (*See id.* (citing Doc. 97-1 at 8; Doc. 102).)

The Court recognizes that, during the hearing on September 21, 2021, it denied some of the sanctions which Plaintiffs sought by way of their contempt motion. (Doc. 110 at 1; *see* Doc. 111 at 5–17.) But those sanctions which the Court denied were nonetheless closely related to the portions of Plaintiffs' contempt motion which *were* successful. (*See* Doc. 97-1 at 8; Doc. 102 at 9; *see also* Doc. 111 at 13–14 (partly denying Plaintiffs' contempt motion because some of the requested sanctions were not "the least restrictive sanction[s] necessary to deter [Defendants'] inappropriate behavior" (quoting *In re First City Bancorporation of Tex. Inc.*, 282 F.3d 864, 867 (5th Cir. 2002))).) In other words, Plaintiffs' requests for sanctions arose out of the same factual core; the Court does not see how those requests can be "viewed as . . . discrete," such that a reduction for limited success should follow. *Cf. Hensley*, 461 U.S. at 434–35 & n.11 ("Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested."); *AmeriFirst Funding*, 2008 WL 2185193, at *4 ("Although the court relied on much of the evidence

[7] The Court wishes to emphasize, however, that it has the discretion to make such a percentage reduction, including of its own accord. *See Hensley*, 461 U.S. at 436–37 ("The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."); *see also Wright v. Blythe-Nelson*, No. 99-2522, 2004 WL 2870082, at *5 (N.D. Tex. Dec. 13, 2004) (citing *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 551 (5th Cir. 1987)) ("[T]he court can adjust the fee request *sua sponte*."). Simply, this is not a case where the Court deems it appropriate to do so.

proffered in support of the Receiver's and SEC's two unsuccessful theories for relief, some [evidence] . . . was irrelevant."). The Court therefore declines to make a reduction for the limited success of Plaintiffs' contempt motion.

The invoice identifies 57.25 hours spent on relevant legal services. (Doc. 216-4 at 2.) Multiplying the reasonable hourly rate ($325.00) by the reasonable number of hours spent produces a lodestar figure of $18,606.25. (*See id.*)

Lastly, neither party has analyzed the *Johnson* factors not already subsumed within the Court's calculation of the lodestar figure. *See Strong*, 137 F.3d at 850 n.4 (citing *Johnson*, 488 F.2d at 717–19). That is just as well, because the remaining factors do not support an adjustment in this instance. *See Watkins*, 7 F.3d at 457, 459 (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)) ("The lodestar . . . is presumptively reasonable and should be modified only in exceptional cases."); *see also Perdue*, 559 U.S. at 552 (emphasizing the "strong" presumption that the lodestar figure is reasonable). In other words, the Court will not deviate from the above figure. *See also Saizan*, 448 F.3d at 803 ("[T]he District Court did not revisit the *Johnson* factors individually . . . ."); *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 771–72 & n.12 (5th Cir. 1996) (discussing limitations on the use of several *Johnson* factors).

## III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiffs' *Motion for Attorney Fees* (Doc. 216) is **GRANTED**. Defendants shall pay Plaintiffs **$18,606.25** in reasonable attorney's fees.

Signed in Baton Rouge, Louisiana, on September 4, 2026.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**